FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

# IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

## NINTH JUDICIAL DISTRICT

2008 APR 22 PM 12 19

D Hassler, Deputy Clerk

CLERK DISTRICT COURT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, Plaintiff, vs. BONTECOU CONSTRUCTION, INC., a Wyoming corporation, and STEVE BONTECOU, individually, Defendants. | Civil Action No. 14630 |

## VERIFIED COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, appearing by and through its attorney, and states and alleges its Complaint against the Defendants, Steve Bontecou and Bontecou Construction, Inc., as follows:

### I. General Allegations.

1. The Plaintiff, Nadowessioux Properties, Ltd., is the record owner of Lot 1 of The Homes at Amangani, Teton County, Wyoming, according to that plat recorded in the Office of the Teton County Clerk on December 22, 1998 as Plat No. 943. This is a residence of Charles and Shelley Haden, husband and wife, the owners of the Plaintiff, each of whom have power and authority to act on behalf of the Plaintiff.

2. The Defendant, Bontecou Construction, Inc., is a Wyoming corporation based in Teton County, Wyoming. The Defendant Steve Bontecou is a resident of Teton County, Wyoming who dealt with the Plaintiff individually on this construction job and is also individually liable for the acts of Bontecou Construction, Inc., which is owned and controlled by him. The Plaintiff further believes that the Defendant Steve Bontecou depleted his company of funds for his own personal benefit at a time when he knew or should have known the company funds resulted from improper over-billing by the Defendants to the Plaintiff in violation of the Contract.

3. In August of 2006 the Plaintiff and the Defendant Bontecou Construction, Inc. entered into a Guaranteed Maximum Price construction contract for work on the Haden residence. The Contract included the Defendants' detailed Job Cost Estimate, and detailed plans and specifications for the job. The Contract was prepared by the Defendants.

4. The Contract called for commencement of work on September 4, 2006 and substantial completion of the work by May 4, 2007. Substantial completion still has not occurred under the Contract over 11 months after the May 4, 2007 deadline, and many "punchlist" items still have not been completed. The Architect's 28 page list of the remaining punchlist items is attached hereto.

Nadowessioux-Bontecou Complaint 1


PLAINTIFF'S EXHIBIT B

5. Under their Guaranteed Maximum Price Contract, the cost of the project was based on "cost plus 12%", with a Guaranteed Maximum Price of $3,117,383:

> "The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed $3,117,383, subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner."

The Addendum to the Contract signed by both parties also specifically provided that:

> "The parties have further agreed that the costs which would exceed the Guaranteed Maximum Price would be paid by the Contractor without reimbursement by the owner."

6. Under the express terms of the Contract, a change order affecting the Guaranteed Maximum Price must be a written instrument prepared by the Architect and signed by the Owner, the Contractor and the Architect – specifying the change and any applicable adjustment in the price.

7. The obvious intent of the Owner (Plaintiff) was to complete the project for less than the Guaranteed Maximum Price – which is the whole point of a cost plus with a guaranteed maximum price contract (as opposed to a bid contract or a pure cost plus contract). The Contract addendum specifically provided the Defendants with very generous incentives to share with the Plaintiff in cost savings below the Guaranteed Maximum Price.

8. The Plaintiff has already paid to the Defendants a total of $3,501,587.05, which exceeds the Guaranteed Maximum Price by $384,204.15. The excess payments were based on repeated assurances by the Defendants that they would supply the Plaintiff with supporting information regarding project changes and the applicable prices. Information was not supplied until much later (February of 2008), so the Plaintiff had ceased making further payments and retained the professional accounting firm of Thompson Palmer & Associates to obtain and review applicable job records. The Plaintiff also requested input from the project architect, John Galambos AIA.

9. The March 26, 2008 report of Thompson Palmer & Associates is attached hereto. This report found that the amount billed by the Defendants exceeded the guaranteed maximum price set forth in the Contract by $1,237,304.44, and that no change orders were signed by the owner, the contractor or the architect.

10. The March 31, 2008 report of Galambos Architects, Inc. is attached hereto. This report recommended that no further payments be made by the Plaintiff to the Defendants, and noted that there has been a persistent failure to carry out the work in accordance with the contract documents.

