Andrea L. Richard
Erika M. Nash
THE RICHARD LAW FIRM, P.C.
199 E. Peal Ave., Suite 102
P.O. Box 1245
Jackson, WY 83001
(307) 732-6680
(307) 732-6638 Fax

FILED

2009 MAY 12 PM 4 53

D Hassler, Deputy Clerk

CLERK OF DISTRICT COURT

# IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

## NINTH JUDICIAL DISTRICT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, and STEVE BONTECOU, individually, | ) ) ) ) |
| Defendants, | ) ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, | ) ) ) |
| Third Party Plaintiff, | ) ) |
| vs. | ) ) |
| CHARLES M. HADEN, JR., individually, | ) ) |
| Third Party Defendant. | ) |

Civil Action. No. 14630

---

## DEFENDANT BONTECOU CONSTRUCTION, INC.'S ANSWER TO VERIFIED COMPLAINT, COUNTERCLAIMS, THIRD PARTY COMPLAINT AND JURY DEMAND

---

**COMES NOW** Defendant Bontecou Construction, Inc., by and through its undersigned Counsel, The Richard Law Firm, P.C., and for its answer, states and alleges as follows:

1.      Defendant Bontecou Construction, Inc. (hereafter "Defendant" or "Bontecou Construction") denies all allegations contained in Plaintiff's Verified Complaint (hereafter "Complaint") not specifically admitted in this Answer and Counterclaims.

### "I.      General Allegations."

2.      Defendant incorporates by this reference the allegations and denials contained in the above Paragraph as if fully set forth herein.

3.     In response to Paragraph 1 of Plaintiff's Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraph 1 and therefore denies all allegations contained therein.

4.     In response to Paragraph 2 of Plaintiff's Complaint, Defendant admits that Bontecou Construction, Inc. is a Wyoming corporation based in Teton County, Wyoming, and denies the remaining allegations contained in Paragraph 2 of Plaintiff's Complaint.

5.     In response to Paragraph 3 of the Complaint, Defendant generally admits that in August of 2006, Bontecou Construction, Inc. entered into a contract with Charles M. Haden, Jr. (hereinafter sometimes referred to as "Plaintiff" or "Third Party Defendant") for work on the Haden residence located at 1605 North Amangani Drive, and Defendant is without sufficient knowledge to admit or deny the remaining allegations of Paragraph 3 and therefore denies all allegations contained therein.

6.     In response to Paragraph 4 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraph 4 and therefore denies all allegations contained therein, and states that the referenced document speaks for itself.

7.     In response to Paragraphs 5, 6 and 7 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraphs 5, 6 and 7, and therefore denies all allegations contained therein, and state that the referenced document speaks for itself.

8.     In response to Paragraph 8 of the Complaint, Defendant admits that Plaintiff has improperly failed to pay Bontecou Construction, Inc. for work performed on the Haden residence, and is without information or sufficient knowledge to admit or deny the remaining allegations of Paragraph 8 and therefore denies all remaining allegations contained therein.

9.     In response to Paragraph 9 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraph 9 of the Complaint, and therefore, denies all allegations contained therein, and states that the referenced document speaks for itself.

10.     In response to Paragraphs 10 and 11 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraphs 10 and 11 of the Complaint, and therefore, denies all allegations contained therein, and states that the referenced documents speaks for themselves.

*Bontecou Construction Inc.'s Answer to Verified Complaint*
*Counterclaims, Third Party Complaint and Jury Demand*
Page 2 of 16

11.     In response to Paragraph 12 of Plaintiff's Complaint, Defendant admits that on March 31, 2008, Bontecou Construction, Inc. filed a lien against the property located at 1605 North Amangani Drive, Jackson, Wyoming, also known as Lot 1 of The Homes at Amangani, in the amount of $854,972.34, exclusive of additional costs, interest and attorney's fees, and denies the remaining allegations contained in Paragraph 12 of the Complaint.

### "II. Breach of Contract."

12.     Defendant incorporates by this reference the allegations and denials contained in the above Paragraphs as if fully set forth herein.

13.     In response to Paragraph 13 of the Complaint, no response is needed for Paragraph 13. Nevertheless, Defendant denies the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.     In response to Paragraph 14 of the Complaint, the Defendant denies all allegations contained in Paragraph 14 of the Complaint.

15.     In response to Paragraph 15 of the Complaint, the Defendant denies all allegations contained in Paragraph 15 of the Complaint.

### "III.     Release of Lien."

16.     Defendant incorporates by this reference the allegations and denials contained in the above Paragraphs as if fully set forth herein.

17.     In response to Paragraph 16 of the Complaint, no response is needed for Paragraph 16. Nevertheless, Defendant denies the allegations contained in Paragraph 16 of Plaintiff's Complaint.

18.     In response to Paragraph 17 of the Complaint, the Defendant denies all allegations contained in Paragraph 17 of the Complaint.

### "IV.     Slander of Title."

19.     Defendant incorporates by this reference the allegations and denials contained in the above Paragraphs as if fully set forth herein.

20.     In response to Paragraph 18 of the Complaint, no response is needed for Paragraph 18. Nevertheless, Defendant denies the allegations contained in Paragraph 18 of Plaintiff's Complaint.

21.     In response to Paragraph 19 of the Complaint, the Defendant denies all allegations contained in Paragraph 19 of the Complaint.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The Plaintiff's claims are barred by the doctrines of laches, waiver and estoppel.

3.      The Plaintiff's claims are barred by the doctrine of unclean hands.

4.      The Plaintiff's claims are barred by lack of personal jurisdiction.

5.      The Plaintiff's alleged damages were not proximately caused by an act or omission of this Defendant.

6.      The Plaintiff's damages are speculative and not recoverable.

7.      The damages alleged by Plaintiff were caused or proximately caused by some persons or third parties other than Defendant for whom Defendant is not legally responsible.

8.      The damages, if any, recoverable by Plaintiff must be reduced by any amount of damages legally caused by Plaintiff's failure to mitigate such damages in whole or in part.

9.      There was insufficiency of service of process upon this answering Defendant by Plaintiff.

10.     Plaintiff failed to join necessary or indispensable parties in this action in accordance with the Wyoming Rules of Civil Procedure 12(b)(7) and 19.

11.     Plaintiff waived its right to assert the claims stated in the Complaint.

12.     Plaintiff lacks standing and is not the real party in interest.

13.     Plaintiff does not have the legal capacity to bring this action.

Defendant expressly reserves the right to assert any additional affirmative defenses that may become apparent through discovery in this case and expressly reserves the right to amend its Answer to assert any such affirmative defenses. Defendant further relies upon any law that becomes available to it after the completion of discovery and investigation of this case.

WHEREFORE Defendant prays for relief against Plaintiff as follows:

A.      That the Plaintiff takes nothing by reason of its Complaint;

B.      That a judgment be entered in favor of this Defendant; and

C.      For such further and other relief as the Court deems just, equitable and proper.

## DEFENDANT BONTECOU CONSTRUCTION, INC.'S COUNTERCLAIMS, THIRD PARTY COMPLAINT AND DEMAND FOR JURY TRIAL

## JURY TRIAL DEMANDED

**COMES NOW** Bontecou Construction, Inc. as Defendant and Counterclaim/Third Party Plaintiff (hereinafter "Bontecou Construction" or "Plaintiff"), by and through its undersigned counsel, The Richard Law Firm, P.C., and for its Counterclaims, Third Party Complaint and Jury Demand, states and alleges as follows:

### NATURE OF ACTION

1.     Counterclaim/Third Party Plaintiff, Bontecou Construction, Inc. (hereafter "Third Party Plaintiff" or "Bontecou Construction"), has suffered losses as a direct result of Charles M. Haden, Jr.'s actions which has resulted in financial damage for which Bontecou Construction now seeks relief.

### PARTIES, JURISDICTION AND VENUE

2.     Counterclaim/Third Party Plaintiff Bontecou Construction is and at all times relevant hereto, a registered Wyoming Corporation doing business in Teton County, Wyoming.

3.     Counterclaim Defendant Nadowessioux Properties, Ltd. ("Nadowessioux") is and at all times relevant hereto, a Texas limited partnership that upon information and belief, Mr. Haden owns or controls and uses as a vehicle to engage in various activities. Nadowessioux Properties, Ltd. ("Nadowessioux") is the Plaintiff in the above captioned action.

4.     Third Party Defendant Charles M. Haden, Jr. ("Haden") is and at all times relevant hereto, the individual who entered into the Agreement with Bontecou Construction and owns, or has held an ownership interest in, the real property where work was performed that forms the basis of this action in Teton County, Wyoming.

5.     This Court has jurisdiction over this action pursuant to Wyo. Stat. § 29-2-104 of the Wyoming Statutes.

6.     Venue is proper in this Court pursuant to Wyo. Stat. § 1-5-101.

### COMON FACTUAL BACKGROUND

7.     Bontecou Construction incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

8.     Bontecou Construction has been building custom homes in Jackson since 1976.

9.     In the summer of 2006, Charles Haden sought to contract with Bontecou Construction for the completion of a construction project started by the previous homeowners for a one-of-a-kind custom home and grounds located at Lot 1 of The Homes at Amangani, according to that plat recorded in the Office of the Teton County Clerk on December 22, 1998 as Plat No. 943, Teton County, Wyoming.  Some of the exterior work had been completed by the prior owners.  The majority of the interior work had not been started on the Amangani home.

10.     For purposes of the estimate, limited plans for the project were provided to Bontecou Construction including Patri Merker Architects plans, dated September 25, 2002.

11.     When Bontecou Construction presented an initial estimate to Haden in May, 2006, no work had been done to the project for over two years, and that period of inactivity resulted in damage to the vacant building.  Mr. Haden was aware of some visible water damage, and the possibility of additional unknown damage to the building such as damage to the mechanical systems, deteriorated insulation, gaps in stone flooring, etc.  Bontecou Construction disclosed to Mr. Haden its concerns about these and other issues at the time of the estimate.

12.     After the parties engaged in several discussions and much negotiating, Defendants entered into a written agreement with Bontecou Construction dated August 28, 2006 (the "Agreement").  As part of the Agreement, the parties modified the AIA *Standard Form of Agreement Between Owner and Contractor* by incorporating a Job Cost Estimate dated July 26, 2006 and Addendum 1 and Addendum 2, both of which are also signed and dated August 28, 2006.  Exhibit A.  The Agreement included a Job Cost Estimate which noted that the cost of various items was only estimated and also noted that other bid information was incomplete or outdated.  Mr. Haden was aware there were a number of costs that had not and could not be determined and confirmed this by initialing each page of the Job Cost Estimate.

13.     Under the Agreement, Charles Haden is listed as the "Owner," and has at all times relevant hereto, acted in his individual capacity in dealing with and entering into the Agreement with Bontecou Construction.

14.     Indeed, the name of the project listed on the Agreement is the "Haden Residence." Exhibit A.

15.     Further, to the extend Nadowessioux is a legitimate business entity, which Bontecou Construction disputes, Charles Haden had authority to represent and bind Nadowessioux with respect to all matters related to the Agreement, and the work performed under the Agreement and on the project.

16.     Under the Agreement, Bontecou Construction, Inc. is listed as the "General Contractor."

17.     At all times material to this action, Steve Bontecou acted as an agent and employee of Bontecou Construction, Inc., acting within the scope and capacity of his agency and employment.  Accordingly, Mr. Bontecou is not a proper party to this action and will be seeking a dismissal on that basis.

18.     Bontecou Construction complied in all material respects with its contractual obligations under the Agreement.

19.     Charles Haden has breached the Agreement and has caused damage to Bontecou Construction as a result of such actions.  For example, Defendants have failed to pay Bontecou Construction for labor performed and materials provided for the construction of the improvements on Lot 1 of the Homes at Amangani (the "Property").

20.     Specifically, per the Agreement, Mr. Haden promised to pay Bontecou Construction for the construction of Haden's custom home and landscaping on the property located at Lot 1 of The Homes at Amangani, located at 1605 N Amangani Drive, Jackson, Wyoming (the "Project").

21.     Pursuant to Article 5.2 of the Agreement, the parties agreed that there would be a guaranteed maximum price, or a ceiling, which would be modified upwards for site conditions, changes by the owner and other changes to the Project.

22.     Pursuant to the Agreement, Bontecou Construction began work, and entered into subcontracts with trade contractors for specific portions of the work to be performed under the Agreement (the "Work").

23.     Throughout the project, the Hadens and their architect, John Galambos, made material and substantial changes to the plans and design.  The Hadens' promised to pay Bontecou Construction for these additional costs consistent with the Agreement.  For example, the cost for the original landscape plan was approximately $55,000.  As a result of the substantial

additions directed by Mr. Haden, the cost of the landscaping increased to approximately $114,000.

24.     Bontecou Construction complied in all material respects with its contractual obligations under the Agreement.

25.     However, Haden breached his obligations and the Agreement by failing to pay Bontecou Construction for supplied labor, materials, supplies, work and services.  Specifically, Defendants still owe Bontecou Construction a substantial amount of money for work performed and services rendered on the improvements to Lot 1 of The Homes at Amangani.

## FIRST CLAIM: BREACH OF AGREEMENT

26.     Bontecou Construction incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

27.     Bontecou Construction entered into the Agreement with Defendant on August 28, 2006, and thereafter with the consent of Defendant entered into subcontracts with trade contractors for specific portions of the Work to be performed under the Agreement.

28.     Among other obligations, Defendant was required to timely process all Change Orders and to timely process and approve Bontecou Construction's pay applications, and to timely pay for work performed by Bontecou Construction and its subcontractors.

29.     Defendant breached the Agreement in a number of respects, including but not limited to, specifically directing the following modifications and changes to the Agreement without paying for the same:

> a.      Mr. Haden redesigned the whole kitchen and directed substantial additional costs;
>
> b.      Masonry changes, including but not limited to, a new driveway planter and a change in the front entry from concrete to Oakley Stone tiles;
>
> c.      Multiple landscaping changes, including but not limited to, electrical additions to landscape lighting;
>
> d.      Re-siding of north elevation, which was later expanded to include the re-siding of the rest of the elevations;
>
> e.      Multiple HVAC changes, including but not limited to, adding duct work and extension of flues;

      f.     Various structural changes;

      g.     Additional staircase lighting;

      h.     Numerous changes to the existing chimney; and,

      i.     Added extremely expensive steel panels at several locations.

These additions are just some of the changes made by Haden to the Project that the Hadens have not paid Bontecou Construction for. Bontecou Construction has spent substantial sums at Mr. Haden's direction and have not been paid for those sums as promised. In short, Defendants have breached the Agreement by their failure to act on pay applications and change orders and their failure to timely pay amounts owed to Bontecou Construction.

30.     Bontecou Construction timely notified Mr. Haden that his breaches of the Agreement and refusal to pay were substantially and materially impacting Bontecou Construction and its subcontractors.

31.     In accordance with the objectives of the parties' Agreement, Bontecou Construction reasonably expected that Defendant would timely process Bontecou Construction's pay applications, and approve Change Orders in good faith and on commercially reasonable terms in accordance with construction industry standards, and timely pay the amounts owed Bontecou Construction.

32.     The various breaches by Mr. Haden were contrary to the Agreement.

33.     As a direct and proximate cause of Charles Haden's breaches of the Agreement, including but not limited to, his failure to pay amounts due and owing for work performed on Lot 1 of The Homes at Amangani, Bontecou Construction has suffered direct damages in an amount to be determined in this action, but believed to be no less than at least Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34).

## SECOND CLAIM: FORECLOSURE OF LIEN

34.     Bontecou Construction incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

35.     On or about August 28, 2006, Bontecou Construction began furnishing labor, services and materials and constructing improvements on the Property.  Mr. Haden continued to make representations and promises confirming that he would pay for the work.

36.     Bontecou Construction continued to perform work and furnish labor, services and materials for the construction of the improvements on the Property through and up to December 27, 2007.

37.     There remains a balance due and owing to Bontecou Construction for work performed by it and its subcontractors under the Agreement in the amount to be proven at trial, but believed to be at least Six Hundred  Eighty Thousand  Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34).

38.     Bontecou Construction has demanded that Mr. Haden pay the amounts due and owing, but he has wrongfully refused to pay Bontecou Construction.

39.     As a result of Defendant's refusal to pay Bontecou Construction, on March 17, 2008, Bontecou Construction provided Defendant notice of its intention to file a lien that would encumber the Property.

40.     On March 31, 2008, Bontecou Construction filed its Lien Statement with the Clerk of Teton County, Wyoming, against the property commonly known as Lot 1 of The Homes at Amangani, as more fully described in the Lien Statement which has been filed with the Teton County Clerk.

41.     On or about March 31, 2008, Bontecou Construction sent Defendants and their local counsel a copy of the Lien Statement.

42.     Bontecou Construction has not been paid for the work performed and materials furnished by it and its subcontractors to construct the improvements to the Property, and is owed exclusive of costs, interest and attorney's fees, the sum of at least Six Hundred  Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34).

43.     Bontecou Construction requests that the Court enter judgment in favor of Bontecou Construction for the amount determined to be due and owing to it from Mr. Haden, and foreclose Bontecou Construction's Lien pursuant to Wyo. Stat. § 29-2-109 for at least the amount of Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34), exclusive of additional costs, interest and attorney's fees.

### THIRD CLAIM: PROMISSORY ESTOPPEL

44.     Bontecou Construction incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

45.     Throughout the Project, Haden promised Plaintiff Bontecou Construction that he would pay for the work performed and materials used on the Project.

46.     Based on his promises, Charles Haden and Nadowessioux Properties are now estopped from denying their obligation to pay Bontecou Construction for its work on the Project.

47.     For example, Charles Haden is estopped from denying that pursuant to Article 5.2 of the Agreement, Haden is obligated to pay for additional costs such as costs of changes directed by the Owners, and additional costs resulting from the site conditions.

48.     On or about August 28, 2006, Mr. Haden entered into an Agreement in the form of a written standard form AIA agreement A111-1997, whereby Mr. Haden agreed to pay for the construction of the Hadens' custom home and landscaping on the property located at Lot 1 of The Homes at Amangani. Exhibit A. Mr. Haden made similar representations throughout the Project.