Nadowessioux-Bontecou Complaint          2

11. The Plaintiff has been willing to accept change order price adjustments to the Guaranteed Maximum Price – even if not set forth by signed written change orders – if (a) those change orders were specifically agreed to by the parties and (b) the change orders are properly priced and are changes which should properly result in adjustments to the Guaranteed Maximum Price under the Contract. Some change orders should have reduced the Guaranteed Maximum Price, some should have increased it, but most claimed by the Defendants were not change orders which properly affect the Guaranteed Maximum Price. The Plaintiff reviewed the Defendants' change order report -- which was finally submitted on February 14, 2008 -- and sent the attached March 11, 2008 letter to the Defendants detailing overpayments of $849,693 made by the Plaintiff to the Defendants. As set forth in detail in the March 11 letter:

> The differences are fundamentally the result of the Defendants unilaterally treating the Contract as a pure "cost plus" contract when clearly there is a Guaranteed Maximum Price Contract ("GMPC"). For example, most of the cost items that the Defendants consistently classified as a "change order" was invariably either cost overruns, cost associated with corrections of nonconforming or defective work, costing for material and/or labor that should be included within the scope of the GMPC (i.e., as determined by the relevant construction documents), or just the increase in cost of a subcontractor's bid. In doing so, the Defendants have effective negated the benefit to the Owner of having a GMPC by treating all cost increases, irrespective of their nature, as a change order when they are nothing but cost overruns. This, without justification, improperly increases the maximum price guarantee by removing the underlying cost protection that a GMPC is intended to provide, which is to stipulate a maximum price that the Defendants cannot exceed with cost overruns, and the Defendant has attempted to do.

12. Instead of repaying $849,693 (or any amount) to the Plaintiff, the Defendants recorded a lien against the Plaintiff's real estate for $854,972.34 – basically ignoring the Owner's March 11 letter, Thompson Palmer & Associates' March 26 letter and the Architect's March 31 letter and placing a lien on the property for $1,704,665.34 in excess of the Guaranteed Maximum Price after proper change order adjustments. That enormous overcharge by the Defendants would be further increased by the cost of extensive remaining punchlist items and warranty work.

## II. Breach of Contract.

13. The Plaintiff hereby realleges and incorporates each and every allegation set forth in paragraphs 1 through 12 above.

14. The Defendants have failed to perform the Defendants' obligations under the Guaranteed Maximum Price Contract with the Plaintiff, and have failed to perform and honor said Guaranteed Maximum Price Contract in accordance with its terms.

15. As a direct and proximate result of said breach by the Defendants, the Plaintiff has suffered damages in the amount of $849,793 plus the cost to complete the remaining punchlist items and the cost of warranty work.

### III. Release of Lien.

16. The Plaintiff hereby realleges and incorporates each and every allegation set forth in paragraphs 1 through 15 above.

17. The lien statement recorded by the Defendants against the Plaintiff's real estate described above is false and defective, contains groundless claims known to the Defendants, and contains material misstatements and false claims, in violation of Wyoming law, and should be discharged and released in full by this Court.

### IV. Slander of Title.

18. The Plaintiff hereby realleges and incorporates each and every allegation set forth in paragraphs 1 through 17 above.

19. The lien statement recorded by the Defendants against the Plaintiff's real estate described above constitutes false and malicious statements made in disparagement of the Plaintiff's title to its real estate, causing special damages to the Plaintiff.

WHEREFORE, the Plaintiff prays that (i) the recorded lien statement noted above be dismissed by this Court forthwith and the lien against the applicable real property be discharged and released in full and (ii) that judgment be entered upon the Complaint filed in this civil action, in favor of the Plaintiff and against the Defendants, jointly and severally, for damages in the amount of $849,693 plus the cost of remaining punchlist items and warranty work, and additional special damages for slander of title, to be proved at trial, and that the Plaintiff have and recover the costs incurred by it in the prosecution of this action, and such other and further relief as this Court shall deem to be just and proper in the premises.

DATED this 22 day of April, 2008.

_____
Peter F. Moyer, Esq.
Attorney for the Plaintiff
P.O. Box 3682
Jackson, Wyoming 83001
(307) 733-7795
(307) 733-7754 FAX

## VERIFICATION

STATE OF WYOMING    )
                    )ss.
COUNTY OF TETON     )

Charles M. Haden, being first duly sworn, deposes and says: he is duly acting on behalf of the Plaintiff in the above Complaint, as Manager of Shoshoni LLC, the general partner of the Plaintiff, and he has read the foregoing Complaint and the same is true of his own knowledge except to matters therein stated based on his information and belief, which he believes to be true.

_____
Charles M. Haden

Subscribed and sworn to before me by Charles M. Haden this _22_ day of April, 2008.



_____
Notary Public

My commission expires:


**Attachments:**

- Jury Demand
- Rule 40.1(b)(1) Motion

**Exhibits**:

- March 31 Architect's Letter
- March 26 Thompson, Palmer & Associations, P.C. Letter
- March 11 Charles M. Haden Letter
- August 2006 Contract
- Punchlist Items

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

2008 APR 22 PM 12 19

CLERK  DISTRICT COURT

NADOWESSIOUX PROPERTIES, LTD., )
a Texas limited partnership, )
　)
　　　　Plaintiff, )
　)
vs. ) Civil Action No. 14631
　)
BONTECOU CONSTRUCTION, INC., )
a Wyoming corporation, and STEVE BONTECOU, )
individually, )
　)
　　　　Defendants. )

## VERIFIED COMPLAINT AND JURY DEMAND

SEE EXPANDING FILE
FOR EXHIBITS