49.     Bontecou Construction has acted to its detriment in reasonable reliance on the promises to pay made by Haden.

50.     Given that Bontecou Construction has spend substantial time and money to perform pursuant to the Agreement, which has resulted in the Hadens' ownership and enjoyment of a unique, world-class home, equity supports enforcement of Charles Haden's promises to pay for the work.

51.     Based on their reliance on the Hadens' promises and representations, Bontecou Construction has been harmed in an amount to be proven at trial

## IN THE ALTERNATIVE, FOURTH CLAIM FOR RELIEF: UNJUST ENRICHMENT/QUANTUM MERUIT

52.     Bontecou Construction incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

53.     Counterclaim/Third Party Plaintiff has supplied valuable services, materials and equipment to Defendants.

54.     The valuable services, materials and equipment provided by Counterclaim/Third Party Plaintiff was accepted, used and enjoyed by Counterclaim/Third Party Defendants.

55.     Counterclaim/Third Party Plaintiff provided the services, materials and equipment to Counterclaim/Third Party Defendants under such circumstances that Counterclaim/Third Party Plaintiff reasonably notified Counterclaim/Third Party Defendants that the services, materials and equipment were being provided in exchange for payment of a specified amount of funds for work ordered by Counterclaim/Third Party Defendants.

56.     Counterclaim/Third Party Plaintiff, in providing such services, materials, and equipment, expected to receive payment in full from Counterclaim/Third Party Defendants within a reasonable amount of time after each invoice was transmitted to Counterclaim/Third Party Defendants.  Counterclaim/Third Party Defendants have not paid Bontecou Construction for services, materials and equipment Plaintiff provided to Counterclaim/Third Party Defendants.

57.     If Counterclaim/Third Party Defendants are not ordered to pay the entire amount owed to Plaintiff for the outstanding invoices, Defendants will be unjustly enriched in an amount to be shown at trial.

## FIFTH CLAIM FOR RELIEF: FRAUD

58.     Bontecou Construction incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

59.     Based on the express terms of the Agreement, as well as throughout the Project, Defendants represented to Bontecou Construction that they would pay for any change orders or additions to the Project.

60.     Defendant Charles Haden and his agents directed Bontecou Construction to do additional work on the Project – work that he now has not paid for.

61.     The following are but some examples of the changes Charles Haden and his agents directed resulting in additional costs that Haden has not paid for:

    a.    replacement of defective boiler;

    b.    change in the thermostat from standard to AMX;

    c.    modification to enable air and heat for Spa room; Exhibit E, email from Charles Haden to Terry Ross, dated 1-03-07;

    d.    change to staircase lighting;

    e.    insulating Media Room with soft foam on ceiling and walls;

    f.    after changing plans to add wood flooring, changes mind again and returns to stone floors after sleepers are already installed:

    g.    adds bamboo drawers in kitchen;

    h.    adds Titus Grilles and registers, for more than $11,933.60 than original allowance;

    i.    additional landscaping for more than $33,060 over original bid; and,

    j.    additional snow melt on driveway.

62.     Charles Haden's representations and promises that he would pay for the work were false when made and were made with the intent that Bontecou Construction would rely on them.

63.     These representations were material.

64.     These representations were made to induce reliance upon them by Bontecou Construction, which did happen.

65.     Bontecou Construction justifiably relied upon such false and misleading representations of fact.

66.     Bontecou Construction was damaged by the fraudulent misconduct in an amount to be shown at trial

67.     The conduct of Defendants was willful and wanton, justifying the award of punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE, Counterclaim/Third Party Plaintiff Bontecou Construction** prays to this Court for the following:

A. On Bontecou Construction's Claims, including its First Cause of Action, Breach of Agreement, for a judgment against Counterclaim/Third Party Defendants and in favor of Bontecou Construction for all of Bontecou Construction's direct and consequential damages in an amount to be determined by this Court at trial;

B. On Bontecou Construction's Second Cause of Action, Foreclosure of Lien, for a judgment against Counterclaim/Third Party Defendants and in favor of Bontecou Construction foreclosing Bontecou Construction's Lien pursuant to Wyo. Stat. § 29-2-109 for the amount determined to be due and owing to Bontecou Construction from Counterclaim/Third Party Defendants;

C. On Bontecou Construction's Third Cause of Action, Promissory Estoppel, for a equitable judgment against Counterclaim/Third Party Defendants and in favor of Bontecou Construction finding that Counterclaim/Third Party Defendants are estopped from denying that they owe Bontecou Construction the amount determined to be due and owing to Bontecou Construction from Counterclaim/Third Party Defendants;

D. On Bontecou Construction's alternative, Fourth Cause of Action, Unjust Enrichment / Quantum Meruit, for a judgment against Counterclaim/Third Party Defendants that Defendants have been unjustly enriched by the work performed, services and materials provided in the amount determined to be due and owing to Bontecou Construction from Counterclaim/Third Party Defendants;

E. On Bontecou Construction's Fifth Cause of Action, Fraud, for a judgment against Counterclaim/Third Party Defendants that Defendants knowingly committed fraud in the inducement for the amount determined to be due and owing to Bontecou Construction from Counterclaim/Third Party Defendants, as well as punitive damages in an amount sufficient to punish plaintiffs and to deter future conduct like that exhibited by Counterclaim/Third Party Defendants, such that other persons will be deterred from such conduct as well as the Counterclaim/Third Party Defendants.

F.    On all of Bontecou Construction's causes of action, for its costs and attorneys fees incurred herein, the amount of which is to be determined at trial; and,

G.    Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 12th day of May, 2008.

THE RICHARD LAW FIRM, P.C.

Andrea L. Richard
Erika M. Nash
199 East Pearl, Suite 102
P.O. Box 1245
Jackson, WY 83001
Office: 307.732.6680
andrea@arichardlaw.com
*Attorneys for Defendants / Counterclaim Plaintiff*
*Bontecou Construction, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on this 12th day of May, 2008, a true and correct copy of this **DEFENDANT BONTECOU CONSTRUCTION, INC.'S ANSWER TO VERIFIED COMPLAINT, COUNTERCLAIMS, THIRD PARTY COMPLAINT AND JURY DEMAND** was served on the following via electronic mail and hand delivery:

Peter F. Moyer
50 King Street, Suite 203
P.O. Box 3682
Jackson, WY 83001-3682
(307) 733-7795
pmoyer@wyoming.com

*Attorney for Plaintiff / Counterclaim Defendants*

Of: The Richard Law Firm, P.C.

Andrea L. Richard
Erika M. Nash
THE RICHARD LAW FIRM, P.C.
199 E. Peal Ave., Suite 102
P.O. Box 1245
Jackson, WY 83001
(307) 732-6680
(307) 732-6638 Fax

2008 MAY 12   PM 4 53

CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

### NINTH JUDICIAL DISTRICT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD.,<br>a Texas limited partnership,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>BONTECOU CONSTRUCTION, INC.<br>a Wyoming corporation, and STEVE<br>BONTECOU, individually,<br><br>　　Defendants,<br><br>BONTECOU CONSTRUCTION, INC.<br>a Wyoming corporation,<br><br>　　Third Party Plaintiff,<br><br>　　vs.<br><br>CHARLES M. HADEN, JR., individually,<br><br>　　Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) 　Civil Action. No. 14630<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT BONTECOU CONSTRUCTION, INC.'S ANSWER TO VERIFIED COMPLAINT, COUNTERCLAIMS, THIRD PARTY COMPLAINT AND JURY DEMAND

**SEE EXPANDING FILE
FOR EXHIBITS**

Andrea L. Richard
Erika M. Nash
THE RICHARD LAW FIRM, P.C.
199 E. Peal Ave., Suite 102
P.O. Box 1245
Jackson, WY 83001
(307) 732-6680
(307) 732-6638 Fax

2008 MAY 12  PM 4 53

CLERK OF L DISRICT COURT

## IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

### NINTH JUDICIAL DISTRICT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., <br> a Texas limited partnership, <br><br>     Plaintiff, <br><br>     vs. <br><br> BONTECOU CONSTRUCTION, INC. <br> a Wyoming corporation, and STEVE <br> BONTECOU, individually, <br><br>     Defendants, <br><br> BONTECOU CONSTRUCTION, INC. <br> a Wyoming corporation, <br><br>     Third Party Plaintiff, <br><br>     vs. <br><br> CHARLES M. HADEN, JR., individually, <br><br>     Third Party Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action. No. 14630 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT BONTECOU CONSTRUCTION, INC.'S ANSWER TO VERIFIED COMPLAINT, COUNTERCLAIMS, THIRD PARTY COMPLAINT AND JURY DEMAND

### EXHIBITS TO THIS PLEADING

**1997 EDITION**

## AIA DOCUMENT | A111-1997

*Standard Form of Agreement Between Owner and Contractor*
where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated Guaranteed
Maximum Price

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

**A G R E E M E N T** made as of the                day of
in the year
*(In words, indicate day, month and year)*

**B E T W E E N** the Owner:
*(Name, address and other information)*

This document is not intended for use in competitive bidding.

> CHARLES HADEN
> 5847 SAN FELIPE  SUITE 1700
> HOUSTON, TX.  77057

and the Contractor:
*(Name, address and other information)*

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference.

> BONTECOU CONSTRUCTION, INC.
> BOX 862
> JACKSON, WY.  83001

The Project is:
*(Name and address)*

This document has been approved and endorsed by The Associated General Contractors of America.

> HADEN RESIDENCE
> AMANGANI LOT #1
> JACKSON, WY. 83001

The Architect is:
*(Name, address and other information)*



© 1997 A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



EXHIBIT
A

The Owner and Contractor agree as follows.

Copyright 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

**1**

## ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 15. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3   RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**4.1**   The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

(*Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.*)

~~August 7, 2006~~   ⟵B

September 4, 2006   C.M.LA.

If, prior to commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

**4.2**   The Contract Time shall be measured from the date of commencement.



© 1 9 9 7   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

NB

CMM.

**4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than **242** days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

May 4, 2007 CMV+. 5/3

EXCEPTION TO TIMELINE: LANDSCAPE PROJECT TO START AT EARLIEST
SNOW MELT. DURATION OF JOB FROM START APPROX 4-6 WEEKS DEPENDING
ON WEATHER. APPROX.
subject to adjustments of this Contract Time as provided in the Contract Documents.   START DATE 5/20/
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time, or for bonus payments for early completion of the Work.)*   5/13

SEE ADDENDUM #1 ON ATTACHED SUPPLEMENT.

## ARTICLE 5 BASIS FOR PAYMENT

### 5.1 CONTRACT SUM

**5.1.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**5.1.2** The Contractor's Fee is: 12% OF THE COST OF WORK
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and describe the method of adjustment of the Contractor's Fee for changes in the Work.)*

### 5.2 GUARANTEED MAXIMUM PRICE

**5.2.1** The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed Dollars ($3,117,383), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

SEE ADDENDUM #1 ATTACHED.

**5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*

©1997 AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**3**

**5.2.3** Unit prices, if any, are as follows:

**5.2.4** Allowances, if any, are as follows:
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*

**5.2.5** Assumptions, if any, on which the Guaranteed Maximum Price is based are as follows:

**5.2.6** To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

## ARTICLE 6 CHANGES IN THE WORK

**6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Subparagraph 7.3.3 of AIA Document A201-1997.

**6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Clause 7.3.3.3 of AIA Document A201-1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Subparagraph 7.3.6 of AIA Document A201-1997 shall have the meanings assigned to them in AIA Document A201-1997, and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**6.3** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201-1997 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the terms "fee" and "a reasonable allowance for overhead and profit" shall mean the Contractor's Fee as defined in Subparagraph 5.1.2 of this Agreement.



© 1997 AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

4

**6.4**     If no specific provision is made in Paragraph 5.1 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Paragraph 5.1 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7   COSTS TO BE REIMBURSED

### 7.1     COST OF THE WORK
The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.

### 7.2     LABOR COSTS
**7.2.1**     Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's approval, at off-site workshops.

**7.2.2**     Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's approval.
*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 14 the personnel to be included and whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

**7.2.3**     Wages and salaries of the Contractor's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**7.2.4**     Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Subparagraphs 7.2.1 through 7.2.3.

### 7.3     SUBCONTRACT COSTS
**7.3.1**     Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### 7.4     COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**7.4.1**     Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**7.4.2**     Costs of materials described in the preceding Subparagraph 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### 7.5     COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
**7.5.1**     Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by the Contractor at the site and



© 1997   A I A®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**7.6.8** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval; which approval shall not be unreasonably withheld.

**7.6.9** Expenses incurred in accordance with the Contractor's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved by the Owner.

### 7.7 OTHER COSTS AND EMERGENCIES

**7.7.1** Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

**7.7.2** Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.6 of AIA Document A201-1997.

**7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recoverable by the Contractor from insurance, sureties, Subcontractors or suppliers.

### ARTICLE 8 COSTS NOT TO BE REIMBURSED

**8.1** The Cost of the Work shall not include:

**8.1.1** Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Subparagraphs 7.2.2 and 7.2.3 or as may be provided in Article 14.

**8.1.2** Expenses of the Contractor's principal office and offices other than the site office.

**8.1.3** Overhead and general expenses, except as may be expressly included in Article 7.

**8.1.4** The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

**8.1.5** Rental costs of machinery and equipment, except as specifically provided in Subparagraph 7.5.2.

**8.1.6** Except as provided in Subparagraph 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

**8.1.7** Any cost not specifically and expressly described in Article 7.

**8.1.8** Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

### ARTICLE 9 DISCOUNTS, REBATES AND REFUNDS

**9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment



**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**7**

and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

**9.2** Amounts that accrue to the Owner in accordance with the provisions of Paragraph 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10 SUBCONTRACTS AND OTHER AGREEMENTS

**10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons or entities from whom the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**10.2** If a specific bidder among those whose bids are delivered by the Contractor to the Architect (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**10.3** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

## ARTICLE 11 ACCOUNTING RECORDS

The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12 PAYMENTS

### 12.1 PROGRESS PAYMENTS

**12.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:



© 1997  AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**8**

**12.1.3** Provided that an Application for Payment is received by the ~~Architect~~ *OWNER* not later than the 8 day of a month, the Owner shall make payment to the Contractor not later than the 20th day of the *same* month. If an Application for Payment is received by the ~~Architect~~ after the application date fixed above, payment shall be made by the Owner not later than ~~OWNER~~ days after the ~~Architect~~ receives the Application for Payment.

**12.1.4** With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

**12.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**12.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997;

.2 add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3 add the Contractor's Fee, less retainage of *FOUR* percent ( **4** %). The Contractor's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4 subtract the aggregate of previous payments made by the Owner;

.5 subtract the shortfall, if any, indicated by the Contractor in the documentation required by Paragraph 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

.6 subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.



© 1997   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**9**

**12.1.8** Except with the Owner's prior approval, payments to Subcontractors shall be subject to retainage of not less than **Four** percent ( **4** %). The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments and retention for Subcontractors.

**12.1.9** In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Subparagraph 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

## 12.2 FINAL PAYMENT

**12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

   .1 the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

   .2 a final Certificate for Payment has been issued by the Architect.

**12.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**12.2.3** The Owner's accountants will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Contractor's final accounting, and provided the other conditions of Subparagraph 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Subparagraph 9.5.1 of the AIA Document A201-1997. The time periods stated in this Subparagraph 12.2.3 supersede those stated in Subparagraph 9.4.1 of the AIA Document A201-1997.

**12.2.4** If the Owner's accountants report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to demand arbitration of the disputed amount without a further decision of the Architect. Such demand for arbitration shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment; failure to demand arbitration within this 30-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Contractor. Pending a final resolution by arbitration, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work,



© 1997 AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Paragraph 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 13 TERMINATION OR SUSPENSION

**13.1** The Contract may be terminated by the Contractor, or by the Owner for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to the Contractor under Subparagraph 14.1.3 of AIA Document A201-1997 shall not exceed the amount the Contractor would be entitled to receive under Paragraph 13.2 below, except that the Contractor's Fee shall be calculated as if the Work had been fully completed by the Contractor, including a reasonable estimate of the Cost of the Work for Work not actually completed.

**13.2** The Contract may be terminated by the Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to the Contractor under Subparagraph 14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

**13.2.1** Take the Cost of the Work incurred by the Contractor to the date of termination;

**13.2.2** Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

**13.2.3** Subtract the aggregate of previous payments made by the Owner.

**13.3** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Subparagraph 13.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**13.4** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Subparagraph 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean the Contractor's Fee as described in Subparagraphs 5.1.2 and Paragraph 6.4 of this Agreement.

## ARTICLE 14 MISCELLANEOUS PROVISIONS

**14.1** Where reference is made in this Agreement to a provision AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.



©1997 AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**14.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**14.3** The Owner's representative is:
*(Name, address and other information.)*

**14.4** The Contractor's representative is:
*(Name, address and other information.)*

TERRY ROSS

307-733-2990 OFFICE

307-690-9119 CELL

**14.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

**14.6** Other provisions:

## ARTICLE 15 ENUMERATION OF CONTRACT DOCUMENTS

**15.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**15.1.1** The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997.

**15.1.2** The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.



© 1997 A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**12**

**15.1.3** The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows:

Document          Title                                    Pages

**15.1.4** The Specifications are those contained in the Project Manual dated as in Subparagraph 15.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

Section          Title                                    Pages

**15.1.5** The Drawings are as follows, and are dated                    unless a
different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

Number          Title                                    Date



© 1997   AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**13**

**15.1.6**   The Addenda, if any, are as follows:

| Number | Date | Pages |
|--------|------|-------|

ADDENDA # 1                                                   1

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 15.

**15.1.7**   Other Documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents, such as a list of alternates that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

JOB COST ESTIMATE          DATED     7/26/06



© 1997   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

14

## ARTICLE 16 INSURANCE AND BONDS

*(List required limits of liability for insurance and bonds. AIA Document A201-1997 gives other specific requirements for insurance and bonds.)*

BUILDER'S RISK BY OWNER. SEE ADDENDA #1

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER *(Signature)*                    CONTRACTOR *(Signature)*

CHARLES M. HADEN, SR.        STEVE BONTECOU, PRESIDENT

*(Printed name and title)*                    *(Printed name and title)*

Nadousesont Ltd.

CAUTION: You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.

© 1997   AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

SUPPLEMENT TO AIA DOCUMENT A111-1997
ADDENDUM 2

**Article 15.15 To be supplemented with the following:**

Teton Heritage Landscape

1 page with handrawn sketches of trees and bushes.

Galambos Architects Inc. - Dated 11/14/03 - Stamped "Not Final"

A - 1.1, 2.1, 2.2, 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 10.1, 10.2, 10.3, 10.4, 10.6, 10.7,
10.8, 10.9, 10.10, 10.11

E - 1.1 - Revised - Dated 10/17/03
E - 1.1, 1.2

Patri Merker Architects - Dated 9/25/02

A - 0.1, 1.1, 2.1, 2.2, 2.3, 2.4, 2.5, 2.6, 3.1, 3.2, 3.3, 3.4, 3.5, 6.1, 6.2, 7.1,
8.1, 8.3, 8.4, 8.5, 9.1, 9.2, 9.3, 9.4, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10

M - 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 2.4, 2.5, 3.1, 3.2, 3.3, 4.1, 4.2, 4.3

E - 1.1, 1.2, 1.3, 1.4, 2.1, 2.2, 3.1, 4.1, 5.1, 6.1

It is believed that the plans by Galambas dated 11/14/06 supercede the
earlier plans of Patri Merker wherever they overlap.

Owner: ⟨signature⟩ Charles M. Parker  8-28-06

Contractor- Bontecou Construction, Inc.

⟨signature⟩ Steve Bontecou  8-31.06

SUPPLEMENT TO AIA DOCUMENT A111-1997
ADDENDUM 1

Article 5.2.1. To be supplemented with the following :

The parties have further agreed that the costs which would exceed the Guaranteed Maximum Price would be paid by the Contractor without reimbursement by the owner.

The parties desire to: 1) build the project according to the original specifications 2) while following those original specifications in some areas, the owner and builder agree to establish a list of changes to those specs with the intention of saving money.

Both the owner and the Contractor will share in the savings as follows.
If the price of the house is below the Guaranteed Maximum Price the Contractor will receive, as compensation, 50% of such savings. These savings include, but are not limited to, any savings the Contractor obtains by rebidding subcontractors or suppliers. The 50% amount to be paid to the Contractor shall be made at the time of final payment.
if the owner makes changes that lower or raise the GMP, the Contractor will submit Change Orders that would subsequently alter the GMP accordingly. Therefore those changes would not affect the bonus plan.

Article 4.3 - Liquid damages and bonus payments for Substantial Completion date.
For every two week period that the Contractor obtains substantial completion prior to the finish date, the above bonus in Article 5.2.1 Supplement will increase by 5%. In other words, if house is completed 7 days before the agreed date the bonus stays at 50%. If SBC completes the house 15 days prior, the bonus will be 55% of the savings. If 4 weeks before it will be 60% of savings. Etc.
Likewise, if house is not completed by agreed date, the bonus will be decreased by the same timeframe (2 week increments) and the same % (5%). If there is no bonus, there will be no penalty or liquidated damages. In other words, the 5% deduction of the bonus would not be in place until 2 weeks after the completion date.

It is accepted that some punch list items may remain to be completed after the agreed upon "Substantial Completion" date and they will not affect this bonus.

Article 15.1.7 shall include the latest Job Cost Estimate dated : 7/26/06.

Article 16 : Charles Haden will secure and maintain Builder's Risk Insurance to the full insurable amount of the project naming each other (Haden and Bontecou) as co-insureds.

Owner: *[signature]*                    8-28-06

Contractor- Bontecou Construction, Inc.

*[signature]*                    8. 31.06

**BONTECOU CONSTRUCTION**    **AMANGANI #1/HADEN**    7/26/06

**JOB COST ESTIMATE**

| | | SF | COST | Material | Labor | Equip | Subcont | Total | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|
| 1000 | MOBILIZATION | | | 500 | 2,500 | 0 | 0 | 3,000 | |
| 1020 | MISCELLANEOUS | | | 2,500 | 27,200 | 0 | 0 | 29,700 | |
| 1030 | CONTINGENCY | | | 0 | 0 | 0 | 205,000 | 205,000 | |
| 1040 | SUPERVISION | | | 0 | 40,000 | 0 | 0 | 40,000 | |
| 1041 | JOB PHONE/OFFICE SET UP | | | 0 | 1,500 | 2,000 | 1,000 | 4,500 | |
| 1080 | SANITARY FACILITY | | | 0 | 0 | 0 | 3,320 | 3,320 | |
| 1110 | CLEANING | | | 0 | 4,000 | 5,000 | 0 | 9,000 | |
| 1111 | LIABILITY INSURANCE | | | 0 | 0 | 0 | 21,600 | 21,600 | |
| 1120 | TRASH REMOVAL | | | 0 | 0 | 0 | 6,775 | 6,775 | |
| 1500 | WINTER CONST COSTS | | | 0 | 5,000 | 0 | 1,000 | 6,000 | |
| 1710 | PUNCH LIST | | | 750 | 4,000 | 0 | 0 | 4,750 | |
| | Total Division 1 / General Requirements | | | 3,750 | 84,200 | 7,000 | 238,695 | 333,645 | |
| 2050 | DEMOLITION | | | 400 | 2,500 | 0 | 0 | 2,900 | Demo all ceilings and walls previously installed |
| 2100 | SITE PREP | | | 0 | 0 | 0 | 59,000 | 59,000 | Lane Ross-estimate to complete |
| 2101 | SURVEYING | | | 0 | 0 | 0 | 0 | 0 | |
| 2160 | EXCAVATION | | | 0 | 0 | 0 | 0 | 0 | |
| 2230 | ROADS | | | 0 | 0 | 0 | 50,183 | 50,183 | Reg Roberts estimate to complete-driveway,patio,walks |
| 2231 | ASPHALT PAVING | | | 0 | 0 | 0 | 0 | 0 | |
| 2670 | WELL | | | 0 | 0 | 0 | 0 | 0 | |
| 2740 | SEPTIC SYSTEM | | | 0 | 0 | 0 | 0 | 0 | |
| 2900 | LANDSCAPE | | | 0 | 0 | 0 | 54,725 | 54,725 | Teton Heritage Landscaping estimate to complete |
| | Total Division 2 Site | | | 400 | 2,500 | 0 | 163,908 | 166,808 | |
| 3100 | FOUNDATION | | | 0 | 0 | 0 | 0 | 0 | |
| 3100.1 | BLOCKWORK | | | 0 | 0 | 0 | 5,000 | 5,000 | Block/Stone estimate for BBQ grill |
| 3400.0 | PRECAST CONCRETE | | | 0 | 0 | 0 | 8,100 | 8,100 | Teton Precast |
| 3430.0 | SLAB | | | 0 | 0 | 0 | 0 | 0 | |
| | Total Division 3 Concrete | | | 0 | 0 | 0 | 13,100 | 13,100 | |
| 4200 | MASONRY FIREPLACES | | | 0 | 0 | 0 | 5,000 | 5,000 | Pete's Masonry-fireplace surrounds |
| 4240 | TERRACES | | | 0 | 0 | 0 | 0 | 0 | incl in Pete's Masonry |
| 4400 | STONE VENEER | | | 5,000 | 0 | 0 | 132,680 | 137,680 | Pete's Masonry estimate to complete int& ext veneer |
| | Total Division 4 Masonry | | | 5,000 | 0 | 0 | 137,680 | 142,680 | |
| 5010 | STEEL | | | 0 | 0 | 0 | 32,100 | 32,100 | Weldco estimate to complete |
| | Total Division 5 Steel | | | 0 | 0 | 0 | 32,100 | 32,100 | |

pmt. 8-28-06

e 1

| Code | Description | M | L | E | S | Total / Notes |
|---|---|---|---|---|---|---|
| 6050 | FASTENERS & ADHESIVES | 0 | 0 | 0 | 0 | 0 |
| 6100 | STAIR FRAMING | 0 | 0 | 0 | 0 | 0 |
| 6110 | TYPICAL WALL FRAMING | 750 | 2,250 | 0 | 0 | 3,000 |
| 6111 | ATYPICAL WALL FRAME | 500 | 1,500 | 0 | 0 | 2,000 |
| 6112 | WALL SHEATHING | 0 | 0 | 0 | 0 | 0 |
| 6114 | T&G ROOF DECKING | 0 | 0 | 0 | 0 | 0 |
| 6116 | ATYPICAL ROOF FRAMING | 0 | 0 | 0 | 0 | 0 |
| 6118 | TYPICAL ROOF FRAMING | 0 | 0 | 0 | 0 | 0 |
| 6119 | COLD ROOF | 0 | 0 | 0 | 0 | 0 |
| 6125 | 1ST FLOOR DECK FRAMING | 0 | 0 | 0 | 0 | 0 |
| 6126 | 2ND FLR DECK FRAMING | 0 | 0 | 0 | 0 | 0 |
| 6127 | DECK SHEATHING | 0 | 0 | 0 | 0 | 0 |
| 6130 | OLD BEAMS-hand hewn | 0 | 0 | 0 | 0 | 0 |
| 6200 | EXTERIOR SIDING-CEDAR | 0 | 0 | 0 | 0 | 0 |
| 6200.2 | BARNWOOD SIDING | 1,200 | 3,000 | 0 | 0 | 4,200 |
| 6201 | EXTERIOR TRIM | 0 | 0 | 0 | 0 | 0 |
| 6203 | INTERIOR TRIM | 0 | 0 | 0 | 0 | 0 |
| 6400 | INTERIOR PANELING- | 55,000 | 268,900 | 0 | 0 | 323,900 |
| 6420 | EXTERIOR DECKS | 0 | 0 | 0 | 0 | 0 |
| 6430 | EXT RAILINGS | 2,100 | 2,500 | 0 | 0 | 4,600 labor allowance |
| 6431 | INTERIOR RAILINGS | 0 | 0 | 0 | 0 | 0 |
| | **Total Division 6 Carpentry** | 615,901 | 278,150 | 0 | 54,657 | 937,700 |
| 7200 | INSULATION | 0 | 0 | 0 | 54,657 | 54,657 Bressler estimate for lids, walls and foundations |
| 7400 | ROOFING & FLASHING | 3,500 | 0 | 0 | 0 | 3,500 |
| 7600 | SOFFIT | 0 | 0 | 0 | 0 | 0 |
| 7700 | FASCIA | 0 | 0 | 0 | 0 | 0 |
| | **Total Division 6: Moisture Protection** | 3,500 | 0 | 0 | 54,657 | 58,157 |
| 8000 | CABINETS | 0 | 0 | 0 | 195,000 | 195,000 Willowcreek estimate to complete |
| | **Total Division 8: Cabinets** | 0 | 0 | 0 | 195,000 | 195,000 |
| 8100 | EXTERIOR WINDOWS | 0 | 0 | 0 | 0 | 0 |
| 8130 | EXTERIOR DOORS | 0 | 850 | 0 | 300 | 1,150 Willowcreek $9,000 allowance for exterior entry door |
| 8200 | INTERIOR DOORS | 37,624 | 16,200 | 0 | 0 | 53,824 Willowcreek estimate to complete incls entry door |
| 8201 | SHOWER ENCLOSURES | 0 | 0 | 0 | 6,800 | 6,800 ESTIMATE FROM LOWER VALLEY GLASS |
| 8202 | MIRRORS | 0 | 0 | 0 | 2,900 | 2,900 LOWER VALLEY GLASS |
| 8300 | OVERHEAD DOORS | 0 | 0 | 0 | 1,000 | 1,000 Garage Door Handiman |
| 8710 | DOOR HARDWARE | 13,100 | 3,500 | 0 | 0 | 16,600 Rocky Mtn Hardware; labor allowance 3500 |
| | **Total Division 8: Doors, Windows** | 50,724 | 20,550 | 0 | 11,000 | 82,274 |

Barker estimate cont.

| | | M | L | E | S | | |
|---|---|---|---|---|---|---|---|
| 9200 | DRYWALL | 0 | 0 | 0 | 19,500 | 19,500 | Davidson Drywall estimate |
| 9300 | MARBLE COUNTERTOPS | 850 | 1,500 | 0 | 0 | 2,350 | labor allowance 1500. |
| 9300.1 | GRANITE COUNTERTOPS | 0 | 0 | 0 | 0 | 0 | |
| 9301 | TILE + TILE FLOORS | 0 | 0 | 0 | 137,510 | 137,510 | Burrows Marble & Granite-all tile and slabs |
| 9500 | ACOUSTICAL TREATMENT | 0 | 0 | 0 | 0 | 0 | |
| 9545 | CEILINGS | 21,400 | 144,530 | 0 | 0 | 165,930 | |
| 9550 | WOOD FLOORS | 0 | 0 | 0 | 0 | 0 | |
| 9600 | STONE FLOORS | 5,000 | 0 | 0 | 221,380 | 226,380 | Eugene Petersen's estimate to complete stone floors |
| 9680 | CARPET | 0 | 0 | 0 | 0 | 0 | |
| 9910 | EXTERIOR PAINTING | 0 | 0 | 0 | 0 | 0 | |
| 9920 | INTERIOR PAINTING | 0 | 0 | 0 | 118,000 | 118,000 | |
| **Total Division 9-Finishes** | | 27,250 | 146,030 | 0 | 496,390 | 669,670 | |
| 10300 | WOOD STOVES OR INSERTS | 0 | 0 | 0 | 800 | 800 | Mecho-hookup for gas logs |
| 10800 | BATH ACCESSORIES | 5,800 | 1,500 | 0 | 0 | 7,300 | JB Mechanical+ $1500 labor allowance |
| **Total Division 10-Specialties** | | 5,800 | 1,500 | 0 | 800 | 8,100 | |
| 11450 | APPLIANCES | 0 | 0 | 0 | 25,000 | 25,000 | |
| **Total Division 11-Equipment** | | 0 | 0 | 0 | 25,000 | 25,000 | |
| 12520 | MOTORIZED SHADES | 1,500 | 3,500 | 0 | 18,794 | 23,794 | Innovative Openings est. to complete; labor allowance 1750. |
| 13010 | WINE ROOM | 0 | 0 | 0 | 0 | 0 | NO ARCH PLAN-NOT IN CABINET BID |
| 13052 | SAUNA | 12,500 | 4,800 | 4,000 | 0 | 21,300 | (S) Wyo Mech to supply equipment only |
| 13150 | TIMBERS AND BEAMS | 0 | 0 | 0 | 0 | 0 | (S) is MKD Mike Doyle |
| 13200 | PROPANE TANK | 0 | 0 | 0 | 0 | 0 | |
| 13800 | SECURITY SYSTEM | 0 | 0 | 0 | 0 | 0 | |
| 13150 | SWIMMING POOL | 0 | 0 | 0 | 0 | 0 | |
| 13170 | HOT TUB | 0 | 0 | 0 | 2,750 | 2,750 | Ricks Pool & Spa estimate to complete |
| **Total Division 13-Special Construction** | | 14,000 | 8,300 | 4,000 | 21,544 | 47,844 | |
| 15300 | SPRINKLER SYSTEM | 0 | 0 | 0 | 9,600 | 9,600 | Old Faithful estimate to complete |
| 15400 | PLUMBING | 0 | 0 | 0 | 48,563 | 48,563 | JB Mechanical estimate to complete |
| 15440 | PLUMBING FIXTURES+FITTINGS | 0 | 0 | 0 | 0 | 0 | |
| 15500 | HVAC | 0 | 0 | 0 | 96,682 | 96,682 | mecho estimate to complete 5-9-06 |
| 15550 | VENTING | 0 | 0 | 0 | 0 | 0 | |
| 15730 | RADIANT FLOOR HEAT | 0 | 0 | 0 | 20,000 | 20,000 | Wyo Mech to repair damage to system |
| 15760 | SNOWMMELT | 0 | 0 | 0 | 47,255 | 47,255 | Wyo Mech to complete hydronic& snowmelt |
| 15760 | GYPCRETE | 0 | 0 | 0 | 0 | 0 | |
| 15770 | SLEEPERS | 0 | 0 | 0 | 0 | 0 | |
| **Total Division 15- Mechanical** | | | | | | | |

3 3

C-28-N

| | | M | L | E | S | |
|---|---|---|---|---|---|---|
| | Barker estimate cont. | | | | | |
| 16050 | ELECTRICAL | 0 | 0 | 0 | 313,100 | 313,100 MLE Estimate to complete electrical&Lutron |
| 16700 | AUDIO VIDEO SYSTEMS | 0 | 0 | 0 | 111,100 | 111,100 MLE estimate to for equip and install |
| 16740 | TELEPHONES | 0 | 0 | 0 | 0 | 0 |
| 16900 | ELECTRICAL FIXTURES | 0 | 0 | 0 | 0 | 0 |
| | Total Division 16 Electrical | 0 | 0 | 0 | 424,200 | 424,200 |
| 20050 | EQUIPMENT AND STAGING | 0 | 0 | 25,000 | 0 | 25,000 |
| | Total Division 20 Equipment | 0 | 0 | 25,000 | 0 | 25,000 |
| | Job Totals | 169,974 | 541,230 | 36,000 | 2,036,174 | 2,783,378 |
| | Overhead & Profit | | | | | 334,005 |
| | Grand Total | | | | | 3,117,383 |

ORIGINAL

THE STATE OF WYOMING
IN THE DISTRICT COURT
NINTH JUDICIAL DISTRICT

Civil Action No. 14630

NADOWESSIOUX PROPERTIES, LTD.,     )
a Texas limited partnership,        )
                                    )
                    Plaintiff,      )
                                    )
vs.                                 )                **SUMMONS**
                                    )
BONTECOU CONSTRUCTION, INC.,        )
a Wyoming corporation, and **STEVE BONTECOU**, )
individually,                       )
                                    )
                    Defendants.     )

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

To the above named defendant:        Steve Bontecou,
                                     Individually and as President of Bontecou Construction, Inc.
                                     1490 Gregory Lane Suite 3
                                     Jackson, Wyoming

        YOU ARE HEREBY SUMMONED and required to file with the Clerk and serve upon the Plaintiff's attorney an answer to the Complaint which is herewith served upon you, within 20 days after service of this Summons upon you, exclusive of the day of service. (If service upon you is made outside of the State of Wyoming, you are required to file and serve your answer to the Complaint within 30 days after service of this Summons upon you, exclusive of the day of service). If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

        Dated: _____*May 1*_____, 2008.

(Seal of District Court)

                                     **CLERK OF THE DISTRICT COURT**

                                     By: _____
                                              Deputy Clerk

_____
Attorney for the Plaintiff
Peter F. Moyer, Esq.
P.O. Box 3682
Jackson, Wyoming  83001
(307) 733-7795
(307) 733-7754 Fax

Attachments:
-       Complaint
-       Jury Demand
-       Rule 40.1 Motion
-       Request for Document Production

1

# RETURN

STATE OF _Wyoming_ )
                            )ss.
COUNTY OF _Teton_ )

To be used by Wyoming Sheriff,
Under Sheriff or Deputy

I, _Bob Zimmer_ Sheriff in and for said County of _Teton_, in the State aforesaid, do hereby certify that I received the within Summons, together with a copy of the Complaint filed in the above entitled matter, and that I served the same in the County aforesaid on the ___12___ day of ___May___, 2008, by delivering a copy of the same, together with a copy of the Complaint, to:

_Erica Nash_

_____

_____

By: _Dawn Riedel_ Sheriff

_Bob Zimmer_

Deputy Sheriff

**Sheriff's Fees**

| | |
|---|---|
| Service | $_____ |
| Mileage | $_____ |
| Return | $_____ |
| Total | $_____ |

=================================================================

## APPOINTMENT TO SERVE SUMMONS

At the request of the Plaintiff and in compliance with Rule 4(c)(1) of the Wyoming Rules of Civil Procedure, I hereby appoint _____

of _____, a person duly qualified, to serve the foregoing Summons.

(SEAL)

Clerk of Court

By: _____

Deputy Clerk

=================================================================

## AFFIDAVIT OF SERVICE

THE STATE OF _____ )
                                      )ss.
COUNTY OF _____ )

To be used by a person other than Wyoming Sheriff, Under Sheriff or Deputy

_____, being first duly sworn, on oath deposes and says that he is the identical person appointed by the Clerk of Court as above shown to make service of Summons issued in the foregoing action; that he is over the age of 21 years and is not a party to the foregoing action or interested therein, and that he made service of said Summons in the County aforesaid on the _____ day of _____, 2008, by delivering a copy of the same, together with a copy of the Complaint, to_____

_____

_____

_____

Subscribed and sworn to before me this_____ day of _____, 2008.

_____

Notary Public

(seal)

My commission expires:

2

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., <br> a Texas limited partnership, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) Civil Action No. 14630 <br> ) |
| BONTECOU CONSTRUCTION, INC., <br> a Wyoming corporation, and **STEVE BONTECOU,** <br> individually, | ) <br> ) <br> ) |
| Defendants | ) <br> ) |
| BONTECOU CONSTRUCTION, INC., <br> a Wyoming corporation | ) <br> ) <br> ) |
| Third Party Plaintiff, | ) <br> ) |
| vs. | ) <br> ) |
| CHARLES HADEN, JR., individually, | ) <br> ) |
| Third Party Defendant. | ) |

---

**PLAINTIFF'S AND THIRD PARTY DEFENDANT'S**
**REPLY AND ANSWER TO THIRD PARTY COMPLAINT**
**AND COUNTERCLAIM**

---

COME NOW the Plaintiff, and Charles M. Haden, Jr. as Third Party Defendant, by and through their counsel, and hereby reply to and answer the Counterclaim filed against the Plaintiff by the Defendants in this proceeding and the Third Party Complaint, as follows:

1.  The Plaintiff and Third Party Defendant do not have sufficient information at this time to admit or deny the allegations set forth in paragraph 8 of the Counterclaim and Third Party Complaint, which are therefore denied for purposes of this Reply and Answer.

2.  The Plaintiff and Third Party Defendant admit the allegations set forth in paragraphs 2, 3 (except as to control), 5 (as to jurisdiction), 6, 9 (except as to the status of prior work and as to Mr. Haden's capacity), 14, 15, 16 and 22 of the Counterclaim and Third Party Complaint, for purposes of this Reply and Answer.

3.  The Plaintiff and Third Party Defendant deny the allegations set forth in paragraphs 1, 4, 10, 11, 12, 13, 17 through 20, 21 (as to site conditions), 23 through 25, 27, 33, 35 through 43, 45 through 51, 53 through 57, and 59 through 67 of the Counterclaim and Third Party Complaint, for purposes of this Reply and Answer.

4.  The other paragraphs do not call for a responsible pleading.

1

5. The Plaintiff and Third Party Defendant further affirmatively allege that the relief requested by the Defendants and Third Party Plaintiff should be denied based upon accord and satisfaction, laches, illegality as to the lien filing and foreclosure, statute of frauds, estoppel, release and waiver.

DATED this ___**27**___ day of May, 2008.

Respectfully admitted,


_____
Peter F. Moyer, Esq.
Attorney for the Plaintiff and Third Party Defendant
P.O. Box 3682
Jackson, Wyoming 83001
(307) 733-7795
(307) 733-7754 FAX


## CERTIFICATE OF SERVICE

This is to certify that on the __**27**__ day of May, 2008, I served a true and correct copy of the above and foregoing instrument upon the Defendant and Third Party Plaintiff, by depositing the same in the U.S. mail, postage prepaid, duly addressed to:


Andrea Richard, Esq.
P.O. Box 1245
Jackson, Wyoming 83001


_____
Peter F. Moyer

# IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

## NINTH JUDICIAL DISTRICT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, and STEVE BONTECOU, individually, | ) ) ) ) |
| Defendants, | ) ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, | ) ) ) |
| Third Party Plaintiff, | ) ) |
| vs. | ) ) |
| CHARLES M. HADEN, JR., individually, | ) ) |
| Third Party Defendant. | ) |

**FILED U.S. DISTRICT COURT DISTRICT OF WYOMING**

**DEC 28 2010**

**Stephan Harris, Clerk Cheyenne**

Civil Action. No. 14630

2010 JUN 10 PM 4 17
D Hassler, Deputy Clerk

---

## SUMMONS

---

To:      Charles M. Haden, Jr.    or    Charles M. Haden Jr.
        764 Kuhlman Road              1605 North Amangani Drive
        Huston, TX 77024                Lot 1, Homes at Amangani
                                              Jackson, WY 83002

       YOU ARE HEREBY SUMMONED AND NOTIFIED that a Third Party Complaint has been filed against you in the above-entitled matter and as set forth in the Counterclaims and Third Party Complaint made by Bontecou Construction, Inc. It has been filed in the District Court for the Ninth Judicial District of the State of Wyoming and has been assigned Civil Action No. 14630. You are required to file with the clerk and serve upon Bontecou Construction's attorneys your answer to the Third Party Complaint within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Third Party Complaint.

A copy of the Third Party Complaint is in the attached *Answer to Verified Complaint, Counterclaims, Third Party Complaint and Jury Demand* which is hereby provided to you and served with this Summons.

DATED this 3rd day of June, 2008.

CLERK OF DISTRICT COURT

By: _____

Andrea Richard
Erika Nash
THE RICHARD LAW FIRM, P.C.
199 East Pearl Avenue, Suite 102
P.O. Box 1245
Jackson, WY 83001
Office: 307.732.6680
Fax: 307.732.6638
andrea@arichardlaw.com

*Attorneys for Defendants/ Counterclaim/Third Party Plaintiff*

## RETURN OF SERVICE

STATE OF WYOMING     )
                     ) ss.

COUNTY OF TETON     )

      I, _____ Sheriff in and for said County of _____, in the State Texas, do hereby certify that I received the within *Answer to Verified Complaint, Counterclaims, Third Party Complaint and Jury Demand* filed in the above entitled matter, and that I served the same in the County aforesaid on the ____ day of _____ _____, 2008, by delivering a copy of the same, together with a copy of the *Summons*, to . _____ .

                                Sheriff

                                By:
                                  Deputy Sheriff

| | | |
|---|---|---|
| Service | $ | _____ |
| Mileage | $ | _____ |
| Return | $ | _____ |
| Total | $ | _____ |

## APPOINTMENT TO SERVE SUMMONS

      At the request of the Defendant and in compliance with Rule 4(c)(1) of the Wyoming Rules of Civil Procedure, I hereby appoint _____, a person duly qualified, to serve the foregoing Summons.

                                 Clerk of Court

**(SEAL)**

                               By:
                               Deputy Clerk

## AFFIDAVIT OF SERVICE

THE STATE OF WYOMING    )    To be used by a person
                      ) ss.  other than

COUNTY OF TETON        )    Sheriff, Under Sheriff
                                or Deputy

      _Ellis Richard_ _____, being first duly sworn, on oath deposes and says that he/she is the identical person appointed by the Clerk of Court as above shown to make service of the Summons filed in the foregoing action, together with the *Answer to Verified Complaint, Counterclaims, Third Party Complaint and Jury Demand*; that he/she is over the age of 21 years and is not a party to the foregoing action or interested therein, and that he/she made service of said Summons in the County aforesaid on the 6TH day of _June_ ____, 2008, by delivering a copy of the same, together with a copy of the *Answer to Verified Complaint, Counterclaims, Third Party Complaint and Jury Demand*:_ PERSONALLY AND IN PERSON TO CHARLES M. HAYNIN JR AT 1605 NORTH AUANOANI DR. L-T, HOMES AT AUANOANI, JACKSON WY 83002 ON JUNE 6, 2008 at 6:14 PM

      SUBSCRIBED AND SWORN to before me this 9TH day of _June_, 2008.

MITZI PETERSON - NOTARY PUBLIC
COUNTY OF LINCOLN      STATE OF WYOMING
MY COMMISSION EXPIRES APRIL 19, 2009

                                  Notary Public

My Commission expires: 4-19-09

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| NADOWESSIOUX PROPERTIES, INC., | ) | |
| a Texas limited partnership, | ) | Civil Action No. 14630 |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER FOR TELEPHONE |
| vs. | ) | SCHEDULING CONFERENCE |
| | ) | |
| BONTECOU CONSTRUCTION, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
DEC 28 2010
Stephan Harris, Clerk
Cheyenne

IT IS ORDERED that counsel for the parties shall collectively place a conference telephone call to the court's scheduling clerk at 733-1461 for the purposes of a scheduling conference on the 30th day of July, 2008 at 9:00 a.m. Attorney for Defendant is responsible for arranging a conference call with counsel for Plaintiff and the Court at the appointed hour.

IT IS FURTHER ORDERED that counsel who will be trying the case shall participate in the scheduling conference.

DATED the 10th day of July, 2008.

_____
Nancy J. Guthrie
District Judge

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was served by mail/fax upon the following persons at their last known address this 11 day of July 08.

_____
J Moyer
_____
A Richard
_____

By D Hassler, Deputy Clerk

FILED
TETON COUNTY WYOMING
2008 JUL 11 PM 12 13
D Hassler, Deputy Clerk
CLERK OF DISTRICT COURT

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| NADOWESSIOUX PROPERTIES, INC., a Texas limited partnership, | ) ) ) | Civil Action No. 14630 |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER CONTINUING SCHEDULING CONFERENCE |
| BONTECOU CONSTRUCTION, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

Plaintiff has filed a Request for Participation of Both Judge and Case Manager in the Scheduling Conference in this matter. The Judge is not available for the scheduling conference presently scheduled for July 30, 2008 at 9:00 a.m. Therefore,

IT IS ORDERED that the scheduling conference previously scheduled in this matter for July 30, 2008 at 9:00 a.m. is hereby rescheduled for the 8th day of August, 2008 at 10:00 a.m. by conference telephone call. Counsel for the parties shall collectively place a conference telephone call to the Court at 733-1461 at the appointed hour. Attorney for Plaintiff is responsible for arranging a conference call with counsel for Defendant and the Court at the appointed hour.

IT IS FURTHER ORDERED that counsel who will be trying the case shall participate in the scheduling conference.

DATED the 30th day of July, 2008.

Nancy J. Guthrie
District Judge

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this ___ day of July 20 08.

Nelson, R.

Richard, A.

By D. Mahoney

# IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

## NINTH JUDICIAL DISTRICT

NADOWESSIOUX PROPERTIES, LTD.,
a Texas limited partnership,

    Plaintiff,

vs.

BONTECOU CONSTRUCTION, INC.
a Wyoming corporation, and STEVE
BONTECOU, individually,

    Defendants,

BONTECOU CONSTRUCTION, INC.
a Wyoming corporation,

    Third Party Plaintiff,

vs.

CHARLES M. HADEN, JR., individually,

    Third Party Defendant.

Civil Action. No. 14630

*[Stamp: FILED DISTRICT COURT U.S. DISTRICT OF WYOMING DEC 28 2010 Stephan Harris, Clerk Cheyenne]*

*[Stamp: FILED 2008 JUL 30 PM 2 46 CLERK OF DISTRICT COURT TETON COUNTY WYOMING]*

---

## ORDER GRANTING DEFENDANTS' RULE 40(b) MOTION FOR MEDIATION

---

The above entitled matter having come before the Court on Defendants' Bontecou Construction, Inc. and Steve Bontecou (collectively the "Defendants") request to assign this matter for mediation pursuant to Rule 40(b), and the Court having considered the same, hereby FINDS and ORDERS as follows:

1.     Pursuant Rule 40(b) of the Wyoming Rules of Civil Procedure, the Court has authority to assign a matter to mediation.

2.     Rule 40(b) of the Wyoming Rules of Civil Procedure provides that: "The court . . . [a]t the request of any party, shall assign the case to a retired judge, retired justice, or other qualified person on limited assignment for the purpose of invoking nonbinding alternative dispute resolution methods, including settlement conference and mediation."

3.     This matter is hereby assigned for mediation to be completed no later than seventy (70) days from the entry date of this Order.

4.     The Parties shall have ten (10) business days from the entry date of this Order to schedule mediation before Mr. Epstein, or such other experienced mediator as the Parties are able to agree upon.

5.     If the Parties are unable to agree on an acceptable mediator within the ten days,

the Parties shall submit their recommendations to the Court and the Court will assign the matter.

6.     The Parties are hereby ordered to pay for their own fees and costs associated with

the mediation and that the mediation shall be treated as confidential settlement negotiations.

SO ORDERED this _30_ day of _____, 2008.

_____
The Honorable Nancy J. Guthrie
District Court Judge

CERTIFICATE OF SERVICE
This is to certify that a copy of the
foregoing was duly served by prepaid
mail upon the following persons at
their last known address this _30_ day
of _July_ 20 _08_ .

_Nelson, R._

_Richard, A._

By _D. Mahoney_

*Order Granting Defendants' Rule 40(b) Motion for Mediation*
*Page 2 of 2*

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

FILED
US DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

NADOWESSIOUX PROPERTIES, INC.,  )
a Texas limited partnership,      )     Civil Action No. 14630
                                  )
          Plaintiff,              )
                                  )
     vs.                          )     SCHEDULING ORDER
                                  )
BONTECOU CONSTRUCTION, INC.,      )
et al.,                           )
                                  )
          Defendants.             )

A SCHEDULING CONFERENCE was held between the Court and counsel on the 8th day of August, 2008; counsel appeared as follows: Richard L. Nelson appeared for Plaintiff and Andrea L. Richard appeared for Defendants.

IT IS ORDERED:

1.   DISCOVERY.  Counsel shall complete their initial disclosures on or before September 5, 2008.  Limited discovery in preparation of mediation shall be completed within sixty days of the initial disclosures.  The balance of discovery shall be completed on or before February 27, 2008.  All written discovery requests shall be served upon opposing counsel at least forty-five days before the discovery cut-off date.  All depositions shall be completed by the discovery cut-off date.  **No discovery will be permitted beyond the discovery cut-off date without leave of court.**

2.   DESIGNATION OF EXPERTS.  Plaintiff shall designate expert witnesses by December 29, 2008.  The Defendant shall designate expert witnesses by January 16, 2009.

3.   WITNESSES.  The parties shall file a list of the names and addresses of each of their witnesses, along with a summary of the testimony of each, and provide the same to opposing counsel along with the pretrial memoranda.

4.   EXHIBITS.  Along with the pretrial memoranda, the parties shall file a list of any exhibits intended for use in the case.  Prior to the pretrial conference, counsel shall mark exhibits for

identification and furnish copies to opposing counsel or if not feasible, make the same available for inspection (copies of exhibits shall not be attached to the pretrial memorandum or filed in the court file). Written objections are to be filed and served prior to the pretrial conference. Large numbers of exhibits are not to be lumped under one number or letter. If the exhibits are to be introduced individually at the trial, they are to be listed individually on the exhibit form. The failure to mark exhibits and furnish copies to opposing counsel before the pretrial conference may result in any such exhibits being inadmissible at the trial.

5.    <u>PRETRIAL CONFERENCE.</u> This matter is set for a final pretrial conference in the District Courtroom of the Teton County Courthouse, Jackson, Wyoming on the 13th day of April, 2009 at 1:30 p.m. One and one-half hours is set aside for the hearing. The provisions of <u>Rule 16, W.R.C.P.</u> are incorporated herein by reference. All parties shall **file** their pretrial memoranda no later than five (5) days prior to the conference. The pretrial memoranda shall include the following:

a.    <u>NATURE OF THE CASE.</u> The nature of the case shall be a concise statement of the case, together with any information concerning the formulation and simplification of the issues, including the elimination of frivolous claims or defenses.

b.    <u>AMENDMENTS TO PLEADINGS.</u> The parties shall justify the necessity or desirability of amendments to the pleadings and shall submit copies of any proposed amendments. It should be noted that proposed amendments to pleadings at this late stage will be closely scrutinized by the Court and will not be permitted unless absolutely necessary. The parties should amend their pleadings much earlier in the course of the case.

c.    <u>STIPULATIONS.</u> The parties shall enter into written stipulations of fact, of issues, and documents which will avoid unnecessary proof and shall submit such stipulations along with the pretrial memoranda. Factual matters to be submitted through an offer of proof shall also be reduced to writing.

d.    <u>OTHER MATTERS.</u> The parties shall:

(1)    Advise the Court of all pending matters; such as, but not limited to, motions, discovery, stipulations, issues regarding the conduct of the trial or any other issues which

could be addressed prior to the trial, and such other matters as may aid in the disposition of the action.

    (2)    Advise which witnesses will testify at trial, the scope of their testimony, and confirm that final reports of experts and their qualifications have been exchanged;

    (3)    Confirm that all efforts of settlement have taken place;

    (4)    Advise the Court of the proposed schedule for the orderly presentation of evidence at the trial and establishing a reasonable limit on the time allowed for presenting evidence. In considering said schedule, counsel shall consider any issues with regard to the conduct of the trial in order to facilitate the just, speedy, and inexpensive disposition of the action; and shall consider the avoidance of unnecessary proof of cumulative evidence, and limitations or restrictions on the use of testimony under Rule 702 W.R.E.;

    (5)    Advise the Court of the length of time counsel anticipate using to conduct the voir dire examination, opening statements, closing arguments and the trial in its entirety.

6.    <u>MOTIONS:</u>

    a.    At least thirty (30) days prior to the pretrial conference counsel shall file all reasonably anticipated motions, **including motions in limine.**

    b.    All dispositive motions, together with briefs and affidavits in support thereof shall be filed on or before March 13, 2009. Any response to motions so filed shall be filed on or before April 8, 2009. A copy of motions and responses so filed shall be provided to the Court's office or mailed to P.O. Box 1036, Jackson, WY 83001. A hearing on all motions so filed will be held at the pretrial conference.

7.    <u>JURY INSTRUCTIONS.</u> Proposed jury instructions shall be filed at least ten (10) days prior to trial, and in accordance with <u>Rule 403 of the Uniform Rules for the District Courts of the State of Wyoming</u>. The submission of proposed instructions shall be as follows:

    a.    Each party shall file with the Clerk of Court a set of proposed instructions, Plaintiff's numbered and Defendant's lettered, as appropriate, with citation. The parties shall include a cover sheet which contains an index of the instructions by letter or number and the pattern jury instruction number if applicable or other authority, as well as a brief title for each instruction. Each

party shall submit a proposed instruction setting forth the parties' contentions; another proposed instruction setting forth the burdens of proof of each of the parties, and a proposed verdict form with any special interrogatories. Each party shall provide a copy of the requested instructions to the Court at P.O. Box 1036, Jackson, WY 83001 or shall deliver a copy to the Court's chambers.

        b.    Counsel shall also provide to the Court a computer disk with their jury instructions contained thereon in an IBM WordPerfect or Word format, if possible, or they may be emailed to the Court at chammond@courts.state.wy.us.

    8.    <u>ALTERNATIVE DISPUTE RESOLUTION.</u>  The parties shall make themselves available for mediation and shall make a good-faith effort to attempt to settle this matter. Mediation shall be completed no later than November 4, 2008.

    9.    <u>NOTICE TO COURT REPORTER.</u>  Any party requesting the reporting of a particular matter by the official court reporter shall provide notice to the official court reporter at least three (3) <u>working days</u> before the matter is set for hearing. The three-day notice requirement will not be waived by the Court. The notice is required for all civil matters including jury trials. Payment of the statutory reporting fee of $45.00 per day shall be paid to the official court reporter prior to the commencement of the hearing/trial. Checks for the statutory reporting fee shall be made payable to the Wyoming State Treasurer. Rule 904 *Uniform Rules of the District Courts of the State of Wyoming*.

    10.    <u>SETTLEMENT.</u> In the event that this case settles, the parties are informed that there will be no change in the scheduling of this matter by the Court until such time as the settlement is reduced to writing and a stipulation executed by counsel to that effect. There will be no continuances or canceling of the trial date based on telephone calls.

    11.    <u>TRIAL.</u> A trial date will be set at the final pretrial conference. The case must be ready for trial in all respects by the time of the final pretrial conference.

    DATED the 8th day of August, 2008.

Nancy J. Guthrie
District Judge

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was served by mail/fax upon the following persons at their last known address this 15 day of Aug 2008.

By _____

*NADOWESSIOUX PROPERTIES, LTD. v. BONTECOU CONSTR., INC., et al.*
*Civil Action No. 14630*
*SCHEDULING ORDER*
*Page 4 of 4*

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., <br> a Texas limited partnership, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) |
| BONTECOU CONSTRUCTION, INC. <br> a Wyoming corporation, and STEVE <br> BONTECOU, individually, | ) <br> ) <br> ) |
| Defendants, | ) <br> ) |
| BONTECOU CONSTRUCTION, INC. <br> a Wyoming corporation, | ) <br> ) <br> ) |
| Third Party Plaintiff, | ) <br> ) |
| vs. | ) <br> ) |
| CHARLES M. HADEN, JR., individually, | ) <br> ) |
| Third Party Defendant. | ) |

FILED
TETON COUNTY WYOMING
2008 AUG 15 PM 2 13
D Hassler, Deputy Clerk
CLERK OF DISTRICT COURT

Civil Action. No. 14630

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

---

## ORDER DENYIING DEFENDANTS' MOTION TO DISMISS
## CLAIMS AGAINST DEFENDANT STEVE BONTECOU

---

On July 14, 2008, the Court heard the Motion of Defendants Bontecou Construction, Inc. and Steve Bontecou to Dismiss Claims Against Steve Bontecou. After considering the Motion, the Response, and the Reply, together with the arguments of counsel, the Court concluded that at this time, the Motion should be denied.

It is therefore ORDERED:

1.      The Motion of Defendants Bontecou Construction, Inc., and Steve Bontecou to Dismiss Claims Against Steve Bontecou is hereby denied.

SO ORDERED this _15_ day of _____, 2008.

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was served by mail/fax upon the following persons at their last known address this _12_ day of _Aug 2008_.
_JP Nelson_
_A Richard_

By _D. Hassler_

The Honorable Nancy J. Guthrie
District Court Judge

*Order Denying Motion to Dismiss Steve Bontecou, Individually*
*Page 1 of 1*

**IN THE DISTRICT COURT OF TETON COUNTY, WYOMING**

**NINTH JUDICIAL DISTRICT**

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD.,<br>a Texas limited partnership,<br><br>    Plaintiff,<br><br>    vs.<br><br>BONTECOU CONSTRUCTION, INC.<br>a Wyoming corporation, and STEVE<br>BONTECOU, individually,<br><br>    Defendants,<br><br>BONTECOU CONSTRUCTION, INC.<br>a Wyoming corporation,<br><br>    Third Party Plaintiff,<br><br>    vs.<br><br>CHARLES M. HADEN, JR., individually,<br><br>    Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED
TETON COUNTY, WYOMING
2008 AUG 18 PM 4 24
D Hassler, Deputy Clerk
CLERK OF DISTRICT COURT

Civil Action. No. 14630

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
DEC 28 2010
Stephan Harris, Clerk
Cheyenne

---

### ORDER ON MEDIATION

---

The matter having come before the Court after the Court ordered the Parties to complete mediation, the Parties having been unable to agree on a mediator, and the Court having reviewed the submissions of the Parties:

THEREFORE, THE COURT HEREBY ORDERS that an appropriate mediator for this matter is: ___James Lubing___ . The Court further orders that the Parties shall contact the mediator and schedule the mediator without further delay, consistent with the Court's prior order Granting Motion for Mediation.

SO ORDERED this _15_ day of ___Aug___, 2008.

_____
The Honorable Nancy J. Guthrie
District Court Judge

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing was served by mail/fax upon the following persons at their last known address this _19_ day of _Aug_ 20_08_ .

_R Nelson_

_A Richard_

By_ D Hassler, Deputy Clerk_

*Order on Mediation*
*Page 1 of 1*

Andrea L. Richard
Jennifer A. Golden
THE RICHARD LAW FIRM, P.C.
199 E. Peal Ave., Suite 102
P.O. Box 1245
Jackson, WY 83001
(307) 732-6680
(307) 732-6638 Fax

**FILED**
TETON COUNTY WYOMING

2008 SEP 8 PM 4 55
D Hassler, Deputy Clerk

CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

### NINTH JUDICIAL DISTRICT

U.S. DISTRICT COURT
DISTRICT OF WYOMING
**FILED**

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, and STEVE BONTECOU, individually, | ) ) ) ) |
| Defendants, | ) Civil Action. No. 14630 ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, | ) ) ) |
| Third Party Plaintiff, | ) ) |
| vs. | ) ) ) |
| CHARLES M. HADEN, JR., individually, | ) ) ) |
| Third Party Defendant. | ) |

## DEFENDANT STEVE BONTECOU'S ANSWER TO VERIFIED COMPLAINT, COUNTERCLAIMS, THIRD PARTY COMPLAINT AND JURY DEMAND

**COMES NOW** Defendant Steve Bontecou, by and through his undersigned Counsel, The Richard Law Firm, P.C., and for his answer, states and alleges as follows:

1.    Defendant Steve Bontecou, (hereafter "Defendant" or "Steve Bontecou") denies all allegations contained in Plaintiff's Verified Complaint (hereafter "Complaint") not specifically admitted in this Answer and Counterclaims.

### "I.    General Allegations."

2.    Defendant incorporates by this reference the allegations and denials contained in the above Paragraph as if fully set forth herein.

3.      In response to Paragraph 1 of Plaintiff's Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraph 1 and therefore denies all allegations contained therein.

4.      In response to Paragraph 2 of Plaintiff's Complaint, Defendant admits that Bontecou Construction, Inc. is licensed to do business in Wyoming and denies the remaining allegations contained in Paragraph 2 of Plaintiff's Complaint.

5.      In response to Paragraph 3 of the Complaint, Defendant generally admits that in August of 2006, Bontecou Construction, Inc. entered into a contract with Charles M. Haden, Jr. (hereinafter sometimes referred to as "Plaintiff" or "Third Party Defendant") for work on the Haden residence located at 1605 North Amangani Drive, and Defendant is without sufficient knowledge to admit or deny the remaining allegations of Paragraph 3 and therefore denies all allegations contained therein.

6.      In response to Paragraph 4 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraph 4 and therefore denies all allegations contained therein, and states that the referenced document speaks for itself.

7.      In response to Paragraphs 5, 6 and 7 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraphs 5, 6 and 7, and therefore denies all allegations contained therein, and state that the referenced document speaks for itself.

8.      In response to Paragraph 8 of the Complaint, Defendant admits that Plaintiff has improperly failed to pay Bontecou Construction, Inc. for work performed on the Haden residence, and is without information or sufficient knowledge to admit or deny the remaining allegations of Paragraph 8 and therefore denies all remaining allegations contained therein.

9.      In response to Paragraph 9 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraph 9 of the Complaint, and therefore, denies all allegations contained therein, and states that the referenced document speaks for itself.

10.      In response to Paragraphs 10 and 11 of the Complaint, Defendant is without sufficient knowledge to admit or deny the allegations of Paragraphs 10 and 11 of the Complaint, and therefore, denies all allegations contained therein, and states that the referenced documents speaks for themselves.

11.     In response to Paragraph 12 of Plaintiff's Complaint, Defendant admits that on March 31, 2008, Bontecou Construction, Inc. filed a lien against the property located at 1605 North Amangani Drive, Jackson, Wyoming, also known as Lot 1 of The Homes at Amangani, in the amount of $854,972.34, exclusive of additional costs, interest and attorney's fees, and denies the remaining allegations contained in Paragraph 12 of the Complaint.

## "II. Breach of Contract."

12.     Defendant incorporates by this reference the allegations and denials contained in the above Paragraphs as if fully set forth herein.

13.     In response to Paragraph 13 of the Complaint, no response is needed for Paragraph 13. Nevertheless, Defendant denies the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.     In response to Paragraph 14 of the Complaint, the Defendant denies all allegations contained in Paragraph 14 of the Complaint.

15.     In response to Paragraph 15 of the Complaint, the Defendant denies all allegations contained in Paragraph 15 of the Complaint.

## "III.     Release of Lien."

16.     Defendant incorporates by this reference the allegations and denials contained in the above Paragraphs as if fully set forth herein.

17.     In response to Paragraph 16 of the Complaint, no response is needed for Paragraph 16. Nevertheless, Defendant denies the allegations contained in Paragraph 16 of Plaintiff's Complaint.

18.     In response to Paragraph 17 of the Complaint, the Defendant denies all allegations contained in Paragraph 17 of the Complaint.

## "IV.     Slander of Title."

19.     Defendant incorporates by this reference the allegations and denials contained in the above Paragraphs as if fully set forth herein.

20.     In response to Paragraph 18 of the Complaint, no response is needed for Paragraph 18. Nevertheless, Defendant denies the allegations contained in Paragraph 18 of Plaintiff's Complaint.

21.     In response to Paragraph 19 of the Complaint, the Defendant denies all allegations contained in Paragraph 19 of the Complaint.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     The Plaintiff's claims are barred by the doctrines of laches, waiver and estoppel.

3.     The Plaintiff's claims are barred by the doctrine of unclean hands.

4.     The Plaintiff's claims are barred by lack of personal jurisdiction.

5.     The Plaintiff's alleged damages were not proximately caused by an act or omission of this Defendant.

6.     The Plaintiff's damages are speculative and not recoverable.

7.     The damages alleged by Plaintiff were caused or proximately caused by some persons or third parties other than Defendant for whom Defendant is not legally responsible.

8.     The damages, if any, recoverable by Plaintiff must be reduced by any amount of damages legally caused by Plaintiff's failure to mitigate such damages in whole or in part.

9.     There was insufficiency of service of process upon this answering Defendant by Plaintiff.

10.     Plaintiff failed to join necessary or indispensable parties in this action in accordance with the Wyoming Rules of Civil Procedure 12(b)(7) and 19.

11.     Plaintiff waived its right to assert the claims stated in the Complaint.

12.     Plaintiff lacks standing and is not the real party in interest.

13.     Plaintiff does not have the legal capacity to bring this action.

Defendant expressly reserves the right to assert any additional affirmative defenses that may become apparent through discovery in this case and expressly reserves the right to amend its Answer to assert any such affirmative defenses.  Defendant further relies upon any law that becomes available to it after the completion of discovery and investigation of this case.

WHEREFORE Defendant prays for relief against Plaintiff as follows:

A.     That the Plaintiff takes nothing by reason of its Complaint;

B.     That a judgment be entered in favor of this Defendant; and

C.     For such further and other relief as the Court deems just, equitable and proper.

**IN THE ALTERNATIVE, DEFENDANT STEVE BONTECOU'S COUNTERCLAIMS, THIRD PARTY COMPLAINT AND DEMAND FOR JURY TRIAL**

## JURY TRIAL DEMANDED

**COMES NOW** Steve Bontecou as Defendant and Counterclaim/Third Party Plaintiff (hereinafter "Steve Bontecou" or "Plaintiff"), by and through its undersigned counsel, The Richard Law Firm, P.C., and for its Counterclaims, Third Party Complaint and Jury Demand, states and alleges as follows:

### NATURE OF ACTION

1.      Steve Bontecou has filed a Motion to Dismiss arguing that he did not take any actions in his individual capacity and is not a proper party to this action.  Without waiving that defense and all other defenses, Mr. Bontecou pleads these counterclaims in the alternative and in the event that he is not dismissed as a party.

2.      Counterclaim/Third Party Plaintiff, Steve Bontecou (hereafter "Third Party Plaintiff" or "Steve Bontecou"), has suffered losses as a direct result of Charles M. Haden, Jr.'s actions which has resulted in financial damage for which Steve Bontecou now seeks relief.

### PARTIES, JURISDICTION AND VENUE

3.      Counterclaim/Third Party Plaintiff Steve Bontecou is and at all times relevant is a resident of Teton County, Wyoming.

4.      Counterclaim Defendant Nadowessioux Properties, Ltd.  ("Nadowessioux") is and at all times relevant hereto, a Texas limited partnership that upon information and belief, Mr. Haden owns or controls and uses as a vehicle to engage in various activities.  Nadowessioux Properties, Ltd. ("Nadowessioux") is the Plaintiff in the above captioned action.

5.      Third Party Defendant Charles M. Haden, Jr. ("Haden") is and at all times relevant hereto, the individual who entered into the Agreement with Bontecou Construction, Inc. and owns, or has held an ownership interest in, the real property where work was performed that forms the basis of this action in Teton County, Wyoming.

6.      This Court has jurisdiction over this action pursuant to Wyo. Stat. § 29-2-104 of the Wyoming Statutes.

7.      Venue is proper in this Court pursuant to Wyo. Stat. § 1-5-101.

## COMON FACTUAL BACKGROUND

8.    Steve Bontecou incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

9.    Bontecou Construction has been building custom homes in Jackson since 1976.

10.    In the summer of 2006, Charles Haden sought to contract with Bontecou Construction, Inc. for the completion of a construction project started by the previous homeowners for a one-of-a-kind custom home and grounds located at Lot 1 of The Homes at Amangani, according to that plat recorded in the Office of the Teton County Clerk on December 22, 1998 as Plat No. 943, Teton County, Wyoming. Some of the exterior work had been completed by the prior owners. The majority of the interior work had not been started on the Amangani home.

11.    For purposes of the estimate, limited plans for the project were provided to Bontecou Construction, Inc. including Patri Merker Architects plans, dated September 25, 2002.

12.    When Bontecou Construction, Inc., presented an initial estimate to Haden in May, 2006, no work had been done to the project for over two years, and that period of inactivity resulted in damage to the vacant building. Mr. Haden was aware of some visible water damage, and the possibility of additional unknown damage to the building such as damage to the mechanical systems, deteriorated insulation, gaps in stone flooring, etc. Steve Bontecou disclosed to Mr. Haden its concerns about these and other issues at the time of the estimate.

13.    After the parties engaged in several discussions and much negotiating, Defendants entered into a written agreement with Steve Bontecou dated August 28, 2006 (the "Agreement"). As part of the Agreement, the parties modified the AIA *Standard Form of Agreement Between Owner and Contractor* by incorporating a Job Cost Estimate dated July 26, 2006 and Addendum 1 and Addendum 2, both of which are also signed and dated August 28, 2006. Exhibit A. The Agreement included a Job Cost Estimate which noted that the cost of various items was only estimated and also noted that other bid information was incomplete or outdated. Mr. Haden was aware there were a number of costs that had not and could not be determined and confirmed this by initialing each page of the Job Cost Estimate.

14. Under the Agreement, Charles Haden is listed as the "Owner," and has at all times relevant hereto, acted in his individual capacity in dealing with and entering into the Agreement with Bontecou Construction, Inc.

15. Indeed, the name of the project listed on the Agreement is the "Haden Residence." Exhibit A.

16. Further, to the extend Nadowessioux is a legitimate business entity, which Steve Bontecou disputes, Charles Haden had authority to represent and bind Nadowessioux with respect to all matters related to the Agreement, and the work performed under the Agreement and on the project.

17. Under the Agreement, Bontecou Construction, Inc. is listed as the "General Contractor."

18. At all times material to this action, Steve Bontecou acted as an agent and employee of Bontecou Construction, Inc., acting within the scope and capacity of his agency and employment.

19. Bontecou Construction complied in all material respects with its contractual obligations under the Agreement.

20. Charles Haden has breached the Agreement and has caused damage to Steve Bontecou and Bontecou Construction as a result of such actions. For example, Defendants have failed to pay Bontecou Construction for labor performed and materials provided for the construction of the improvements on Lot 1 of the Homes at Amangani (the "Property").

21. Specifically, per the Agreement, Mr. Haden promised to pay Bontecou Construction for the construction of Haden's custom home and landscaping on the property located at Lot 1 of The Homes at Amangani, located at 1605 N Amangani Drive, Jackson, Wyoming (the "Project").

22. Pursuant to Article 5.2 of the Agreement, the parties agreed that there would be a guaranteed maximum price, or a ceiling, which would be modified upwards for site conditions, changes by the owner and other changes to the Project.

23. Pursuant to the Agreement, Bontecou Construction, Inc. began work, and entered into subcontracts with trade contractors for specific portions of the work to be performed under the Agreement (the "Work").

24.     Throughout the project, the Hadens and their architect, John Galambos, made material and substantial changes to the plans and design. The Hadens' promised to pay Bontecou Construction, Inc. for these additional costs consistent with the Agreement. For example, the cost for the original landscape plan was approximately $55,000. As a result of the substantial additions directed by Mr. Haden, the cost of the landscaping increased to approximately $114,000.

25.     Bontecou Construction, Inc. complied in all material respects with its contractual obligations under the Agreement.

26.     However, Haden breached his obligations and the Agreement by failing to pay Bontecou Construction, Inc. for supplied labor, materials, supplies, work and services. Specifically, Defendants still owe Bontecou Construction, Inc. a substantial amount of money for work performed and services rendered on the improvements to Lot 1 of The Homes at Amangani.

## FIRST CLAIM: BREACH OF AGREEMENT

27.     Steve Bontecou incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

28.     Bontecou Construction entered into the Agreement with Defendant on August 28, 2006, and thereafter with the consent of Defendant entered into subcontracts with trade contractors for specific portions of the Work to be performed under the Agreement.

29.     Among other obligations, Defendant was required to timely process all Change Orders and to timely process and approve Bontecou's pay applications, and to timely pay for work performed by Bontecou and his subcontractors.

30.     Defendant breached the Agreement in a number of respects, including but not limited to, specifically directing the following modifications and changes to the Agreement without paying for the same:

       a.     Mr. Haden redesigned the whole kitchen and directed substantial additional costs;

       b.     Masonry changes, including but not limited to, a new driveway planter and a change in the front entry from concrete to Oakley Stone tiles;

    c.      Multiple landscaping changes, including but not limited to, electrical additions to landscape lighting;

    d.      Re-siding of north elevation, which was later expanded to include the re-siding of the rest of the elevations;

    e.      Multiple HVAC changes, including but not limited to, adding duct work and extension of flues;

    f.      Various structural changes;

    g.      Additional staircase lighting;

    h.      Numerous changes to the existing chimney; and,

    i.      Added extremely expensive steel panels at several locations.

These additions are just some of the changes made by Haden to the Project that the Hadens have not paid Steve Bontecou for. Steve Bontecou has spent substantial sums at Mr. Haden's direction and has not been paid for those sums as promised. In short, Defendants have breached the Agreement by their failure to act on pay applications and change orders and their failure to timely pay amounts owed to Steve Bontecou.

31.     Steve Bontecou timely notified Mr. Haden that his breaches of the Agreement and refusal to pay were substantially and materially impacting Steve Bontecou and his subcontractors.

32.     In accordance with the objectives of the parties' Agreement, Steve Bontecou reasonably expected that Defendant would timely process Steve Bontecou's pay applications, and approve Change Orders in good faith and on commercially reasonable terms in accordance with construction industry standards, and timely pay the amounts owed Steve Bontecou.

33.     The various breaches by Mr. Haden were contrary to the Agreement.

34.     As a direct and proximate cause of Charles Haden's breaches of the Agreement, including but not limited to, his failure to pay amounts due and owing for work performed on Lot 1 of The Homes at Amangani, Steve Bontecou has suffered direct damages in an amount to be determined in this action, but believed to be no less than at least Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents

($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34).

## SECOND CLAIM: FORECLOSURE OF LIEN

35.     Steve Bontecou incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

36.     On or about August 28, 2006, Steve Bontecou began furnishing labor, services and materials and constructing improvements on the Property. Mr. Haden continued to make representations and promises confirming that he would pay for the work.

37.     Steve Bontecou continued to perform work and furnish labor, services and materials for the construction of the improvements on the Property through and up to December 27, 2007.

38.     There remains a balance due and owing to Steve Bontecou for work performed by him and his subcontractors under the Agreement in the amount to be proven at trial, but believed to be at least Six Hundred  Eighty Thousand  Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34).

39.     Steve Bontecou has demanded that Mr. Haden pay the amounts due and owing, but he has wrongfully refused to pay Steve Bontecou.

40.     As a result of Defendant's refusal to pay Bontecou Construction, Inc., on March 17, 2008, Steve Bontecou provided Defendant notice of its intention to file a lien that would encumber the Property.

41.     On March 31, 2008, Bontecou Construction, Inc. filed its Lien Statement with the Clerk of Teton County, Wyoming, against the property commonly known as Lot 1 of The Homes at Amangani, as more fully described in the Lien Statement which has been filed with the Teton County Clerk.

42.     On or about March 31, 2008, Bontecou Construction, Inc. sent Defendants and their local counsel a copy of the Lien Statement.

43.     Bontecou has not been paid for the work performed and materials furnished by him and his subcontractors to construct the improvements to the Property, and is owed exclusive

of costs, interest and attorney's fees, the sum of at least Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34).

44. Steve Bontecou requests that the Court enter judgment in favor of Steve Bontecou for the amount determined to be due and owing to it from Mr. Haden, and foreclose Steve Bontecou's Lien pursuant to Wyo. Stat. § 29-2-109 for at least the amount of Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), plus retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a total of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34), exclusive of additional costs, interest and attorney's fees.

## THIRD CLAIM: PROMISSORY ESTOPPEL

45. Steve Bontecou incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

46. Throughout the Project, Haden promised Plaintiff Steve Bontecou that he would pay for the work performed and materials used on the Project.

47. Based on his promises, Charles Haden and Nadowessioux Properties are now estopped from denying their obligation to pay Steve Bontecou for his work on the Project.

48. For example, Charles Haden is estopped from denying that pursuant to Article 5.2 of the Agreement, Haden is obligated to pay for additional costs such as costs of changes directed by the Owners, and additional costs resulting from the site conditions.

49. On or about August 28, 2006, Mr. Haden entered into an Agreement in the form of a written standard form AIA agreement A111-1997, whereby Mr. Haden agreed to pay for the construction of the Hadens' custom home and landscaping on the property located at Lot 1 of The Homes at Amangani. Exhibit A. Mr. Haden made similar representations throughout the Project.

50. Steve Bontecou and Bontecou Construction, Inc. have acted to their detriment in reasonable reliance on the promises to pay made by Haden.

51.     Given that Steve Bontecou has spent substantial time and money to perform pursuant to the Agreement, which has resulted in the Hadens' ownership and enjoyment of a unique, world-class home, equity supports enforcement of Charles Haden's promises to pay for the work.

52.     Based on their reliance on the Hadens' promises and representations, Steve Bontecou has been harmed in an amount to be proven at trial

### IN THE ALTERNATIVE, FOURTH CLAIM FOR RELIEF: UNJUST ENRICHMENT/QUANTUM MERUIT

53.     Steve Bontecou incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

54.     Counterclaim/Third Party Plaintiff has supplied valuable services, materials and equipment to Defendants.

55.     The valuable services, materials and equipment provided by Counterclaim/Third Party Plaintiff was accepted, used and enjoyed by Counterclaim/Third Party Defendants.

56.     Counterclaim/Third Party Plaintiff provided the services, materials and equipment to Counterclaim/Third Party Defendants under such circumstances that Counterclaim/Third Party Plaintiff reasonably notified Counterclaim/Third Party Defendants that the services, materials and equipment were being provided in exchange for payment of a specified amount of funds for work ordered by Counterclaim/Third Party Defendants.

57.     Counterclaim/Third Party Plaintiff, in providing such services, materials, and equipment, expected to receive payment in full from Counterclaim/Third Party Defendants within a reasonable amount of time after each invoice was transmitted to Counterclaim/Third Party Defendants.  Counterclaim/Third Party Defendants have not paid Steve Bontecou for services, materials and equipment Plaintiff provided to Counterclaim/Third Party Defendants.

58.     If Counterclaim/Third Party Defendants are not ordered to pay the entire amount owed to Plaintiff for the outstanding invoices, Defendants will be unjustly enriched in an amount to be shown at trial.

### FIFTH CLAIM FOR RELIEF: FRAUD

59.     Steve Bontecou incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

60.    Based on the express terms of the Agreement, as well as throughout the Project, Defendants represented to Steve Bontecou that they would pay for any change orders or additions to the Project.

61.    Defendant Charles Haden and his agents directed Steve Bontecou to do additional work on the Project – work that he now has not paid for.

62.    The following are but some examples of the changes Charles Haden and his agents directed resulting in additional costs that Haden has not paid for:

    a.    replacement of defective boiler;

    b.    change in the thermostat from standard to AMX;

    c.    modification to enable air and heat for Spa room; Exhibit E, email from Charles Haden to Terry Ross, dated 1-03-07;

    d.    change to staircase lighting;

    e.    insulating Media Room with soft foam on ceiling and walls;

    f.    after changing plans to add wood flooring, changes mind again and returns to stone floors after sleepers are already installed:

    g.    adds bamboo drawers in kitchen;

    h.    adds Titus Grilles and registers, for more than $11,933.60 than original allowance;

    i.    additional landscaping for more than $33,060 over original bid; and,

    j.    additional snow melt on driveway.

63.    Charles Haden's representations and promises that he would pay for the work were false when made and were made with the intent that Steve Bontecou would rely on them.

64.    These representations were material.

65.    These representations were made to induce reliance upon them by Steve Bontecou, which did happen.

66.    Steve Bontecou justifiably relied upon such false and misleading representations of fact.

67.    Steve Bontecou was damaged by the fraudulent misconduct in an amount to be shown at trial

68.     The conduct of Defendants was willful and wanton, justifying the award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE, Counterclaim/Third Party Plaintiff Steve Bontecou prays to this Court for the following:**

A.     On  Steve Bontecou's Claims, including its First Cause of Action, Breach of Agreement, for a judgment against Counterclaim/Third Party Defendants and in favor of Steve Bontecou for all of Steve Bontecou's  direct and consequential damages in an amount to be determined by this Court at trial;

B.     On Bontecou's Second Cause of Action, Foreclosure of Lien, for a judgment against Counterclaim/Third Party Defendants and in favor of Steve Bontecou foreclosing Steve Bontecou's Lien pursuant to Wyo. Stat. § 29-2-109 for the amount determined to be due and owing to Steve Bontecou from Counterclaim/Third Party Defendants;

C.     On Steve Bontecou's Third Cause of Action, Promissory Estoppel, for a equitable judgment against Counterclaim/Third Party Defendants and in favor of Steve Bontecou finding that Counterclaim/Third Party Defendants are estopped from denying that they owe Steve Bontecou the amount determined to be due and owing to Steve Bontecou from Counterclaim/Third Party Defendants;

D.     On Steve Bontecou's alternative, Fourth Cause of Action, Unjust Enrichment / Quantum Merit, for a judgment against Counterclaim/Third Party Defendants that Defendants have been unjustly enriched by the work performed, services and materials provided in the amount determined to be due and owing to Steve Bontecou from Counterclaim/Third Party Defendants;

E.     On Steve Bontecou's Fifth Cause of Action, Fraud, for a judgment against Counterclaim/Third Party Defendants that Defendants knowingly committed fraud in the inducement for the amount determined to be due and owing to Steve Bontecou from Counterclaim/Third Party Defendants, as well as punitive damages in an amount sufficient to punish plaintiffs and to deter future conduct like that exhibited by Counterclaim/Third Party Defendants, such that other persons will be deterred from such conduct as well as the Counterclaim/Third Party Defendants.

F.    On all of Steve Bontecou's causes of action, for its costs and attorneys fees incurred herein, the amount of which is to be determined at trial; and,

G.    Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 8th day of September, 2008.

THE RICHARD LAW FIRM, P.C.

Andrea L. Richard #5-2848
199 East Pearl, Suite 102
P.O. Box 1245
Jackson, WY 83001

## CERTIFICATE OF SERVICE

This is to certify that on this 8th day of September, 2008, a true and correct copy of this **DEFENDANT STEVE BONTECOU'S ANSWER TO VERIFIED COMPLAINT, COUNTERCLAIMS, THIRD PARTY COMPLAINT AND JURY DEMAND** was served on the following via electronic mail and hand delivery:

Richard L. Nelson
Attorney at Law
P.O. Box 3158
Jackson, WY 83001
(307) 732-2180
(307) 732-2181 (Fax)
rlnelson@bresnan.net

*Attorney for Plaintiff / Counterclaim Defendants*

Of: The Richard Law Firm, P.C.

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

IN THE NINTH JUDICIAL DISTRICT COURT
TETON COUNTY, WYOMING

NADOWESSIOUX PROPERTIES )
A Texas limited partnership, )
)
Plaintiff, )
)
v. )      Civil Action No. 14630
)
BONTECOU CONSTRUCTION, INC., )
a Wyoming corporation, and STEVE )
BONTECOU, individually )
)
Defendants, )
)
BONTECOU CONSTRUCTION, INC., )
a Wyoming corporation, )
)
Third Party Plaintiff, )
)
v. )
)
CHARLES M. HADEN, JR., individually, )
)
Third Party Defendant )
_____ )

FILED
TETON COUNTY WYOMING
2008 SEP 26 AM 11 23
D Hassler, Deputy Clerk
CLERK OF DISTRICT COURT

## ANSWER TO CLAIMS BY STEVE BONTECOU

Nadowessioux Properties, Ltd. ("Nadowessioux") and Charles M. Haden, Jr. ("Haden") hereby answer the Counterclaims, Third Party Complaint and Demand for Jury Trial filed on 9/08/08 by or on behalf of Steve Bontecou (all such counterclaims, third party complaint and jury demand are referred to hereinafter collectively as the "Bontecou Complaint"), stating as follows:

### Answer to the Bontecou Complaint

1.      The allegations of only the first sentence of paragraph 1 of the Bontecou Complaint are admitted. As to the second sentence, if any answer be required, the allegations are denied.

2.      As to paragraphs 2 through 68 of the Bontecou Complaint, such paragraphs are improperly lifted by Bontecou, virtually verbatim, from paragraphs 1 through 67 of BCI's Counterclaims, Third Party Complaint and Demand for Jury Trial filed on 5/12/08 (collectively, the "BCI Complaint"). The only material differences are changing BCI's name to Bontecou's as the party allegedly entitled to relief. Therefore, the answers, admissions and denials made by Nadowessioux and Haden in paragraphs 2 and 3 of their Reply and Answer filed on 5/27/08 in

response to the allegations in the BCI Complaint filed on 5/12/08 are equally applicable to Bontecou's new claims filed on 9/8/08. Such answers, admissions and denials are incorporated herein by reference and are hereby re-alleged in their entirety in response to the corresponding allegations now made by Bontecou in paragraphs 2-68 of the Bontecou Complaint.

3. Nadowessioux and Haden further incorporate herein by reference and re-allege paragraph 4 of their Reply and Answer in response to the corresponding paragraphs of the Bontecou Complaint, except for correcting the word "responsible" so that it reads "responsive."

4. As to each and every paragraph or claim in the Bontecou Complaint, Nadowessioux and Haden specifically deny that Bontecou is entitled to any relief whatsoever.

**Affirmative Defenses to the Bontecou Complaint**

The following affirmative defenses are asserted by Nadowessioux and Haden in the alternative.

1. The Bontecou Complaint fails to state a claim upon which relief can be granted;

2. Bontecou is precluded from pursuing his affirmative claims in Wyoming courts to the extent his alter ego, BCI, fails to comply with the corporate requirements of the Wyoming Secretary of State.

3. Bontecou, who purportedly acted as BCI's agent and representative, has, by reason of such alleged capacity, no independent claim for "breach of agreement," "foreclosure of lien," "promissory estoppel," "unjust enrichment/quantum meruit" or "fraud." BCI, as the purported principal, has asserted that it owns those claims and that Bontecou acted in a representative capacity.

4. Bontecou has now judicially admitted by his affirmative claims in the Bontecou Complaint, which directly contradict the BCI Complaint as to ownership of such claims, that he is the alter ego of BCI and treats the corporation as a mere shell, sham, device or artifice to defraud those with whom he or BCI deal, including Nadowessioux and Haden. He and BCI are therefore both precluded from any recovery by their wrongdoing and both are liable for the wrongful acts of either.

5. Each and every affirmative defense asserted by Nadowessioux and Haden on 5/27/08 in response to the BCI Complaint is incorporated herein by reference and re-alleged in the alternative against the Bontecou's claims in the Bontecou Complaint.

WHEREFORE, Nadowessioux and Haden request that Bontecou take nothing by his claims against them or either of them, that they recover their costs, that Nadowessioux be granted judgment against both Bontecou and BCI for the full amount of Nadowessioux's claims, and for such further relief as may be appropriate.

DATED this 26th day of September, 2008.

Richard L. Nelson
Attorney at Law
Wyoming State Bar No. 6-4103
P.O. Box 3158
Jackson, WY 83001
(307) 732-2180
(307) 732-2181 (Fax)
rlnelson@bresnan.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the following person(s) on the date and by all of the methods indicated below.

| | | |
|---|---|---|
| The Richard Law Firm, P.C. | [X] | First Class U.S. Mail |
| Andrea L. Richard | [ ] | Certified Mail RRR |
| 199 East Pearl, Suite 102 | [ ] | Fax |
| P.O. Box 1245 | [ ] | Hand Delivery |
| Jackson, WY 83001 | [ ] | Overnight Courier |
| (307) 732-6638 (Fax) | [X] | Email |
| andrea@arichardlaw.com | | |
| Attorneys for Bontecou Construction, Inc. | | |
| And Steve Bontecou, individually | | |

Date: 9/26/08

Richard L. Nelson

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

NADOWESSIOUX PROPERTIES, INC.,  )
a Texas limited partnership,         )      Civil Action No. 14630
                                     )
                 Plaintiff,          )
                                     )      ORDER FOR HEARING
        vs.                          )
                                     )
BONTECOU CONSTRUCTION, INC.,         )
et al.,                              )
                                     )
                 Defendants.         )

FILED 2008 NOV 21 PM 12 45 CLERK OF DISTRICT COURT TETON COUNTY WYOMING

Multiple motions have been filed in this matter including Plaintiff's Motion to Realign Parties, Plaintiff's Motion to Strike Unauthorized "Response" to Reply, Plaintiff's Opposition to Proposed Stipulated Protective Order, Plaintiff's Motion for Leave to File First Supplemental Complaint and Jury Demand, Plaintiff's Motion for Partial Summary Judgment and Defendant's Bontecou's Motion to Strike Affidavits. The Court has reviewed the Motion to Strike Unauthorized "Response" to Reply and will grant that motion.

IT IS ORDERED:

1.      Plaintiff's Motion to Strike Unauthorized "Response" to Reply is hereby granted.

2.      A hearing on the remaining motions will be held on the 1st day of December, 2008 at 1:30 p.m. in the District Courtroom of the Teton County Courthouse, Jackson, Wyoming. Two (2) hours are set aside for the hearing. (one hour for π; one hour for Δ)

DATED the 21st day of November, 2008.

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this 21 day of NOV 20 08 .

R. Nelson
A. Richard

By Gay M. Williamson, Dep

Nancy J. Guthrie
District Judge

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

| | | |
|---|---|---|
| NADOWESSIOUX PROPERTIES, INC., a Texas limited partnership, | ) ) ) | |
| | ) | Civil Action No. 14630 |
| Plaintiff, | ) ) | |
| | ) | ORDER CONTINUING HEARING |
| vs. | ) ) | |
| BONTECOU CONSTRUCTION, INC., et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

FILED
2008 DEC 1 AM 11 59
D Hassler, Deputy Clerk
CLERK OF DISTRICT COURT
TETON COUNTY WYOMING

Bontecou Construction and Steve Bontecou have filed a Motion to Continue Hearing in this matter. Plaintiff has filed an Opposition and a Supplemental Opposition and Defendants have filed a Supplement to its Motion. The Court has considered the Motion, the Opposition and the Supplements. This hearing was set with very little notice to counsel and the Court understands that counsel generally have a difficult time rearranging their schedules with such short notice. The Court would also prefer to hear Defendants' Cross Motion for Partial Summary Judgment at the same time. Therefore,

IT IS ORDERED:

1. Plaintiff's Motion to Realign Parties, Plaintiff's Opposition to Proposed Stipulated Protective Order, Plaintiff's Motion for Leave to File First Supplemental Complaint and Jury Demand and Defendant's Motion to Strike Affidavits will be heard on the 16th day of December, 2008 at 1:30 p.m. by conference telephone call to the Court at 763-1461. Forty-Five minutes is set ~~Twenty Two and a half minutes /side~~ aside for the hearing. Counsel for Plaintiff shall arrange a conference call with opposing counsel and the Court at the appointed hour.

2. Defendants shall file their Cross Motion for Partial Summary Judgment on or before December 12, 2008. Any response shall be filed within twenty days of the filing of the motion. A hearing on Plaintiff's Motion for Partial Summary Judgment and Defendants' Cross Motion for

Partial Summary Judgment will be held on the 20th day of January, 2009 at 1:30 p.m. in the District Courtroom of the Teton County Courthouse, Jackson, Wyoming. One and one-half hours are set aside for the hearing.

3. Counsel shall notify the Court within five days if they have a conflict with either of the dates set forth above.

DATED the 1st day of December, 2008.

Nancy J. Guthrie
District Judge

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this _____ day of _____ 20 _08_ .

R. Nelson

Cl. Richard

By _____ D Hassler, Deputy Clerk

*NADOWESSIOUX PROP. v. BONTECOU CONSTR., et al.*
*Civil Action No. 14630*
*ORDER CONTINUING HEARING*
*Page 2 of 2*

**IN THE NINTH JUDICIAL DISTRICT COURT**
**TETON COUNTY, WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| NADOWESSIOUX PROPERTIES<br>A Texas limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>BONTECOU CONSTRUCTION, INC.,<br>a Wyoming corporation, and STEVE<br>BONTECOU, individually<br><br>Defendants,<br><br><br>BONTECOU CONSTRUCTION, INC.,<br>a Wyoming corporation,<br><br>Third Party Plaintiff,<br><br>v.<br><br>CHARLES M. HADEN, JR., individually,<br><br>Third Party Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 14630

TETON COUNTY WYOMING
2008 DEC 10 PM 3 43
D Hassler, Deputy Clerk
CLERK OF DISTRICT COURT
FILED

## ORDER ALLOWING WITHDRAWAL OF COUNSEL

The Court, having received the Motion for Withdrawal of Counsel filed by Richard L. Nelson, and having determined that such motion is in compliance with rules pertaining to withdrawal of counsel, hereby orders as follows:

ORDERED:

1. That Richard L. Nelson is hereby permitted to withdraw as counsel of record for Plaintiff and Third Party Defendant.

2. Bret F. King shall remain as counsel for said parties.

DATED this _____ day of December, 2008.

Nancy J. Guthrie
District Judge

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this _10_ day of _Dec_ 20_08_.

R. Nelson
B. King
A. Richard

By _D Hassler, Deputy Clerk_

# IN THE DISTRICT COURT OF TETON COUNTY, WYOMING
## NINTH JUDICIAL DISTRICT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, | ) |
| Plaintiff, | ) |
| vs. | ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, and STEVE BONTECOU, individually, | ) ) ) ) |
| Defendants, | ) ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, | ) ) ) |
| Third Party Plaintiff, | ) ) |
| vs. | ) ) |
| CHARLES M. HADEN, JR., individually, | ) ) |
| Third Party Defendant. | ) |

Civil Action. No. 14630

**FILED**
U.S. DISTRICT COURT
DISTRICT OF WYOMING
DEC 28 2010
Stephan Harris, Clerk
Cheyenne

---

## ORDER GRANTING DEFENDANT'S MOTION FOR ADDITIONAL TIME TO RESPOND TO DISCOVERY PURSUANT TO RULE 6(b)

---

**THIS MATTER**, having come before the Court on the Defendant's Rule 6(b) Motion for Extension of Time to file its responses to discovery and the Court having considered the same, therefore finds as follows:

1.     Pursuant to Rule 6(b) of the Wyoming Rules of Civil Procedure a party may be given an extension of time of fifteen (15) days to answer and respond to discovery.  Pursuant to the specific provisions of Rule 6(b)(2) an extension of fifteen (15) days is appropriate.

2.     This motion is timely filed and this extension will not conflict with any order of the Court and no party will be unduly prejudiced by an enlargement of time of fifteen (15) days for Defendants to file their response to discovery.

3.     Likewise, there has been no prior extension of time granted with respect to responding to discovery.

**IT IS THEREFORE HEREBY ORDERED** that Defendants' Motion for a fifteen (15) day enlargement of time to file response to discovery in the above-captioned matter is hereby GRANTED and that Defendants shall file their supplemental responses

to discovery on or before December 10, 2008

**IT IS SO ORDERED** this _____ of December, 2007.

The Honorable Nancy J. Guthrie
District Court Judge

CERTIFICATE OF SERVICE
This is to certify that a copy of the
foregoing was duly served by prepaid
mail upon the following persons at
their last known address this _10_ day
of _Dec_ 20 _08_.

B King

A Richard

By _____ D Hassler, Deputy Clerk

# IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

## NINTH JUDICIAL DISTRICT

NADOWESSIOUX PROPERTIES, INC.,
a Texas limited partnership,

        Plaintiff,

        vs.

BONTECOU CONSTRUCTION, INC.
et al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 14630

**FILED**
**U.S. DISTRICT COURT**
**DISTRICT OF WYOMING**

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

---

## ORDER ON STIPULATED MOTION FOR CONTINUANCE OF HEARING

The Plaintiff having filed a Stipulated Motion for Continuance of Hearing and the Court having read and considered said Motion, and finding good cause to grant the same,

IT IS HEREBY ORDERED that the Defendant's Motion for Continuance of Hearing is hereby GRANTED.

IT IS FURTHER ORDERED that the hearing be reset for the 20th day of January, 2009 at 1:30 o'clock P.M. The hearing in its entirety is scheduled for Two + one-half hours.

DATED this 16 day of December, 2008.

Nancy J. Guthrie
District Court Judge

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this 16 day of Dec 20 08.

A Richard
B King

By    D Hassler, Deputy Clerk

IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

| | |
|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, | ) |
| Plaintiff, | ) |
| vs. | ) |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, and STEVE BONTECOU, individually, | ) |
| Defendants, | ) Civil Action No. 14630 |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, | ) |
| Third Party Plaintiff, | ) |
| vs. | ) |
| CHARLES M. HADEN, JR., individually, | ) |
| Third Party Defendant. | ) |

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 28 2010

Stephan Harris, Clerk
Cheyenne

---

### ORDER GRANTING STIPULATION TO AMEND SCHEDULING ORDER

THIS MATTER is before the Court on the *Stipulation to Amend Scheduling Order*, filed jointly by the Parties, Charles Haden and Nadowessioux Properties Ltd. ("Plaintiff") and Steve Bontecou and Bontecou Construction, ("Defendants"). The Court, after reviewing the Stipulation and such other matters as the Court deemed appropriate, finds and concludes that the Stipulation is well-taken, and that the relief requested therein should be granted. Based upon the foregoing and good-cause appearing therefore, **IT IS HEREBY ORDERED** as follows:

1. The Stipulation shall be, and it hereby is, approved in all its particular, and the relief requested therein shall be, and it hereby is, granted.

2. The discovery cutoff is extended to April 7, 2009.

3. Plaintiff shall have up to and including January 15, 2009, to designate its expert witnesses.

4. The expert designation deadline for Defendant is extended up to and including February 17, 2009.

*Order Granting Stipulation to Amend Scheduling Order*
Page 1 of 1

5. The Court has set the pretrial conference and the dispositive motion hearing for April 13, 2009, at 1:30 p.m. This hearing and the remaining deadlines will remain in place as established by the Court's Order.

DATED this **31** day of _____**Dec**_____, 200**8**

BY THE COURT:

Honorable Nancy J. Guthrie
District Court Judge

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this **31** day of **Dec** 20 **08**.

A Richard
B King

By_____

*Order Granting Stipulation to Amend Scheduling Order*
Page 2 of 1

**IN THE DISTRICT COURT OF TETON COUNTY, WYOMING**

**NINTH JUDICIAL DISTRICT**

NADOWESSIOUX PROPERTIES, INC.,  )
a Texas limited partnership,  )
  )
Plaintiff,  )
  )
vs.  )
  )
BONTECOU CONSTRUCTION, INC.,  )
a Wyoming corporation and STEVE  )
BONTECOU, individually.  )
  )
Defendants.  )
  )
BONTECOU CONSTRUCTION, INC.,  )     Civil Action No. 14630
a Wyoming corporation,  )
  )
Third Party Plaintiff,  )
  )
vs.  )
  )
CHARLES M. HADEN, JR., individually,  )
  )
Third Party Defendant.  )
  )

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
DEC 28 2010
Stephan Harris, Clerk
Cheyenne

---

**ORDER GRANTING MOTION FOR ADDITIONAL TIME TO RESPOND TO
THE DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT**

---

The Plaintiff having filed a Motion for Additional Time to Respond to the

Defendants' Cross Motion for Partial Summary Judgment and the Court having read and

considered said Motion, and finding good cause to grant the same,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Additional Time to

Respond to the Defendants' Cross Motion for Partial Summary Judgment is hereby

GRANTED.

IT IS FURTHER ORDERED that Plaintiff's response to said Motion is due on or

before January 15, 2009.

CERTIFICATE OF SERVICE
This is to certify that a copy of the
foregoing was served by mail/fax
upon the following persons at
their last known address this __ day
of _JAN_ 20 _09_.

_Richard A._
_King, B._

By _D. Mahoney_

_____ day of _____, 200_

Nancy J. Guthrie
District Court Judge

Andrea L. Richard
Jennifer A. Golden
THE RICHARD LAW FIRM, P.C.
199 E. Pearl Ave., Suite 102
P.O. Box 1245
Jackson, WY 83001
(307) 732-6680
(307) 732-6638 Fax

## IN THE DISTRICT COURT OF TETON COUNTY, WYOMING

### NINTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, and STEVE BONTECOU, individually, | ) ) ) ) | |
| Defendants, | ) ) | Civil Action. No. 14630 |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation, | ) ) ) | |
| Third Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| CHARLES M. HADEN, JR., individually, | ) ) | |
| Third Party Defendant. | ) | |

## STIPULATED PROTECTIVE ORDER

By agreement of the parties, the Court hereby enters a Stipulated Protective Order, as follows:

1.  Confidential Information.  It is anticipated that some documents, testimony and information to be disclosed in the discovery or trial of this action will be entitled to be treated as "confidential information" deserving of protection under this Protective Order.

(a) No information, documents or testimony (at hearing or deposition) concerning matters generally and readily in the public domain or readily accessible to the members of the public shall be appropriate for designation as CONFIDENTIAL within the meaning of this agreed Order.

(b) No provision of this Stipulated Order is intended to require or create any

*Stipulated Protective Order*
*Page 1 of 7*

waiver or compel any disclosure of matters, information or documents that would otherwise be protected by the attorney client privilege, work product privilege or any other applicable legal protection. No provision of this Stipulated Protective Order is a basis for requesting or allowing discovery of information or documents that are otherwise subject to any objection or protections under applicable law.

      2.    <u>Designation of Confidential Information</u>. Any document or information containing personal or business financial information of the parties or their related entities such as financial statements, tax returns, bank statements, banking documents and the like or confidential or proprietary information belonging to third parties produced in discovery or entered in the record may be designated as confidential information by the producing party placing a stamp "Confidential" on the first page of the document or otherwise marking the document or the confidential information with the word "Confidential." Testimony at depositions or Court hearings may be designated as confidential by either party promptly raising that issue at hearings or immediately noting in the deposition record the particular answers or subject matter claimed to be entitled to protection under this Order and for documents, Court filings and other similar matters by serving written notice on the opposing party within 10 business days after filing, service or receipt of allegedly confidential materials.

      (a) If the opposing party objects to the confidential designation, of any document, record, Court filing or any portion of a hearing or deposition testimony that party shall promptly object at the hearing or on the deposition record or for documents, Court filings or similar materials by giving written notice of objection to confidential designation by the other party within ten (10) business days of receipt of the other parties "Confidential" designation. The parties shall within five (5) days thereof consult and attempt to resolve the disagreement.

      (b) In the event the parties are unable to consult or agree on whether particular documents or testimony merit inclusion under the terms of this Protective Order, the party seeking to keep the documents or testimony confidential may file a Motion for a Protective Order and a Request for Hearing with the Court within ten business (10) days following the deadline for consultation provided in 2(a) above. In every instance the burden of proof and persuasion on the need for confidentiality shall be on the moving

party and this Stipulated Protective Order shall not create any presumptions or shift the burden to the opposing party.

(c) The disputed documents or testimony shall be treated as subject to the provisions of this Protective Order pending the decision of the Court, unless the proponent of confidentiality fails to file and serve the Motion for a Protective Order described above, in which event the restrictions of this Stipulated Protective Order no longer apply all such protections having been waived by the failure to file the Motion.

3.    Use of Confidential Information. Information designated as confidential may be used only by those persons listed in paragraph 4 of this Protective Order and only for purposes necessary or reasonably related to this litigation and for no other purpose. No confidential information may be disclosed to a non-party to this litigation, (except those persons or entities listed or described in Paragraph 4 below) without the written consent and approval of the opposing party, or the Court.

(a) Any non-party who is allowed access to confidential information shall be required to sign a statement in the form of Exhibit A hereto confirming that the non-party has read and agrees to abide by the terms of this Protective Order and that the non-party shall not, intentionally, directly or indirectly, use, disclose or disseminate, or attempt to use, disclose or disseminate, any confidential information except as reasonably required in the context of this litigation. Any non-party who is allowed access to confidential information shall take reasonable precautions to prevent unauthorized or inadvertent disclosure of the confidential information.

4.    Access to Confidential Information. Access to information subject to this Order

Shall be limited to the following:

       (a)      The Court;

       (b)      Parties of record;

       (c)      Counsel of record for the parties, and secretaries, paralegals and other staff employed or working in the offices of counsel of record;

       (d)      non-party witnesses anticipated to testify at trial, including expert witnesses, whose testimony reasonably requires access to information subject to this Protective Order; such witnesses shall

*Stipulated Protective Order*
*Page 3 of 7*

be provided with a copy of this Protective Order and sign a

certification that they understand and accept that information

subject to this Order may be used only for purposes of this

litigation and for no other purpose; and

(e)     non-testifying expert witnesses whose assistance reasonably

requires access to information subject to this Protective Order;

such witnesses shall be provided with a copy of this Protective

Order and sign a certification that they understand and accept that

information subject to this Protective Order may be used only for

purposes of this litigation and for no other purpose.

(f)     Counsel for the parties shall take reasonable steps to keep a record

of the persons, firms or others to whom the protected documents

are made available or copied. The record shall be kept until the

case is concluded and the records are dealt with in accordance with

this Order.

5.     Copying of Confidential Information. Parties and their respective counsel shall be entitled to make only such copies of any information subject to this Order as are reasonably required to conduct this litigation.

6.     Use of Confidential Information in Court Filings. In the event that a party wishes to use designated confidential information in any affidavits, briefs, memoranda of law or other papers filed with the Court in this litigation, the party shall either file said information under seal or move that such confidential information be sealed. The Court will rule on the need for such a restriction as needed.

7.     Use of Confidential Information at Trial. The parties reserve the right to protect designated confidential information subject to this Protective Order by moving the Court to seal documents introduced into evidence at trial.

8.     Obligations of Counsel. Counsel for each party shall take reasonable precautions to prevent the unauthorized or inadvertent disclosure of any confidential information. Counsel shall be responsible for retaining signed copies of the certification attached hereto as Exhibit A and shall produce the same on request of the other party or the Board.

*Stipulated Protective Order*
*Page 4 of 7*

9.    Return After Conclusion of Litigation.  At the conclusion of this litigation, including trial and any subsequent appeal, counsel for Plaintiff and counsel for Defendant shall return to opposing counsel all confidential information and all copies, extracts, and summaries thereof produced by the opposing party.

10.    Waiver.  Nothing contained herein shall waive any objection by a party to the disclosure or admissibility of any document or information.

11.    Release of Record on Appeal.  In the event of an appeal, no provision herein shall be construed to restrict the right or ability of counsel for any party to obtain custody of the record on appeal as otherwise allowed by the rules of the applicable appellate court.

DATED this 29th day of Jan, 2008.


BY THE COURT:



The Honorable Nancy J. Guthrie
District Court Judge


CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this 29 day of Jan 20 09.

A. Richard
B. King



By _____

*Stipulated Protective Order*
*Page 5 of 7*

*Stipulation of Counsel*

The Parties to the above captioned case, by and through their undersigned counsel hereby Stipulate and Agree that the Court may, for the benefit of all parties and in an attempt to streamline and more efficiently handle and resolve discovery disputes involving claims of confidentiality in this case, enter the Stipulated Protective Order in the form set forth above.

Bret E. King
Attorney at Law
P.O. Box 40
Jackson, WY 83001
(307) 733-2904
(307) 733-1058 (Fax)
kinglaw@wyom.net
*Attorney for Plaintiff and Third Party Defendant*

Andrea L. Richard
Jennifer A. Golden
The Richard Law Firm, P.C.
Attorneys for Plaintiff
P.O. Box 1245
199 East Pearl Avenue, Suite 102
Jackson, WY 83001
(307) 732-6680
andrea@arichardlaw.com

*Attorneys for Bontecou Construction, Inc. and Steve Bontecou*

*Stipulated Protective Order*
*Page 6 of 7*

FULL CAPTION OF CASE ON EACH AGREEMENT

**Exhibit A To Stipulated Protective Order**

1.      I, _____(insert name and street and mailing address)__, have read the
foregoing Stipulated Protective Regarding Confidentiality of Discovery dated
_____, 2007 (the "Order"), and agree to be bound by its terms with respect to
any documents or information marked "CONFIDENTIAL" that are furnished to me as set
forth in the Order.

2.      I further agree (i) not to intentionally disclose to anyone any documents or
information marked "CONFIDENTIAL" other than as set forth in the Order, and (ii) not
to disseminate or distribute any copies, summaries or extracts of any documents or
information marked "CONFIDENTIAL" furnished to me except in accordance with the
Order.  I further agree that I shall take reasonable precautions to prevent unauthorized or
inadvertent disclosure of any documents or information marked "CONFIDENTIAL."

3.      I hereby consent to the jurisdiction of the Ninth Judicial District Court, in
and for Teton County Wyoming, with regard to any proceedings to enforce the terms of
the Order.

4.      I hereby agree that any documents, material, or information marked
"CONFIDENTIAL" furnished to me will be used by me only for the purposes of this
litigation and for no other purpose, and will not be used by me in any business affairs of
my employer or of my own or be imparted by me to any other person.

DATED this _____ day of _____, 2007.


_____
Signature                    Date

IN THE NINTH JUDICIAL DISTRICT COURT

TETON COUNTY, WYOMING



NADOWESSIOUX PROPERTIES, LTD. )
a Texas limited partnership, and )
CHARLES M. HADEN, JR., )
individually, )
                                )
       Plaintiffs, )
                                )
vs. )
                                )
BONTECOU CONSTRUCTION, INC., )
a Wyoming corporation, and STEVE )
BONTECOU, individually )
                                )
       Defendants. )

FILED COURT
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 23 2010

Stephan Harris, Clerk
Cheyenne

Civil Action No. 14630

---

## ORDER ON MOTIONS

      THIS MATTER came on for hearing on January 20, 2009 upon Plaintiff's Motion for

Partial Summary Judgment, filed October 29, 2008, and Defendant's Motion for Partial

Summary Judgment, filed December 12, 2008. The Court also took the opportunity to hear any

further arguments on other pending motions. Plaintiffs were represented by attorney Bret F.

King, and Defendants were represented by attorney Andrea L. Richard. Upon hearing

arguments, reviewing briefs and exhibits, and being advised in the premises, the Court finds as

follows:

### Background Facts:

1.   Petitioner Nadowessioux Properties, Ltd. ("Nadowessioux") is a Texas limited

    partnership whose general partner is Shoshoni, LLC. Charles M. Haden, Jr. is the

    managing member of Shoshoni. On August 28, 2006, Nadowessioux, through its agent

    Charles M. Haden, Jr., signed a contract with Bontecou Construction, Inc. ("Bontecou")

    to complete construction of a home on Nadowessioux's property, described as Lot 1 of

    the Homes at Amangani, Teton County, Wyoming.

2.   Work on the project began on September 4, 2006, and Bontecou provided labor and

    services until December 27, 2007. Construction was halted due to conflict over payment

    under the contract.

3. On March 17, 2008, Bontecou provided notice to Nadowessioux of his intention to file a lien against the Amangani property pursuant to Wyo. Stat. § 29-2-107. On March 31, 2008, Bontecou filed a Lien Statement with the Teton County Clerk, in compliance with the provisions of Wyo. Stat. § 29-1-301 and § 29-1-106.

4. On April 22, 2008, Nadowessioux filed a complaint against Plaintiffs, claiming breach of contract, release of lien, and slander of title.

5. On May 12, 2008, Defendant answered with counterclaims against Nadowessioux, charging breach of agreement, foreclosure of lien, promissory estoppel, unjust enrichment/quantum meruit, and fraud. Defendant simultaneously, as a third party plaintiff, filed a third party complaint against Charles M. Haden, Jr. naming him as a third party defendant. Claims against Haden are identical with counterclaims against Nadowessioux.

**Realignment of Parties:**

6. On July 31, 2008, Plaintiff and Third Party Defendant submitted a Motion to Realign Parties for the purpose of judicial economy and fairness and to avoid juror confusion. According to the Motion, Third Party Defendant Charles Haden would be realigned as a party Plaintiff. The Third Party Complaint against him would be re-designated as a Counterclaim.

7. Defendant objected to the realignment, charging it was premature because the capacity of Haden in signing the contract was uncertain. No new arguments were presented on January 20, 2009.

8. The Court finds that it is in the interest of judicial economy and avoiding juror confusion to realign the parties. The Court notes that the counterclaims against Plaintiff Nadowessioux are identical with the third party complaints against Third Party Defendant Haden. The Court can find no prejudice against Defendant Bontecou in realigning the parties.

IT IS HEREBY ORDERED that Plaintiff's and Third Party Defendant's Motion to Realign Parties is GRANTED. Third Party Defendant Charles Haden is now realigned as a party Plaintiff, and third party complaints against him are re-designated as counterclaims.

**Supplemental Complaint:**

9. On October 6, 2008, Plaintiff Nadowessioux filed a Motion for Leave to File First Supplemental Complaint and Jury Demand, petitioning the Court to allow additional claims against Defendant, including claims for fraudulent misrepresentation, fraudulent non-disclosure, negligent misrepresentation, negligent non-disclosure, negligent non-performance, punitive damages and attorney fees. The claims were based on newly discovered evidence that Defendants failed to obtain a certificate of occupancy before the Hadens moved into the Amangani house in November 2007.

10. W.R.C.P. Rule 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Rule 15(a) specifically provides that "leave shall be freely granted when justice so requires."

11. The Court notes that Plaintiff has provided evidence of occurrences discovered September 30, 2008, several months after the original complaint was filed. However, in the Supplemental Complaint, which sets forth five tort claims, Plaintiff fails to make a *prima facie* case on any of the claims because they allege no actual damages. Further, "[p]unitive damages cannot be awarded when compensatory damages are not recoverable." *Alexander v. Meduna*, 47 P.3d 206, 218 (Wyo. 2002) (citing *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d 1245, 1255 (Wyo.1998); *Cates v. Barb*, 650 P.2d 1159, 1161 (Wyo.1982)). *See also, Bird v. Rozier*, 947 P.2d 888, 892 (Wyo. 1997). Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File First Supplemental Complaint is DENIED.

**Motions for Partial Summary Judgment:**

12. On October 29, 2008, Plaintiff Nadowessioux filed a Motion for Partial Summary Judgment regarding the claim for "Foreclosure of Lien." Plaintiff argues that Defendant failed to comply with Wyo. Stat. § 29-2-110, which requires special notice to owners of

"existing single family dwelling units" prior to establishing a lien. Plaintiff urges that the lien should be removed.

13. On December 12, 2008, Defendants also filed a Motion for Partial Summary Judgment with respect to the Foreclosure of Lien issue, requesting that the Court rule as a matter of law that the notice requirement of Wyo. Stat. § 29-2-110 was not applicable to the construction work performed by Defendants on the Amangani property. Defendants argue that the lien is valid.

14. Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). "A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties." *Trabing v. Kinko's Inc.*, 57 P.3d 1248, 1252 (Wyo. 2002); *Williams Gas Processing-Wamsutter Co. v. Union Pacific Resources Co.*, 25 P.3d 1064, 1071 (Wyo. 2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Scherer Construction, LLC v. Hedquist Construction, Inc.*, 18 P.3d 645, 651 (Wyo. 2001).

15. Basic Facts:

    a) In 2006, when Plaintiffs purchased the Amangani property, a partially constructed house existed on the lot. Apparently, the exterior walls were up and the roof was on, but a great deal of exterior and interior work remained, including the plumbing, mechanical, and electrical systems. The house was not habitable nor had it ever been inhabited. Defendants' contract to finish the job amounted to more than $3 million.

    b) Defendants did not provide Plaintiffs with the special notice required under §29-2-110, nor did any of the subcontractors provide such notice in a timely manner.

    c) There is evidence that Plaintiffs intended to use the home as a luxury rental when they were out of town, and the property is presently in the Amangani rental pool.

d) Defendants argue that the home was to be a second or vacation home for Plaintiffs and not their primary residence. Plaintiffs have not conceded that the home would not be their primary residence.

16. The Court is called upon to interpret the language of Wyo. Stat. § 29-2-110. This act, passed in 1989, provides extra protection for consumer homeowners by requiring that contractors or subcontractors give the homeowner additional notice—that is, notice beyond the longstanding requirements for mechanic's liens—of the possibility that a lien could be placed on their property. Under the statute, contractors or subcontractors are required to give the owner, within thirty days of providing any materials or services, specifically worded written notice regarding liens and the possibility of securing lien waivers. Further, the statute provides that the special notice requirement is applicable if:

(b) . . .
   (i) The property is an existing single-family dwelling unit;
   (ii) The property is a residence constructed by the owner or under a contract entered into by the owner prior to its occupancy as his primary residence; or
   (iii) The property is a single-family, owner-occupied dwelling unit, including a residence constructed and sold for occupancy as a primary residence. This paragraph shall not apply to a developer or builder of multiple residences.

The statute stipulates that "[c]ompliance with this section is a condition precedent to establishing a lien in favor of the prime contractor or subcontractor under this chapter." W.S. § 29-2-110(c). Also, "[n]otice by any contractor or subcontractor which complies with this section relieves any remaining contractors or subcontractors under the same contract of any obligations under this section. W.S. § 29-2-110(d).

17. Plaintiffs argue that the Amangani home was an "existing single-family dwelling unit" when Defendants began work, and thus Defendants should have provided the § 29-2-110 notice required under subsection (b)(i). Defendants counter that the house, because it was incomplete and no one was dwelling there, was not an "existing single-family dwelling unit" and subsection (i) did not apply. Instead, Defendants look to subsections (ii) and (iii) to determine whether notice was required. They argue that those two sections are also not applicable because the home was not built as a primary residence. Defendants conclude that the special notice statute does not apply to the construction project.

18. The Wyoming Supreme Court has long-established rules for interpreting statutory

language:

> Our rules relating to the interpretation of statutes demand that we abide by
> the plain meaning of the statute if its language is clear and unambiguous.
> The statute will be construed as a whole with the ordinary and obvious
> meaning applied to words as they are arranged in paragraphs, sentences,
> clauses and phrases to express the intent of the legislature.

*RT Communications, Inc. v. State Bd. Of Equalization for State of Wyo.*, 11 P.3d 915, 922

(Wyo. 2000) (citing *Peterson v. Wyoming Game and Fish Commission*, 989 P.2d 113,

117 (Wyo.1999)).

19. In considering the statute as a whole, and keeping in mind the intent of the legislature, it

is clear that the Wyoming Legislature sought extra protection for consumer homeowners,

whether they were remodeling or improving their existing home, whether they were

constructing or under a contract to construct a new home, or whether they purchased a

newly constructed home.

20. In this context, the Court reads § 29-2-110(b)(i), which refers to "an existing single-

family dwelling unit," to pertain to homeowners living in an existing home who are

undertaking construction, such as repairs, improvements, or additions.[1]  The Court finds

that Plaintiffs' property does not fit within the category of "an existing single-family

dwelling unit."  When the contract was let by the parties, the house was only partially

constructed and never habitable or inhabited.

21. The Court finds that the Amangani property clearly falls under § 29-2-110(b)(ii) as it was

"a residence constructed by the owner or under a contract entered into by the owner prior

to its occupancy."  The Court finds it of no consequence that some construction work had

been done on the house before Plaintiffs purchased the property.  A house was never

completed and occupied.  Under § 29-2-110(b)(ii), a house must be constructed as the

---

[1] This interpretation is also consistent with Colorado lien statutes, where the Wyoming Legislature may have
borrowed the language of W.S. § 29-2-110(b).  In 1987, Colorado added language to its lien statutes that is almost
identical to the wording of Wyoming's § 29-2-110(b), enacted in 1989.  The context of Colorado's similarly-worded
statutes is somewhat different, however, as they offer an affirmative defense against liens to consumer homeowners
with the characteristics listed in Wyoming's § 29-2-110(b)(i), (ii), and (iii).  *See* C.R.S.A. § 38-22-102(3.5);
C.R.S.A. 38-22-113(4).  In *Wholesale Specialties, Inc. v. Village Homes, Ltd.*, 820 P.2d 1170, 1174 (Colo. App.
1991), the Colorado Court of Appeals explained these three categories as including "owners of existing homes who
contract for improvements, homeowners who contract for construction of a new home, and homeowners who
purchase a newly constructed home."  The Court notes that Colorado's consumer homeowner protection statute,
C.R.S.A. § 38-22-105.5 requires special notice to only one class of consumer homeowners, that is, to those who are
applying for building permits "for the improvement, restoration, remodeling, or repair of or the construction of
improvements or additions to residential property."  Protecting homeowners in an existing, inhabited house appears
to be the most important consideration in Colorado.

owner's primary residence. The parties disagree as to whether Plaintiffs intended the Amangani home to be their primary residence.

22. The Court finds there remains a genuine issue of material fact regarding whether the Amangani house was intended as a primary or secondary residence. Accordingly, neither party is entitled to judgment as a matter of law.

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED, and Defendants' Motion for Partial Summary Judgment is DENIED.

**Affidavits of John Galambos, Patty Patterson, and Stuart Campbell:**

23. On November 18, 2008, Defendants filed a Motion to Strike Affidavits of three witnesses for Plaintiffs, alleging the affidavits offer only legal opinions and conclusions. Witness John Galambos, an architect for Plaintiffs, testifies that the Haden home is an existing single family dwelling unit, based on his professional knowledge and involvement in the preparation of architectural plans for the project. Witness Patty Patterson, a real estate loan officer, testifies as to the difference between single family dwellings and multiple family dwellings within the context of making residential construction loans. Witness Stuart Campbell, General Manager of Amangani Resort, testifies that all of the lots at Amangani are platted as single-family residential lots and homes are constructed as such.

24. The Court notes that the affidavits of Plaintiffs' witnesses were offered in support of Plaintiffs' Motion for Partial Summary Judgment. As that Motion has been denied, the affidavits are no longer relevant. Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion to Strike Affidavits is MOOT.

DATED this _____10_____ day of February, 2009.

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing was duly served by prepaid mail upon the following persons at their last known address this _10_ day of _Feb_ 20 _09_ .

_B. King_
_A. Richard_

By _Carol Williamson Dep_

BY THE COURT:

Honorable Nancy J. Guthrie
District Judge