IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NADOWESSIOUX PROPERTIES, | § | CASE NO.  10-41418-H5-11 |
| LTD. | § | |
| | § | |
| DEBTOR-IN-POSSESSION | § | |

### UNSWORN DECLARATION OF CHARLES M. HADEN

1.   My name is Charles M. Haden.  I am above the age of 18 years and am competent to make this affidavit.  The following facts are within my personal knowledge and true and correct.

    a.   Debtor is Nadowessioux Properties, LTD., a Texas limited partnership owned and controlled by myself and my spouse, Shelly Haden.  We are individuals and residents of the State of Texas.

    b.   On December 15, 2010, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating the above-styled bankruptcy case.

    c.   In March of 2008 Bontecou Construction, Inc. ("Bontecou") filed a notice of an alleged mechanic's lien claiming that it is owed $854,972.34, a true and correct copy of which is attached hereto and marked **Exhibit A**.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 14, 2011. 28 U.S.C. § 1746.

Charles M. Haden



THE
# RICHARD
· LAW FIRM ·

A PROFESSIONAL CORPORATION

ANDREA L. RICHARD
ATTORNEY AT LAW
(307) 732-6680
ANDREA@ARICHARDLAW.COM

199 EAST PEARL AVENUE, SUITE 102
P.O. BOX 1245
JACKSON, WY 83001-1245
(307) 732-6638 FAX

March 31, 2008

**Via Electronic, First Class and Certified Mail**

Mr. and Mrs. Charles M. Haden Jr.
San Felipe Plaza
5847 San Felipe, Suite 1700
Houston, TX 77057

Nadowessioux Properties, Ltd.
764 Kuhlman Road
Houston, TX 77024

      RE:    Notice of Lien

Dear Mr. and Mrs. Charles M. Haden Jr.:

     As you know, Bontecou Construction Inc., previously provided you with notice of its intent to file a lien pursuant to Wyo. Stat. § 29-2-107. Accordingly, on March 31, 2008, Bontecou Construction filed its lien statement and a copy of the same is included for your reference. Thank you for your attention to this matter.

              Very Truly Yours,

              THE RICHARD LAW FIRM, P.C.

              Andrea L. Richard

cc:    Erika M. Nash, Esq.
       Peter F. Moyer, Esq.

**EXHIBIT**

A

WHEN RECORDED RETURN TO:
The Richard Law Firm, P.C.
P.O. Box 1245
199 E Pearl Ave., Ste. 102
Jackson, WY 83001
Attn: Andrea L. Richard

## LIEN STATEMENT

TO WHOM IT MAY CONCERN:

Pursuant to Wyoming Statutes, §§ 29-1-301 et. seq., BONTECOU CONSTRUCTION, INC. ("Bontecou Construction"), whose address is Post Office Box 862, Jackson, Wyoming, 83001, wishing to avail itself of the relevant provisions of Wyoming statutes and to ensure attachment and perfection of a lien to secure payment due for performing work and for furnishing labor and materials for the improvements generally known as Lot 1 of The Homes at Amangani, located in Teton County, Wyoming, and which is hereinafter described in greater detail, hereby states and declares that it claims a lien pursuant to said statutes in the amount of **Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), PLUS retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a TOTAL of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34),** together with interest, attorney's fees and costs as allowed by law, as follows:

1.      The name and address of the entity seeking to enforce the lien is Bontecou Construction, Inc., Post Office Box 862, Jackson, Wyoming, 83001.

2.      The amount due and owing to the lien claimant is **Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), PLUS retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a TOTAL of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents**

($854,972.34), together with interest, attorney's fees and costs as allowed by law, which amounts are continuing to accrue.

3.      The names and addresses of the persons or entities against whose properties this Lien Statement is filed are:

> Charles M. Haden, Jr. and Shelly Haden
> San Felipe Plaza
> 5847 San Felipe, Suite 1700
> Houston, TX, 77057
> **AND**
> Nadowessioux Properties, Ltd.
> 764 Kuhlman Rd.
> Houston, TX 77024

4.      The materials Bontecou Construction delivered to and the work Bontecou Construction performed on the land described herein consisted of labor, materials and services to and improvements upon Lot 1 of The Homes at Amangani, Teton County, Wyoming. The work performed and labor and materials supplied are described in greater detail in the unpaid invoices **Exhibit A**, and **Exhibit B** the construction contract entered into between Charles Haden and Bontecou Construction, attached hereto and incorporated herein by this reference.

5.      The names of the persons or entities against whom the lien claim is made are Charles M. Haden, Jr. and Shelly Haden, and Nadowessioux Properties, Inc.

6.      The last day on which work was performed or materials were furnished or services were last rendered by the lien claimant on the Properties identified in ¶ 7 hereof was on or about January 10, 2008.

7.      The legal description of the premises upon which the work was performed and the labor and materials was supplied is Lot 1 of The Homes at Amangani, Teton County, Wyoming, according to that plat recorded in the Office of the Teton County Clerk on December 22, 1998 as Plat No. 943.

8.      A copy of the contract by and between Charles Haden and Bontecou Construction, under which work was performed and materials were supplied in Teton County, Wyoming, is attached hereto as **Exhibit B**.

9.      Notice was given to the following that Claimant intended to file a lien against the property by electronic mail on March 17, 2008, and first class mail and a certified letter, return receipt requested, dated March 17, 2008, indicating that notice was being given pursuant to Wyo. Stat. § 29-2-107 to Charles M. Haden, Jr. and Shelly Haden, and Nadowessioux Properties, Inc.

10.     Therefore, Bontecou Construction, Inc., hereby claims the benefits of the statutes of the State of Wyoming relating to contractor's and materialmen's liens on the real estate described herein and improvements thereon to the extent of **Six Hundred Eighty Thousand Seven Hundred and Nine Dollars and Ninety Nine Cents ($680,709.99), PLUS retainage of One Hundred Seventy Four Thousand Two Hundred Sixty Two Dollars and Thirty Five Cents ($174,262.35) for a TOTAL of Eight Hundred Fifty Four Thousand Nine Hundred Seventy Two Dollars and Thirty Four Cents ($854,972.34)**, with interest allowed by law and reasonable attorneys fees and costs against Charles M. Haden, Jr. and Shelly Haden, and Nadowessioux Properties, Inc. and against all other persons who may claim an adverse interest therein.

IN WITNESS WHEREOF, Steve Bontecou, on behalf of Lien Claimant herein has set forth his hand this _____28th_____ day of March, 2008.

**BONTECOU CONSTRUCTION, INC.**

By: _____
      Steve Bontecou

Its:    President


STATE OF WYOMING          )
                                            ) ss.
COUNTY OF TETON           )


Subscribed and sworn to before me by Steve Bontecou, President of Bontecou Construction, this _____28th_____ day of March, 2008.

Witness my hand and official seal.

_____
                Notary Public

My commission expires: 9/28/2011

**BONTECOU CONSTRUCTION, INC.**
**BOX 862**
**JACKSON, WY. 83001**
307-733-2990-Ph   733- 4803-Fax

Amangani #1                                          MARCH 10 STATEMENT
Haden
Jackson, WY 83001
FAX:  713/973-0447

| February Billing | |
|---|---|
| **Job #144: Amangani#1/Haden** | |
| | |
| Material | |
| Labor | 201.30 |
| Equipment | 287.23 |
| Subcontract | |
| Other | 1,144.99 |
| | – |
| Subtotal | 1,633.52 |
| | |
| 12% OH+P | 196.02 |
| Total | 1,829.54 |
| 4% Retainage | 73.18 |
| TOTAL | 1,756.36 |

| | |
|---|---|
| PAST DUE FROM OCTOBER | 543,054.07 |
| PAST DUE FROM NOVEMBER | 270,737.01 |
| PAST DUE FROM DECEMBER | 58,361.42 |
| PAYMENT RECEIVED ON 12/20/07 | (250,000.00) |
| PAST DUE FROM JANUARY | 56,801.13 |
| PAYMENT DUE FROM FEBRUARY | 1,756.36 |
| GRAND TOTAL | 680,709.99 |



**CONTINUATION SHEET**

**BONTECOU CONSTRUCTION, INC.**

AIA DOCUMENT G703

Haden AIA #144 Feb 08 COPY SB.xls

APPLICATION DATE: 11-Mar-06
APPLICATION PERIOD TO: February 28, 2006

Page 1

| A NO. | DESCRIPTION OF WORK | C SCHEDULED VALUE | CHANGE ORDERS | TOTAL SCHEDULED VALUE | D WORK SCHEDULED FROM PREVIOUS APPLICATION | E COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED NOT IN D/E | G TOTAL COMPLETE AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GENERAL REQUIREMENTS | 333,645 | | 333,645 | 327,769.74 | 468.53 | | 328,258.27 | 98% | 5,387 | 13,130.33 |
| 2 | SITE | 165,808 | | 165,808 | 228,574.99 | 1,032.49 | | 229,607.48 | 138% | -63,799 | 9,184.30 |
| 3 | FOUNDATION | 13,100 | | 13,100 | 14,688.15 | | | 14,688.15 | 112% | -1,588 | 587.53 |
| 4 | MASONRY | 142,680 | | 142,680 | 234,674.83 | | | 234,674.83 | 164% | -91,995 | 9,386.99 |
| 5 | STEEL | 32,100 | | 32,100 | 115,384.43 | | | 115,384.43 | 359% | -83,284 | 4,615.38 |
| 6 | CONSTRUCTION FRAM/FINISH | 337,700 | | 337,700 | 490,295.38 | | | 490,295.38 | 145% | -152,595 | 19,611.82 |
| 7 | ROOFING & MOISTURE PROTEC | 58,157 | | 58,157 | 85,267.48 | | | 85,267.48 | 147% | -27,110 | 3,410.70 |
| 8 | CABINETS | 195,000 | | 195,000 | 330,706.78 | | | 330,706.78 | 170% | -135,707 | 13,228.27 |
| 9 | DRYWALL | 82,274 | | 82,274 | 166,229.32 | | | 166,229.32 | 202% | -83,955 | 6,649.17 |
| 10 | WINDOWS & DOORS | 19,500 | | 19,500 | 35,028.48 | | | 35,028.48 | 180% | -15,529 | 1,401.14 |
| 11 | COUNTERTOPS | 68,960 | | 68,960 | 92,882.17 | | | 92,882.17 | 135% | -23,922 | 3,714.49 |
| 12 | TILE | 70,900 | | 70,900 | 113,654.47 | | | 113,654.47 | 160% | -42,754 | 4,546.18 |
| 13 | CEILING | 165,930 | | 165,930 | 181,788.17 | | | 181,788.17 | 110% | -15,858 | 7,271.53 |
| 14 | FINISHES- STONE FLOORS | 226,380 | | 226,380 | 276,032.86 | | | 276,032.86 | 123% | -49,653 | 11,121.31 |
| 15 | PAINTING | 118,000 | | 118,000 | 141,845.79 | | | 141,845.79 | 120% | -23,846 | 5,873.83 |
| 16 | SPECIALTIES | 8,100 | | 8,100 | 30,711.39 | | | 30,711.39 | 379% | -22,611 | 1,228.46 |
| 17 | APPLIANCES | 25,000 | | 25,000 | 40,107.42 | | | 40,107.42 | 160% | -15,107 | 1,604.30 |
| 18 | SPECIAL CONSTRUCTION | 47,844 | | 47,844 | 52,995.66 | 112.50 | | 53,108.16 | 111% | -5,264 | 2,124.33 |
| 19 | MECHANICAL | 222,100 | | 222,100 | 363,788.54 | | | 363,788.54 | 164% | -141,689 | 14,351.54 |
| 20 | ELECTRICAL/AUDIO VIDEO | 424,200 | | 424,200 | 538,860.91 | | | 538,860.91 | 127% | -114,661 | 21,554.44 |
| 21 | EQUIPMENT & STAGING | 25,000 | | 25,000 | 24,883.19 | | | 24,883.19 | 100% | 117 | 995.33 |
| | SUBTOTAL | 2,783,378 | 0.00 | 2,783,378 | 3,898,151.15 | 1,633.52 | 0.00 | 3,899,784.67 | | -1,116,407 | 155,591 |
| | OVERHEAD +PROFIT | 334,005 | 0.00 | 334,005 | 466,578 | 196 | 0 | 466,774 | | -132,769 | 18,671 |
| | TOTAL COST | 3,117,383 | 0 | 3,117,383 | 4,364,729.28 | 1,829.54 | 0.00 | 4,366,558.83 | 0 | -1,249,175 | 174,282.35 |

Haden AIA #144 Feb 08 COPY SB.xls

Page 2

3/11/08

# APPLICATION AND CERTIFICATE FOR PAYMENT

TO: Charles Haden
FAX: 713/973-0447
shelleyhaden@aol.com
chaden44@aol.com

CONTRACTOR:
Bontecou Construction
Box 882
Jackson, Wy. 83001

PROJECT:
Amangani Lot #1
1605 N. Amangani Dr,
Jackson, WY

ARCHITECT:
Galambos Architects

AIA DOCUMENT G702

APPLICATION NO:  16

DATE:  11-Mar-08

| # | Description | Amount |
|---|---|---|
| 1 | ORIGINAL CONTRACT SUM TO DATE | $ 3,117,383.36 |
| 2 | Net change by Change Orders | 1,292,215.28 |
| 3 | CONTRACT SUM TO DATE | 4,409,598.64 |
| 4 | TOTAL COMPLETED & STORED TO DATE | 4,356,558.83 |
| 5 | RETAINAGE (Column J) | 174,262.35 |
| 6 | TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | 4,182,296.48 |
| 7 | LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Cert.) | 3,501,587.15 |
| 8 | CURRENT PAYMENT DUE | 680,709.33 |
| 9 | BALANCE TO FINISH, PLUS RETAINAGE (Line 3 less Line 6) | $ 227,302.16 |

PAYMENT HISTORY

| | |
|---|---|
| 1- | 51,442.83 |
| 2- | 88,367.59 |
| 3- | 141,036.02 |
| 4- | 122,640.88 |
| 5- | -463,516.83 |
| 6- | 211,489.82 |
| 7- | 165,250.09 |
| 8- | 354,083.37 |
| 9- | 235,836.66 |
| 10- | 166,425.44 |
| 11- | 413,164.92 |
| 12- | 469,227.35 |
| 13- | 348,152.53 |
| 14- | 250,000.00 |
| 15- | |
| | 3,501,587.15 |

CHANGE ORDER SUMMARY

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| TOTAL CHANGES APPROVED IN PREVIOUS MONTHS | | |
| CO SUMMARY # 1 | 867,773.55 | |
| CO SUMMARY # 2 | 153,074.50 | |
| CO SUMMARY # 3 | 175,876.44 | |
| CO SUMMARY # 4 | 74,096.14 | |
| CO SUMMARY # 5 | 21,394.65 | |
| TOTAL APPROVED THIS MONTH | 1,292,215.28 | |
| NET CHANGE BY CHANGE ORDERS | 1,292,215.28 | |
| ORIGINAL CONTRACT SUM TO DATE | 3,117,383.36 | |
| TOTAL CONTRACT | $4,409,598.64 | |

APPROVAL OF APPLICATION

CONTRACTOR:

DATE:

ARCHITECT:

AMOUNT CERTIFIED:

DATE:

**BONTECOU CONSTRUCTION, INC.**
BOX 862
JACKSON, WY. 83001
307-733-2990-Ph   733- 4803-Fax

FAXED
2·11·08

Amangani #1
Haden
Jackson, WY 83001
FAX:   713/973-0447

FEBRUARY 10 STATEMENT

January Billing

Job #144: Amangani#1/Haden

| | |
|---|---:|
| Material | |
| Labor | 341.54 |
| Equipment | 12,255.79 |
| Subcontract | - |
| Other | 40,231.10 |
| Subtotal | - |
| | 52,828.43 |
| 12% OH+P | 6,339.41 |
| Total | 59,167.84 |
| 4% Retainage | 2,366.71 |
| TOTAL | 56,801.13 |

| | |
|---|---:|
| PAST DUE FROM OCTOBER | |
| PAST DUE FROM NOVEMBER | 543,054.07 |
| PAST DUE FROM DECEMBER | 270,737.01 |
| PAYMENT RECEIVED ON 12/20/07 | 58,361.42 |
| CURRENT DUE FOR JANUARY | (250,000.00) |
| | 56,801.13 |
| GRAND TOTAL | 678,953.63 |

Page 1

CONTINUATION SHEET

AIA DOCUMENT G703

Haden AIA #144 JAN 08.xls

APPLICATION DATE: PERIOD TO: January 31, 2006 — 8-Feb-08

BONTECOU CONSTRUCTION, INC.

2/8/08

| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE (C) | CHANGE ORDERS | TOTAL SCHEDULED VALUE | WORK FROM PREVIOUS APPLICATION (D) | COMPLETED THIS PERIOD (E) | MATERIALS PRESENTLY STORED (NOT IN D/E) (F) | TOTAL COMPLETE AND STORED TO DATE (D+E+F) (G) | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GENERAL REQUIREMENTS | 333,645 | | 333,645 | 326,046.06 | 1,723.68 | | 327,769.74 | 98% | 5,875 | 13,110.79 |
| 2 | SITE | 166,808 | | 166,808 | 228,574.99 | | | 228,574.99 | 137% | -61,767 | 9,143.00 |
| 3 | FOUNDATION | 13,100 | | 13,100 | 14,688.15 | | | 14,688.15 | 112% | -1,588 | 587.53 |
| 4 | MASONRY | 142,680 | | 142,680 | 234,674.83 | | | 234,674.83 | 164% | -91,995 | 9,386.99 |
| 5 | STEEL | 32,100 | | 32,100 | 115,384.43 | | | 115,384.43 | 359% | -83,284 | 4,615.38 |
| 6 | CONSTRUCTION FRAM/FINISH | 337,700 | | 337,700 | 479,386.81 | 10,908.57 | | 490,295.38 | 145% | -152,595 | 19,611.82 |
| 7 | ROOFING & MOISTURE PROTEC | 58,157 | | 58,157 | 85,267.48 | | | 85,267.48 | 147% | -27,110 | 3,410.70 |
| 8 | CABINETS | 195,000 | | 195,000 | 330,706.78 | | | 330,706.78 | 170% | -135,707 | 13,228.27 |
| 9 | WINDOWS & DOORS | 82,274 | | 82,274 | 166,264.24 | (34.92) | | 166,229.32 | 202% | -83,955 | 6,649.17 |
| 10 | DRYWALL | 19,500 | | 19,500 | 35,029.48 | | | 35,029.48 | 180% | -15,529 | 1,401.18 |
| 11 | COUNTERTOPS | 68,960 | | 68,960 | 92,862.17 | | | 92,862.17 | 135% | -23,902 | 3,714.49 |
| 12 | TILE | 70,900 | | 70,900 | 113,654.47 | | | 113,654.47 | 160% | -42,754 | 4,546.18 |
| 13 | CEILING | 165,930 | | 165,930 | 181,788.17 | | | 181,788.17 | 110% | -15,858 | 7,271.53 |
| 14 | FINISHES- STONE FLOORS | 226,380 | | 226,380 | 278,032.86 | | | 278,032.86 | 123% | -51,653 | 11,121.31 |
| 15 | PAINTING | 118,000 | | 118,000 | 137,745.79 | 4,100.00 | | 141,845.79 | 120% | -23,846 | 5,673.83 |
| 16 | SPECIALTIES | 8,100 | | 8,100 | 30,711.39 | | | 30,711.39 | 379% | -22,611 | 1,228.46 |
| 17 | APPLIANCES | 25,000 | | 25,000 | 38,994.92 | | | 38,994.92 | 156% | -13,995 | 1,559.80 |
| 18 | SPECIAL CONSTRUCTION | 47,844 | | 47,844 | 53,108.16 | | | 53,108.16 | 111% | -5,264 | 2,124.33 |
| 19 | MECHANICAL | 222,100 | | 222,100 | 363,584.96 | 201.58 | | 363,786.54 | 164% | -141,687 | 14,551.46 |
| 20 | ELECTRICAL/AUDIO VIDEO | 424,200 | | 424,200 | 502,931.39 | 35,929.52 | | 538,860.91 | 127% | -114,661 | 21,554.44 |
| 21 | EQUIPMENT & STAGING | 25,000 | | 25,000 | 24,883.19 | | | 24,883.19 | 100% | 117 | 995.33 |
| | SUBTOTAL | 2,783,378 | 0.00 | 2,783,378 | 3,835,322.72 | 52,828.43 | 0.00 | 3,888,151.15 | | -1,104,773 | 155,526 |
| | OVERHEAD +PROFIT | 334,005 | 0 | 334,005 | 460,239 | 6,339 | 0 | 466,578 | | -132,573 | 18,663 |
| | TOTAL COST | 3,117,383 | 0 | 3,117,383 | 4,295,561.46 | 59,167.84 | 0.00 | 4,354,729.29 | | -1,237,346 | 174,189.17 |

Haden AIA #144 JAN 08.xls

Page 2

2/8/08

## APPLICATION AND CERTIFICATE FOR PAYMENT

TO: Charles Haden
FAX: 713/973-0447
shelleyhaden@aol.com

CONTRACTOR:
Bontscou Construction
Box 662
Jackson, Wy, 83001

chaden44@aol.com

PROJECT: Amangani Lot #1
1605 N. Amangani Dr.
Jackson, WY

ARCHITECT: Galambos Architects

*AIA DOCUMENT G702*

APPLICATION NO: 16

DATE: 8-Feb-08

| | | | |
|---|---|---|---|
| 1 | ORIGINAL CONTRACT SUM TO DATE | | |
| 2 | Net change by Change Orders | | |
| 3 | CONTRACT SUM TO DATE | $ | 3,117,383.36 |
| 4 | TOTAL COMPLETED & STORED TO DATE | | 3,117,383.36 |
| 5 | RETAINAGE   (Column J) | | 4,354,729.29 / 174,189.17 |
| 6 | TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | | 4,180,540.12 |
| 7 | LESS PREVIOUS CERTIFICATES FOR PAYMENT(Line 6 from prior Cert.) | | 3,501,587.15 |
| 8 | CURRENT PAYMENT DUE | | 678,952.97 |
| 9 | BALANCE TO FINISH, PLUS RETAINAGE(Line 3 less Line 6) | $ | (1,063,156.76) |

| PAYMENT HISTORY | |
|---|---|
| 1- | 51,442.83 |
| 2- | 88,367.59 |
| 3- | 141,036.02 |
| 4- | 122,640.88 |
| 5- | 463,516.83 |
| 6- | 211,489.62 |
| 7- | 165,250.09 |
| 8- | 354,083.37 |
| 9- | 235,836.68 |
| 10- | 166,428.44 |
| 11- | 413,164.92 |
| 12- | 489,227.35 |
| 13- | 348,162.53 |
| 14- | 250,000.00 |
| 15- | |
| | 3,501,587.15 |

### APPROVAL OF APPLICATION

CONTRACTOR: _____

DATE: _____

ARCHITECT: _____

AMOUNT CERTIFIED: _____

DATE: _____

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| TOTAL CHANGES APPROVED IN PREVIOUS MONTHS | | |
| CO SUMMARY # 1 | 867,773.55 | |
| CO SUMMARY # 2 | 153,074.50 | |
| CO SUMMARY # 3 | 175,876.44 | |
| CO SUMMARY # 4 | 74,096.14 | |
| TOTAL APPROVED THIS MONTH | | |
| NET CHANGE BY CHANGE ORDERS | 1,270,820.63 | |
| ORIGINAL CONTRACT SUM TO DATE | 1,270,820.63 | |
| TOTAL CONTRACT | 3,117,383.36 | |
| | $4,388,203.99 | |

**BONTECOU CONSTRUCTION, INC.**
BOX 862
JACKSON, WY. 83001
307-733-2990-Ph  733- 4803-Fax

*FAXED*
*1-11-08*
*Hand delivered*
*Re-faxed 2-11-0-8*

Amangani #1
Haden
Jackson, WY 83001
FAX:   713/973-0447

31-Dec-07
Statement

December Billing

Job #144: Amangani#1/Haden

| | |
|---|---:|
| Material | |
| Labor | 4,810.85 |
| Equipment | 31,516.62 |
| Subcontract | |
| Other | 17,952.12 |
| Subtotal | 54,279.59 |
| 12% OH+P | 6,513.55 |
| Total | 60,793.14 |
| 4% Retainage | 2,431.73 |
| TOTAL | 58,361.42 |

DUE FROM OCTOBER
DUE FROM NOVEMBER
PAYMENT RECEIVED ON 12/20/07

| | |
|---|---:|
| | 543,054.07 |
| | 270,737.01 |
| | (250,000.00) |
| Grand Total | 622,152.50 |

Thank You,

Steve Bontecou
Bontecou Construction, Inc.

Haden AIA #144 2007 DEC.xls

Page 1

1/10/08

**APPLICATION AND CERTIFICATE FOR PAYMENT**

TO: Charles Haden
FAX: 713/973-0447
shelleyhaden@aol.com

PROJECT: Amangani Lot #1
1605 N. Amangani Dr.
Jackson, WY

*AIA DOCUMENT G702*

APPLICATION NO: 15

DATE: 10-Jan-08

CONTRACTOR:
chaden14@aol.com

Bontecou Construction
Box 862
Jackson, Wy. 83001

ARCHITECT: Galambos Architects

| | | |
|---|---|---|
| 1 | ORIGINAL CONTRACT SUM TO DATE | $ 3,117,383.36 |
| 2 | Net change by Change Orders | |
| 3 | CONTRACT SUM TO DATE | 3,117,383.36 |
| 4 | TOTAL COMPLETED & STORED TO DATE | 4,295,561.45 |
| 5 | RETAINAGE: (Column J) | 171,822.46 |
| 6 | TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | 4,123,738.99 |
| 7 | LESS PREVIOUS CERTIFICATES FOR PAYMENT(Line 6 from prior Cert.) | 3,501,587.15 |
| 8 | CURRENT PAYMENT DUE | 622,151.84 |
| 9 | BALANCE TO FINISH, PLUS RETAINAGE(Line 3 less Line 6) | $ (1,006,355.63) |

**PAYMENT HISTORY**

| | |
|---|---|
| 1- | 51,442.83 |
| 2- | 88,367.59 |
| 3- | 141,036.02 |
| 4- | 722,640.88 |
| 5- | 463,518.83 |
| 6- | 211,489.62 |
| 7- | 155,250.09 |
| 8- | 354,033.37 |
| 9- | 236,836.66 |
| 10- | 166,425.44 |
| 11- | 413,164.92 |
| 12- | 489,227.35 |
| 13- | 348,152.53 |
| 14- | 250,000.00 |
| 15- | |
| | 3,501,587.15 |

*APPROVAL OF APPLICATION*

CONTRACTOR:

DATE:

ARCHITECT:

DATE:

AMOUNT CERTIFIED:

**CHANGE ORDER SUMMARY**

| TOTAL CHANGES APPROVED IN PREVIOUS MONTHS | ADDITIONS | DEDUCTIONS |
|---|---|---|
| CO SUMMARY # 1 | 867,773.55 | |
| CO SUMMARY # 2 | 153,074.50 | |
| CO SUMMARY # 3 | 175,876.44 | |
| CO SUMMARY # 4 | 74,096.14 | |
| TOTAL APPROVED THIS MONTH | 1,270,820.63 | |
| NET CHANGE BY CHANGE ORDERS | 1,270,820.63 | |
| ORIGINAL CONTRACT SUM TO DATE | 3,117,383.36 | |
| TOTAL CONTRACT | $4,388,203.99 | |

CONTINUATION SHEET

Haden AIA #144, 2007 DEC.xls

AIA DOCUMENT G703

Page 1

BONTECOU CONSTRUCTION, INC.

APPLICATION DATE: 9-Jan-08
PERIOD TO: December 31, 2007

| ITEM NO. | DESCRIPTION OF WORK | C SCHEDULED VALUE | CHANGE ORDERS | TOTAL SCHEDULED VALUE | D WORK FROM PREVIOUS APPLICATION (D+E) | E COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED NOT IN D/E | G TOTAL COMPLETE AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GENERAL REQUIREMENTS | 333,845 | | 333,845 | 311,708.02 | 14,338.04 | | 326,046.06 | 98% | 7,599 | 13,041.84 |
| 2 | SITE | 166,808 | | 166,608 | 228,089.99 | 465.00 | | 228,574.99 | 137% | -61,767 | 9,143.00 |
| 3 | FOUNDATION | 13,100 | | 13,100 | 14,886.15 | | | 14,886.15 | 112% | -1,588 | 587.53 |
| 4 | MASONRY | 142,680 | | 142,680 | 234,674.83 | | | 234,674.83 | 164% | -91,995 | 9,386.99 |
| 5 | STEEL | 32,100 | | 32,100 | 115,384.43 | | | 115,384.43 | 359% | -83,284 | 4,615.38 |
| 6 | CONSTRUCTION FRAM/FINISH | 337,700 | | 337,700 | 455,671.69 | 23,715.12 | | 479,386.81 | 142% | -141,687 | 46,175.47 |
| 7 | ROOFING & MOISTURE PROTEC | -58-157* | | 58,157 | 84,763.59 | 503.89 | | 85,267.48 | 147% | -27,110 | 3,410.70 |
| 8 | CABINETS | 195,000 | | 195,000 | 330,706.78 | | | 330,706.78 | 170% | -135,707 | 13,228.27 |
| 9 | WINDOWS & DOORS | 82,274 | | 82,274 | 165,642.75 | 621.49 | | 166,264.24 | 202% | -83,990 | 6,650.57 |
| 10 | DRYWALL | 19,500 | | 19,500 | 35,029.48 | | | 35,029.48 | 180% | -15,529 | 1,401.18 |
| 11 | COUNTERTOPS | 68,960 | | 68,960 | 92,862.17 | | | 92,862.17 | 135% | -23,902 | 3,714.49 |
| 12 | TILE | 70,900 | | 70,900 | 113,654.47 | | | 113,654.47 | 160% | -42,754 | 4,546.18 |
| 13 | CEILING | 165,930 | | 165,930 | 181,788.17 | | | 181,788.17 | 110% | -15,858 | 7,271.53 |
| 14 | FINISHES- STONE FLOORS | 226,380 | | 226,380 | 278,032.86 | | | 278,032.86 | 123% | -51,653 | 11,121.31 |
| 15 | PAINTING | 118,000 | | 118,000 | 137,745.79 | | | 137,745.79 | 117% | -19,746 | 5,509.83 |
| 16 | SPECIALTIES | 8,100 | | 8,100 | 25,161.80 | 5,549.59 | | 30,711.39 | 379% | -22,611 | 1,228.46 |
| 17 | APPLIANCES | 25,000 | | 25,000 | 39,994.92 | | | 39,994.92 | 160% | -14,995 | 1,599.80 |
| 18 | SPECIAL CONSTRUCTION | 47,844 | | 47,844 | 53,108.16 | | | 53,108.16 | 111% | -5,264 | 2,124.33 |
| 19 | MECHANICAL | 222,100 | | 222,100 | 384,670.68 | (1,083.72) | | 363,586.96 | 164% | -141,487 | 14,543.48 |
| 20 | ELECTRICAL/AUDIO VIDEO | 424,200 | | 424,200 | 492,781.21 | 10,150.18 | | 502,831.39 | 164% | -78,731 | 20,117.25 |
| 21 | EQUIPMENT & STAGING | 25,000 | | 25,000 | 24,883.19 | | | 24,883.19 | 119% | 117 | 995.33 |
| | SUBTOTAL | 2,783,378 | 0.00 | 2,783,378 | 3,781,043.13 | 54,279.59 | 0.00 | 3,835,322.72 | 100% | -1,051,945 | 153,413 |
| | OVERHEAD +PROFIT | 334,005 | 0 | 334,005 | 453,725 | 6,514 | 0 | 460,239 | 0 | -126,233 | 18,410 |
| | TOTAL COST | 3,117,383 | 0 | 3,117,383 | 4,234,768.31 | 60,793.14 | 0.00 | 4,295,561.45 | 0.00 | -1,178,178 | 171,822.46 |

1/9/08

**BONTECOU CONSTRUCTION, INC.**
**BOX 862**
**JACKSON, WY. 83001**
307-733-2990-Ph   733- 4803-Fax



Amangani #1
Haden                                                          30-Nov-07
Jackson, WY 83001                                             Statement
FAX:   713/973-0447

November Billing

**Job #144: Amangani#1/Haden**

| | |
|---|---:|
| Material | |
| Labor | 18,279.05 |
| Equipment | 44,029.54 |
| Subcontract | 288.46 |
| Other | 189,204.48 |
| Subtotal | - |
| | 251,801.53 |
| 12% OH+P | 30,216.18 |
| Total | 282,017.71 |
| 4% Retainage | 11,280.71 |
| TOTAL | 270,737.01 |

DUE FROM LAST MONTH

| | |
|---|---:|
| | 543,054.07 |
| Grand Total | 813,791.08 |

Thank You,


Steve Bontecou
Bontecou Construction, Inc.

Page 1

CONTINUATION SHEET

Haden AIA #144 2007 NOV.xls

AIA DOCUMENT G703

BONTECOU CONSTRUCTION, INC.

APPLICATION DATE: 12-Dec-07
PERIOD TO: 11/30/2007

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | CHANGE ORDERS | TOTAL SCHEDULED VALUE | D WORK FROM PREVIOUS APPLICATION (D+E) | E COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED NOT IN D/E | G TOTAL COMPLETE AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GENERAL REQUIREMENTS | | | | | | | | | | |
| 2 | SITE | 333,645 | | 333,645 | 274,872.15 | 36,835.87 | | 311,708.02 | 93% | 21,937 | 12,468.32 |
| 3 | FOUNDATION | 166,808 | | 166,808 | 164,060.81 | 64,029.18 | | 228,089.99 | 137% | -61,282 | 9,123.60 |
| 4 | MASONRY | 13,100 | | 13,100 | 14,341.11 | 347.04 | | 14,688.15 | 112% | -1,588 | 587.53 |
| 5 | STEEL | 142,680 | | 142,680 | 242,700.83 | (8,025.00) | | 234,674.83 | 164% | -91,995 | 9,386.99 |
| 6 | CONSTRUCTION FRAM/FINISH | 32,100 | | 32,100 | 108,017.52 | 7,366.91 | | 115,384.43 | 359% | -83,284 | 4,615.38 |
| 7 | ROOFING & MOISTURE PROTEC | 337,700 | | 337,700 | 430,529.83 | 25,141.86 | | 455,671.69 | 135% | -117,972 | 18,226.87 |
| 8 | CABINETS | 58,157 | | 58,157 | 79,927.59 | 4,836.00 | | 84,763.59 | 146% | -28,607 | 3,390.54 |
| 9 | WINDOWS & DOORS | 195,000 | | 195,000 | 330,084.83 | 621.95 | | 330,706.78 | 170% | -135,707 | 13,228.27 |
| 10 | DRYWALL | 82,274 | | 82,274 | 148,070.90 | 17,571.85 | | 165,642.75 | 201% | -83,369 | 6,625.71 |
| 11 | COUNTERTOPS | 19,500 | | 19,500 | 30,088.98 | 4,940.50 | | 35,029.48 | 180% | -15,529 | 1,401.18 |
| 12 | TILE | 68,980 | | 68,980 | 82,862.17 | | | 82,862.17 | 135% | -23,902 | 3,714.49 |
| 13 | CEILING | 70,900 | | 70,900 | 113,654.47 | | | 113,654.47 | 160% | -42,754 | 4,546.18 |
| 14 | FINISHES- STONE FLOORS | 165,930 | | 165,930 | 181,788.17 | | | 181,788.17 | 110% | -15,858 | 7,271.53 |
| 15 | PAINTING | 226,380 | | 226,380 | 278,032.86 | | | 278,032.86 | 123% | -51,653 | 11,121.31 |
| 16 | SPECIALTIES | 118,000 | | 118,000 | 126,840.79 | 10,905.00 | | 137,745.79 | 117% | -19,746 | 5,509.83 |
| 17 | APPLIANCES | 8,100 | | 8,100 | 12,745.04 | 12,416.76 | | 25,161.80 | 311% | -17,062 | 1,006.47 |
| 18 | SPECIAL CONSTRUCTION | 25,000 | | 25,000 | 39,994.92 | | | 39,994.92 | 160% | -14,995 | 1,599.80 |
| 19 | MECHANICAL | 47,844 | | 47,844 | 53,108.16 | | | 53,108.16 | 111% | -5,264 | 2,124.33 |
| 20 | ELECTRICAL/AUDIO VIDEO | 222,100 | | 222,100 | 311,186.83 | 53,483.85 | | 364,670.68 | 164% | -142,571 | 14,586.83 |
| 21 | EQUIPMENT & STAGING | 424,200 | | 424,200 | 471,450.96 | 21,330.25 | | 492,781.21 | 116% | -68,581 | 19,711.25 |
| | | 25,000 | | 25,000 | 24,883.19 | | | 24,883.19 | 100% | 117 | 995.33 |
| | SUBTOTAL | 2,783,378 | 0.00 | 2,783,378 | 3,529,242.11 | 251,801.02 | 0.00 | 3,781,043.13 | 0 | -897,665 | 151,242 |
| | OVERHEAD +PROFIT | 334,005 | 0.00 | 334,005 | 423,509 | 30,216 | 0 | 453,725 | 0 | -119,720 | 18,149 |
| | TOTAL COST | 3,117,383 | 0 | 3,117,383 | 3,952,751.16 | 282,017.14 | 0.00 | 4,234,768.31 | 0.00 | -1,117,385 | 169,390.73 |

12/12/07

Haden AIA #144 2007 NOV.xls

Page 2

12/12/07

## APPLICATION AND CERTIFICATE FOR PAYMENT

TO: Charles Haden
FAX: 713/973-0447
chaden44@aol.com

CONTRACTOR:
Benteau Construction
Box 862
Jackson, Wy, 83001
shelleyhaden@aol.com

PROJECT: Amangani Lot #1
1605 N. Amangani Dr,
Jackson, WY

ARCHITECT: Galambos Architects

AIA DOCUMENT G702

APPLICATION NO: 14

DATE: 12-Dec-07

| | | |
|---|---|---|
| 1 | ORIGINAL CONTRACT SUM TO DATE | $ 3,117,383.36 |
| 2 | Net change by Change Orders | |
| 3 | CONTRACT SUM TO DATE | 3,117,383.36 |
| 4 | TOTAL COMPLETED & STORED TO DATE | 4,234,768.31 |
| 5 | RETAINAGE (Column J) | |
| 6 | TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | 169,390.73 |
| 7 | LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Cert.) | 4,065,377.57 |
| 8 | CURRENT PAYMENT DUE | 3,251,587.15 |
| 9 | BALANCE TO FINISH, PLUS RETAINAGE (Line 3 less Line 6) | 813,790.42 |
| | | $ (947,994.21) |

### CHANGE ORDER SUMMARY

| TOTAL CHANGES APPROVED IN PREVIOUS MONTHS | ADDITIONS | DEDUCTIONS |
|---|---|---|
| CO SUMMARY # 1 | 867,773.55 | |
| CO SUMMARY # 2 | 153,074.50 | |
| CO SUMMARY # 3 | 175,875.44 | |
| TOTAL APPROVED THIS MONTH | 1,196,723.49 | |
| NET CHANGE BY CHANGE ORDERS | 1,196,723.49 | |

### PAYMENT HISTORY

| | |
|---|---|
| 1- | 51,442.83 |
| 2- | 88,367.59 |
| 3- | 141,036.02 |
| 4- | 122,640.88 |
| 5- | 463,618.83 |
| 6- | 211,469.82 |
| 7- | 165,250.09 |
| 8- | 354,033.37 |
| 9- | 236,836.68 |
| 10- | 166,426.44 |
| 11- | 413,164.92 |
| 12- | 489,227.35 |
| 13- | 348,152.53 |
| 14- | |
| 15- | |
| | 3,251,587.15 |

### APPROVAL OF APPLICATION

CONTRACTOR:

DATE:

ARCHITECT:

AMOUNT CERTIFIED:

DATE:

**BONTECOU CONSTRUCTION, INC.**
BOX 862
JACKSON, WY. 83001
307-733-2990-Ph  733- 4803-Fax



Amangani #1                                                31-Oct-07
Haden                                                     Statement
Jackson, WY 83001
FAX:  713/973-0447                   OCTOBER Billing


**Job #144:  Amangani#1/Haden**

| | |
|---|---:|
| Material | |
| Labor | 27,482.73 |
| Equipment | 71,895.47 |
| Subcontract | 191.88 |
| Other | 405,502.53 |
| Subtotal | 505,072.61 |
| 12% OH+P | 60,608.71 |
| Total | 565,681.32 |
| 4% Retainage | 22,627.25 |
| TOTAL | 543,054.07 |

DUE FROM LAST MONTH

| | |
|---|---:|
| Grand Total | 543,054.07 |


Thank You,


Steve Bontecou
**Bontecou Construction, Inc.**

Haden AIA #144 2007 OCT.xls

Page 2

**APPLICATION AND CERTIFICATE FOR PAYMENT**

TO: Charles Haden
FAX: 713/973-0447
shelleyhaden@aol.com

CONTRACTOR:
Borriecou Construction
Box 862
Jackson, Wy, 83001

chaden44@aol.com

PROJECT: Amangani Lot #1
1805 N. Amangani Dr.
Jackson, WY

ARCHITECT: Galambos Architects

AIA DOCUMENT G702

APPLICATION NO.: 13

DATE: 9-Nov-07

| | | ADDITIONS | DEDUCTIONS |
|---|---|---|---|
| 1 | ORIGINAL CONTRACT SUM TO DATE | $ 3,117,383.35 | |
| 2 | Net change by Change Orders | | |
| 3 | CONTRACT SUM TO DATE | | 3,117,383.35 |
| 4 | TOTAL COMPLETED & STORED TO DATE | | 3,952,751.16 |
| 5 | RETAINAGE (Column J) | | 158,110.05 |
| 6 | TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | | 3,794,641.12 |
| 7 | LESS PREVIOUS CERTIFICATES FOR PAYMENT(Line 6 from prior Cert.) | | 3,251,587.15 |
| 8 | CURRENT PAYMENT DUE | | 543,053.97 |
| 9 | BALANCE TO FINISH, PLUS RETAINAGE(Line 3 less Line 8) | $ | (677,257.76) |

**CHANGE ORDER SUMMARY**

| TOTAL CHANGES APPROVED IN PREVIOUS MONTHS | ADDITIONS | DEDUCTIONS |
|---|---|---|
| CO SUMMARY # 1 | 867,773.55 | |
| CO SUMMARY # 2 | 153,074.50 | |
| CO SUMMARY # 3 | 175,876.44 | |
| TOTAL APPROVED THIS MONTH | | |
| NET CHANGE BY CHANGE ORDERS | 1,196,724.49 | |
| | 1,196,724.49 | |

**PAYMENT HISTORY**

| | |
|---|---|
| 1- | 51,442.83 |
| 2- | 83,367.59 |
| 3- | 141,036.02 |
| 4- | 122,640.88 |
| 5- | 463,516.83 |
| 6- | 211,489.62 |
| 7- | 165,250.09 |
| 8- | 354,033.37 |
| 9- | 236,835.68 |
| 10- | 168,428.44 |
| 11- | 413,164.92 |
| 12- | 489,227.35 |
| 13- | 348,152.53 |
| 14- | |
| 15- | |
| | 3,251,587.15 |

APPROVAL OF APPLICATION

CONTRACTOR:
DATE:

ARCHITECT:
DATE:

AMOUNT CERTIFIED:
DATE:

11/9/07

Haden AIA #144 2007 OCt.xls

Page 1

CONTINUATION SHEET

BONTECOU CONSTRUCTION, INC.

AIA DOCUMENT G703

APPLICATION DATE: 9-Nov-07

October 31, 2007

| ITEM NO. (A) | DESCRIPTION OF WORK (B) | SCHEDULED VALUE (C) | CHANGE ORDERS | TOTAL SCHEDULED VALUE | WORK COMPLETED FROM PREVIOUS APPLICATION (D) | COMPLETED THIS PERIOD (E) | MATERIALS PRESENTLY STORED NOT IN D/E (F) | TOTAL COMPLETE AND STORED TO DATE (D+E+F) (G) | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GENERAL REQUIREMENTS | 333,645 | | 333,645 | 248,801.28 | 25,070.87 | | 274,872.15 | 82% | 58,773 | 10,994.89 |
| 3 | SITE | 166,806 | | 166,808 | 100,577.85 | 63,482.96 | | 164,060.81 | 98% | 2,747 | 6,562.43 |
| 4 | FOUNDATION | 13,100 | | 13,100 | 14,341.11 | | | 14,341.11 | 109% | -1,241 | 573.64 |
| 5 | MASONRY | 142,680 | | 142,680 | 223,898.83 | 18,802.00 | | 242,700.83 | 170% | -100,021 | 9,708.03 |
| 6 | STEEL | 32,100 | | 32,100 | 91,852.95 | 16,164.57 | | 108,017.52 | 337% | -75,918 | 4,320.70 |
| 7 | CONSTRUCTION FRAM/FINISH+ | 337,700 | | 337,700 | 391,964.29 | 38,625.54 | | 430,589.83 | 127% | -92,830 | 17,221.19 |
| 8 | ROOFING & MOISTURE PROTEC | 59,157 | | 59,157 | 69,491.59 | 10,436.00 | | 79,927.59 | 135% | -21,771 | 3,197.10 |
| 8 | CABINETS | 195,000 | | 195,000 | 329,842.76 | 242.07 | | 330,084.83 | 169% | -135,085 | 13,203.39 |
| 10 | WINDOWS & DOORS | 196,000 | | 196,000 | 123,417.09 | 24,653.81 | | 148,070.90 | 76% | 47,929 | 5,922.84 |
| 11 | DRYWALL | 82,274 | | 82,274 | 28,481.98 | 1,607.00 | | 30,088.98 | 37% | 52,185 | 1,203.56 |
| 12 | COUNTERTOPS | 19,500 | | 19,500 | 14,454.70 | | | 14,454.70 | 74% | 5,045 | 578.19 |
| 13 | TILE | 68,960 | | 68,960 | 92,662.17 | | | 92,662.17 | 134% | -23,702 | 3,714.49 |
| 14 | CEILING | 70,900 | | 70,900 | 101,818.12 | | | 101,818.12 | 143% | -30,918 | 4,072.73 |
| 15 | FINISHES- STONE FLOORS | 165,830 | | 165,830 | 181,176.21 | | | 181,788.17 | 110% | -15,858 | 7,271.53 |
| 16 | PAINTING | 226,380 | | 226,380 | 278,032.86 | | | 278,032.86 | 123% | -51,653 | 11,121.31 |
| 17 | SPECIALTIES | 118,000 | | 118,000 | 113,304.00 | 13,536.79 | | 126,840.79 | 107% | -8,841 | 5,073.85 |
| 18 | APPLIANCES | 8,100 | | 8,100 | 3,579.04 | 9,166.00 | | 12,745.04 | 157% | -4,645 | 509.80 |
| 19 | SPECIAL CONSTRUCTION | 25,000 | | 25,000 | 22,987.92 | | | 39,994.92 | 160% | -14,995 | 1,599.80 |
| 19 | MECHANICAL- | 47,844 | | 47,844 | 39,894.92 | 13,213.24 | | 53,108.16 | 111% | -5,264 | 2,124.33 |
| 20 | ELECTRICAL/AUDIO VIDEO | 222,100 | | 222,100 | 280,145.90 | 31,022.93 | | 311,168.83 | 140% | -89,087 | 12,447.47 |
| 21 | EQUIPMENT & STAGING | 424,200 | | 424,200 | 352,155.91 | 119,295.65 | | 471,450.79 | 111% | -47,251 | 18,858.04 |
| | | 25,000 | | 25,000 | 24,893.19 | | | 24,883.19 | 100% | 117 | 995.33 |
| | SUBTOTAL | 2,783,376 | 0.00 | 2,783,376 | 3,024,189.60 | 505,072.51 | 0.00 | 3,529,242.11 | | | 141,170 |
| | OVERHEAD +PROFIT | 334,005 | 0.00 | 334,005 | 362,900 | 60,909 | 0 | 423,509 | | | 16,940 |
| | TOTAL COST | 3,117,383 | 0 | 3,117,383 | 3,387,089.95 | 565,981.21 | 0.00 | 3,952,751.16 | 0.00 | -535,388 | 158,110.05 |

11/9/07

**BONTECOU CONSTRUCTION, INC.**
**BOX 862**
**JACKSON, WY. 83001**
**307-733-2990-Ph   733- 4803-Fax**

*Hand delivered*
*10|19|07 ✓*
*by*
*SB*

Amangani #1
Haden                                                    30-Sep-07
Jackson, WY 83001                                       Statement
FAX:  713/973-0447

SEPTEMBER Billing

Job #144:  Amangani#1/Haden

Material
Labor                                                    11,631.84
Equipment                                                74,444.26
Subcontract                                               2,091.88
Other                                                   235,634.21

                        Subtotal
                                                        323,802.19

                        12% OH+P                          38,856.26
                        Total                            362,658.45
                        4% Retainage                      14,506.34
                        TOTAL
                                                        348,152.11

Due from August billing

                        Grand Total                       96,644.47
                                                        444,796.58

Thank You,


Steve Bontecou
**Bontecou Construction, Inc.**

Haden AIA #144 2007 SEPT.xls

Page 2

10/15/07

*AIA DOCUMENT G702*

## APPLICATION AND CERTIFICATE FOR PAYMENT

TO: Charles Haden
FAX: 713/973-0447
shelleyhaden@aol.com

CONTRACTOR:
Bonitacou Construction
Box 862
Jackson, Wy. 83001

PROJECT: Amangani Lot #1
1605 N. Amangani Dr.
Jackson, WY

ARCHITECT: Galambos Architects

chaden44@aol.com

APPLICATION NO:   12

DATE:   15-Oct-07

| | | ADDITIONS | DEDUCTIONS |
|---|---|---|---|
| 1 | ORIGINAL CONTRACT SUM TO DATE | $  3,117,383.36 | |
| 2 | Net change by Change Orders | | |
| 3 | CONTRACT SUM TO DATE | 3,117,383.36 | |
| 4 | TOTAL COMPLETED & STORED TO DATE | 3,387,069.95 | |
| 5 | RETAINAGE  (Column J) | 135,482.80 | |
| 6 | TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | 3,251,587.15 | |
| 7 | LESS PREVIOUS CERTIFICATES FOR PAYMENT(Line 6 from prior Cert.) | | |
| 8 | CURRENT PAYMENT DUE | 2,805,790.15 | |
| 9 | BALANCE TO FINISH, PLUS RETAINAGE(Line 3 less Line 6) | 444,797.00 | |
| | | $  (134,203.79) | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| TOTAL CHANGES APPROVED IN PREVIOUS MONTHS | | |
| TOTAL APPROVED THIS MONTH | 0.00 | |
| NET CHANGE BY CHANGE ORDERS | 0.00 | |

### PAYMENT HISTORY

| | |
|---|---|
| 1- | 51,442.83 |
| 2- | 88,367.59 |
| 3- | 141,036.02 |
| 4- | 122,640.88 |
| 5- | 463,518.83 |
| 6- | 211,489.62 |
| 7- | 165,250.09 |
| 8- | 354,033.37 |
| 9- | 236,836.68 |
| 10- | 166,425.44 |
| 11- | 413,164.92 |
| 12- | 392,582.88 |
| 13- | |
| 14- | |
| 15- | |
| | 2,805,790.15 |

APPROVAL OF APPLICATION

CONTRACTOR:

DATE:

ARCHITECT:

AMOUNT CERTIFIED:   DATE:

Page 1

Haden AIA #144 2007 SEPT.xls

AIA DOCUMENT G703

CONTINUATION SHEET

BONTECOU CONSTRUCTION, INC.

APPLICATION DATE: 15-Oct-07
PERIOD TO: September 30, 2007

| A ITEM NO. | DESCRIPTION OF WORK | C SCHEDULED VALUE | CHANGE ORDERS | TOTAL SCHEDULED VALUE | D WORK FROM PREVIOUS APPLICATION (D+E) | E COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED NOT IN D/E | G TOTAL COMPLETE AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GENERAL REQUIREMENTS | 333,645 | | 333,645 | 227,628.49 | 22,172.79 | | 249,801.28 | 75% | 83,844 | 9,992.05 |
| 2 | SITE | 166,808 | | 166,808 | 40,245.33 | 60,332.52 | | 100,577.85 | 60% | 66,230 | 4,023.11 |
| 3 | FOUNDATION | 13,100 | | 13,100 | 12,966.11 | 1,375.00 | | 14,341.11 | 109% | -1,241 | 573.54 |
| 4 | MASONRY | 142,680 | | 142,680 | 185,513.68 | 38,385.15 | | 223,898.83 | 157% | -81,219 | 8,955.95 |
| 5 | STEEL | 32,100 | | 32,100 | 37,260.02 | 54,592.93 | | 91,852.95 | 286% | -59,753 | 3,674.12 |
| 6 | CONSTRUCTION FRAM/FINISH | 337,700 | | 337,700 | 381,407.55 | 12,496.74 | | 393,904.29 | 117% | -56,204 | 15,756.17 |
| 7 | ROOFING & MOISTURE PROTEC | 58,157 | | 58,157 | 69,412.82 | 78.77 | | 69,491.59 | 119% | -11,335 | 2,779.66 |
| 8 | CABINETS | 195,000 | | 195,000 | 329,472.38 | 370.38 | | 329,842.76 | 169% | -134,843 | 13,193.71 |
| 9 | WINDOWS & DOORS | 82,274 | | 82,274 | 86,554.23 | 36,862.86 | | 123,417.09 | 150% | -41,143 | 4,936.68 |
| 10 | DRYWALL | 19,500 | | 19,500 | -22,565.98 | 5,916.00 | | 28,481.98 | 146% | -8,982 | 1,139.28 |
| 11 | COUNTERTOPS | 68,960 | | 68,960 | 14,454.70 | | | 14,454.70 | 21% | 54,505 | 578.19 |
| 12 | TILE | 70,900 | | 70,900 | 64,127.40 | 37,691.72 | | 101,819.12 | 144% | -30,919 | 4,072.76 |
| 13 | CEILING | 165,930 | | 165,930 | 160,935.10 | 20,243.11 | | 181,178.21 | 109% | -15,248 | 7,247.13 |
| 14 | FINISHES-STONE FLOORS | 226,380 | | 226,380 | 278,032.86 | | | 278,032.86 | 123% | -51,653 | 11,121.31 |
| 15 | PAINTING | 118,000 | | 118,000 | 82,952.00 | 30,352.00 | | 113,304.00 | 96% | 4,696 | 4,532.16 |
| 16 | SPECIALTIES | 8,100 | | 8,100 | 1,732.04 | 1,847.00 | | 3,579.04 | 44% | 4,521 | 143.16 |
| 17 | APPLIANCES | 25,000 | | 25,000 | 8,972.42 | | | 8,972.42 | 36% | 16,028 | 358.90 |
| 18 | SPECIAL CONSTRUCTION | 47,844 | | 47,844 | 21,973.92 | 1,014.00 | | 22,987.92 | 48% | 24,856 | 919.52 |
| 19 | MECHANICAL | 222,100 | | 222,100 | 280,469.30 | 16,723.20 | | 297,192.50 | 134% | -75,093 | 11,887.70 |
| 20 | ELECTRICAL/AUDIO VIDEO | 424,200 | | 424,200 | 350,307.89 | 1,848.02 | | 352,155.91 | 83% | 72,044 | 14,086.24 |
| 21 | EQUIPMENT & STAGING | 25,000 | | 25,000 | 23,383.19 | 1,500.00 | | 24,883.19 | 100% | 117 | 995.33 |
| | SUBTOTAL | 2,783,378 | 0.00 | 2,783,378 | 2,700,367.41 | 323,802.19 | 0.00 | 3,024,169.60 | | -240,792 | 120,967 |
| | OVERHEAD +PROFIT | 334,005 | 0 | 334,005 | 324,044 | 38,856 | 0 | 362,900 | 0 | -28,895 | 14,516 |
| | TOTAL COST | 3,117,383 | 0 | 3,117,383 | 3,024,411.50 | 362,658.45 | 0.00 | 3,387,069.95 | 0.00 | -269,687 | 155,482.80 |

10/15/07

## RENASCENCE CORPORATION

SAN FELIPE PLAZA
5847 SAN FELIPE
SUITE 1700
HOUSTON, TEXAS 77057

(713) 629-5500
(713) 629-0203 (FAX)

## DELIVERED BY FEDERAL EXPRESS

August 28, 2006

Steve Bontecou
Bontecou Construction, Inc.
1490 Gregory Lane, # 3
Jackson, WY 83001

Re:     Standard Form Of Agreement Between Owner and Contractor/
        Nadowessioux Properties, Ltd. Residence @ Amangani Lot # 1

Dear Steve:

Enclosed is the above referenced Contract executed and completed as to reflect the
various specifics of our situation. Also enclosed is the Bontecou Construction (1) Job
Cost Estimate (dated July 26, 2006); and (2) Supplement To AIA Document A111-1997
Addendum 1 and Addendum 2 (both signed and dated August 28, 2006).

You will note that I have not made any other changes other than what we have discussed
by telephone.  Please provide me an executed original of the Contact (and attachments)
and return for my files.

Shelley and I look forward to working with you in completing the construction of the
Amangani 1 House @ 1605 North Amangani Drive.

Thank you for all your assistance in formulating our agreement.

Sincerely,

NADOWESSIOUX PROPERTIES LTD.

Charles M. Haden, Jr.

EXHIBIT
B

SUPPLEMENT TO AIA DOCUMENT A111-1997
ADDENDUM 2

**Article 15.15 To be supplemented with the following:**

Teton Heritage Landscape

1 page with handrawn sketches of trees and bushes.

Galambos Architects Inc. - Dated 11/14/03 - Stamped "Not Final"

A - 1.1, 2.1, 2.2, 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 10.1, 10.2, 10.3, 10.4, 10.6, 10.7,
10.8, 10.9, 10.10, 10.11

E - 1.1 - Revised - Dated 10/17/03
E - 1.1, 1.2

Patri Merker Architects - Dated 9/25/02

A - 0.1, 1.1, 2.1, 2.2, 2.3, 2.4, 2.5, 2.6, 3.1, 3.2, 3.3, 3.4, 3.5, 6.1, 6.2, 7.1,
8.1, 8.3, 8.4, 8.5, 9.1, 9.2, 9.3, 9.4, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10

M - 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 2.4, 2.5, 3.1, 3.2, 3.3, 4.1, 4.2, 4.3

E - 1.1, 1.2, 1.3, 1.4, 2.1, 2.2, 3.1, 4.1, 5.1, 6.1

It is believed that the plans by Galambas dated 11/14/06 supercede the
earlier plans of Patri Merker wherever they overlap.

Owner: _Charles N. Drake_   8-28-06

_____

Contractor- Bontecou Construction, Inc.

_Steve Bontecou_   8-31-06

SUPPLEMENT TO AIA DOCUMENT A111-1997
ADDENDUM 1

Article 5.2.1. To be supplemented with the following :

The parties have further agreed that the costs which would exceed the  Guaranteed Maximum Price would be paid by the Contractor without reimbursement by the owner.

The parties desire to: 1) build the project according to the original specifications 2) while following those original specifications in some areas, the owner and builder agree to establish a list of changes to those specs with the intention of saving money.

Both the owner and the Contractor will share in the savings as follows.
If the price of the house is below the Guaranteed Maximum Price the Contractor will receive, as compensation, 50% of such savings. These savings include, but are not limited to, any savings the Contractor obtains by rebidding subcontractors or suppliers. The 50% amount to be paid to the Contractor shall be made at the time of final payment.
if the owner makes changes that lower or raise the GMP, the Contractor will submit Change Orders that would subsequently alter the GMP accordingly. Therefore those changes would not affect the bonus plan.

Article 4.3 - Liquid damages and bonus payments for Substantial Completion date.
For every two week period that the Contractor obtains substantial completion prior to the finish date, the above bonus in Article 5.2.1 Supplement will increase by 5%. In other words, if house is completed 7 days before the agreed date the bonus stays at 50%. If SBC completes the house 15 days prior, the bonus will be 55% of the savings. If 4 weeks before it will be 60% of savings. Etc..
Likewise, if house is not completed by agreed date, the bonus will be decreased by the same timeframe (2 week increments) and the same % (5%). If there is no bonus, there will be no penalty or liquidated damages. In other words, the 5% deduction of the bonus would not be in place until 2 weeks after the completion date.

It is accepted that some punch list items may remain to be completed after the agreed upon "Substantial Completion" date and they will not affect this bonus.

Article 15.1.7 shall include the latest Job Cost Estimate dated : 7/26/06.

Article 16 : Charles Haden will secure and maintain Builder's Risk Insurance to the full insurable amount of the project naming each other (Haden and Bontecou) as co-insureds.

Owner: _____          8-28-06

Contractor- Bontecou Construction, Inc.
_____          8.31.06

**BONTECOU CONSTRUCTION**
**JOB COST ESTIMATE** — AMANGANI #1/HADEN — 7/25/06

| Code | Description | SF | COST | Material | Labor | Equip | Subcont | Total | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|
| 1000 | MOBILIZATION | | | | | | | | |
| 1020 | MISCELLANEOUS | | | 500 | 2,500 | 0 | 0 | 3,000 | |
| 1030 | CONTINGENCY | | | 2,500 | 2,500 | 0 | 0 | 29,700 | |
| 1040 | SUPERVISION | | | | 27,200 | 0 | 0 | 205,000 | |
| 1041 | JOB PHONE/OFFICE SET UP | | | 0 | 0 | 0 | 205,000 | 205,000 | |
| 1080 | SANITARY FACILITY | | | 0 | 1,500 | 0 | 40,000 | 40,000 | |
| 1110 | CLEANING | | | 0 | 1,000 | 0 | 1,000 | 4,500 | |
| 1111 | LIABILITY INSURANCE | | | 0 | 2,000 | 0 | 4,500 | 3,320 | |
| 1120 | TRASH REMOVAL | | | 0 | 4,000 | 5,000 | 3,320 | 9,000 | |
| 1500 | WINTER CONST | | | 0 | 0 | | 9,000 | 21,600 | |
| 1710 | WINTER CONST COSTS | | | 0 | 5,000 | | 21,600 | 6,775 | |
| | PUNCH LIST | | | 750 | 4,000 | | 6,775 | 6,000 | |
| | | | | | | | 1,000 | 4,750 | |
| 2050 | DEMOLITION | | | 400 | | | | 2,900 | Demo all ceilings and walls previously installed |
| 2100 | SITE PREP | | | | 2,500 | | | | |
| 2110 | SURVEYING | | | | | | | | |
| 2160 | EXCAVATION | | | | | | 59,000 | 59,000 | Lane Ross-estimate to complete |
| 2231 | ROADS | | | | | | | | |
| 2230 | ASPHALT PAVING | | | 0 | 0 | 0 | 0 | 0 | |
| 2670 | WELL | | | 0 | 0 | 0 | 50,163 | 50,163 | Reg Roberts estimate to complete-driveway,patio,walks |
| 2740 | SEPTIC SYSTEM | | | 0 | 0 | 0 | 0 | 0 | |
| 2900 | LANDSCAPE | | | 0 | 0 | 0 | 54,725 | 54,725 | Teton Heritage Landscaping estimate to complete |
| 3100 | FOUNDATION | | | 0 | 0 | 0 | 0 | 0 | |
| 3100.1 | BLOCKWORK | | | 0 | 0 | 0 | 0 | 0 | |
| 3400.0 | PRECAST CONCRETE | | | 0 | 0 | 0 | 5,000 | 5,000 | Block/Stone estimate for BBQ grill |
| 3430.0 | SLAB | | | 0 | 0 | 0 | 8,100 | 8,100 | Teton Precast |
| 4200 | MASONRY FIREPLACES | | | 0 | 0 | 0 | 5,000 | 5,000 | Pete's Masonry-fireplace surrounds |
| 4240 | TERRACES | | | 0 | 0 | 0 | | | |
| 4400 | STONE VENEER | | | 5,000 | 0 | 0 | 5,000 | 5,000 | Pete's Masonry |
| 5010 | STEEL | | | | | | 132,680 | 137,680 | 0 incl in Pete's Masonry estimate to complete incl ext veneer |
| | | | | | | | 32,100 | 32,100 | Weeco estimate to complete |

CMH- 8-25-06

| Code | Description | M | L | E | S | Notes |
|---|---|---|---|---|---|---|
| 6050 | FASTENERS & ADHESIVES | | | | 0 | |
| 6100 | STAIR FRAMING | | | | 0 | |
| 6110 | TYPICAL WALL FRAMING | 750 | 2,230 | | 3,000 | |
| 6112 | ATYPICAL WALL FRAME | | | | 0 | |
| 6114 | WALL SHEATHING | 500 | 1,500 | | 2,000 | |
| 6116 | T&G ROOF DECKING | | | | 0 | |
| 6118 | ATYPICAL ROOF DECKING | | | | 0 | |
| 6119 | TYPICAL ROOF FRAMING | | | | 0 | |
| 6125 | COLD ROOF | | | | 0 | |
| 6126 | 1ST FLOOR DECK FRAMING | | | | 0 | |
| 6127 | 2ND FLR DECK FRAMING | | | | 0 | |
| 6130 | DECK SHEATHING | | | | 0 | |
| 6200 | OLD BEAMS-hand hewn | | | | 0 | |
| 6200.2 | EXTERIOR SIDING-CEDAR | | | | 0 | |
| 6201 | BARNWOOD SIDING | 1,200 | 3,000 | | 4,200 | |
| 6203 | EXTERIOR TRIM | | | | 0 | |
| 6400 | INTERIOR TRIM | | | | 0 | |
| 6430 | INTERIOR PANELING- | 55,000 | 268,900 | | 323,900 | |
| 6431 | EXTERIOR DECKS | | | | 0 | |
| | EXT RAILINGS | | | | 0 | |
| | INTERIOR RAILINGS | 2,100 | 2,500 | | 4,600 | labor allowance |
| | (subtotal) | | | | | |
| 8000 | CABINETS | 0 | 0 | 195,000 | | |
| | (subtotal) | | | | | |
| 7200 | INSULATION | | | | 0 | |
| 7400 | ROOFING & FLASHING | | | | 54,657 | Bressler estimate for lids, walls and foundations |
| 7600 | SOFFIT | | | | 3,500 | |
| 7700 | FASCIA | 3,500 | | | 3,500 | |
| | (subtotal) | | | | | |
| 8100 | EXTERIOR WINDOWS | 0 | 0 | 195,000 | 195,000 | Willowcreek estimate to complete |
| 8130 | EXTERIOR DOORS | | | | | |
| 8200 | INTERIOR DOORS | | | | 300 | |
| 8201 | SHOWER ENCLOSURES | 37,624 | 850 | | 53,824 | 1,150 Willowcreek $5,000 allowance for exterior entry door; 53,824 Willowcreek estimate to complete incls entry door |
| 8202 | MIRRORS | | 16,200 | | 6,800 | 6,800 ESTIMATE FROM LOWER VALLEY GLASS |
| 8300 | OVERHEAD DOORS | | | | 2,900 | 2,900 LOWER VALLEY GLASS |
| 8710 | DOOR HARDWARE | 13,100 | 3,500 | | 2,900 | 2,900 LOWER VALLEY GLASS; 1,000 Garage Door Handiman; 16,500 Rocky Mtn Hardware; labor allowance 3500. |

Barker estimate cont.

| Code | Description | M | L | e | S | Notes |
|---|---|---|---|---|---|---|
| 9200 | DRYWALL | | | 0 | 19,500 | 19,500 Davidson Drywall estimate |
| 9300 | MARBLE COUNTERTOPS | 850 | 1,500 | 0 | 2,350 | 2,350 labor allowance 1500. |
| 9300.1 | GRANITE COUNTERTOPS | | | 0 | | |
| 9301 | TILE + TILE FLOORS | | | 0 | | |
| 9500 | ACOUSTICAL TREATMENT | | | 0 | | |
| 9545 | CEILINGS | 21,400 | 144,530 | 0 | 137,510 | 137,510 Burrows Marble & Granite-tile and slabs |
| 9550 | WOOD FLOORS | | | 0 | 165,930 | 165,930 |
| 9600 | STONE FLOORS | | | 0 | | |
| 9680 | CARPET | 5,000 | | 0 | 226,380 | 226,380 Eugene Petersen's estimate to complete stone floors |
| 9910 | EXTERIOR PAINTING | | | 0 | | |
| 9920 | INTERIOR PAINTING | | | 0 | | |
| 10300 | WOOD STOVES OR INSERTS | | | 0 | 118,000 | 118,000 |
| 10900 | BATH ACCESSORIES | 5,800 | 1,500 | 0 | 800 | 800 Mecho-hookup for gas loss |
| | | | | | 7,300 | 7,300 JB Mechanical+ $1500 labor allowance |
| 11450 | APPLIANCES | | | 0 | 25,000 | 25,000 |
| 12320 | MOTORIZED SHADES | 1,500 | 3,500 | 0 | 23,794 | 23,794 Innovative Openings est. to complete; labor allowance 1750. |
| 13010 | WINE ROOM | | | 0 | 0 | 0 NO ARCH PLAN-NOT IN CABINET BD |
| 13052 | SAUNA | | | 0 | 18,794 | 18,794 |
| 13150 | TIMBERS AND BEAMS | | | 0 | | |
| 13200 | PROPANE TANK | 12,500 | 4,800 | 4,000 | 21,300 | 21,300 (S) Wyo Mech to supply equipment only |
| 13800 | SECURITY SYSTEM | | | 0 | 0 | 0 (S) is MKD Mike Doyle |
| 13150 | SWIMMING POOL | | | 0 | | |
| 13170 | HOT TUB | | | 0 | 2,750 | 2,750 Ricks Pool & Spa estimate to complete |
| 13300 | SPRINKLER SYSTEM | | | 0 | 9,600 | 9,600 Old Faithful estimate to complete |
| 13400 | PLUMBING SYSTEM | | | 0 | 48,563 | 48,563 JB Mechanical estimate to complete |
| 13440 | PLUMBING FIXTURES-FITTINGS | | | 0 | 96,682 | 96,682 mecho estimate to complete |
| 13500 | HVAC | | | 0 | 9,600 | |
| 15550 | VENTING | | | 0 | 48,563 | 48,563 JB Mechanical estimate to complete |
| 15790 | RADIANT FLOOR HEAT | | | 0 | 96,682 | 96,682 mecho estimate to complete |
| 15760 | SNOWMELT | | | 0 | 20,000 | 20,000 Wyo Mech to repair damage to system |
| 15760 | GYPCRETE | | | 0 | 47,255 | 47,255 Wyo Mech to complete hydronic& snowmelt |
| 15770 | SLEEPERS | | | 0 | 47,255 | 47,255 Wyo Mech to repair damage to system 3-9-06 |
| | | | | 0 | 20,000 | 20,000 mecho estimate to complete 3-9-06 |

| Barker estimate cont. | | M | L | E | S | | |
|---|---|---|---|---|---|---|---|
| 16050 | ELECTRICAL | M | | | 313,100 | 313,100 | M.E Estimate to complete electrical&Lutron |
| 16700 | AUDIO VIDEO SYSTEMS | | L | | 0 | 0 | |
| 16740 | TELEPHONES | | 0 | 0 | 0 | 0 | |
| 16900 | ELECTRICAL FIXTURES | | 0 | 0 | 111,100 | 111,100 | M.E estimate to for equip and install |
| | | | 0 | 0 | 0 | 0 | |
| 20050 | EQUIPMENT AND STAGING | | 0 | 25,000 | 0 | 25,000 | |
| | | | | | | | |
| | Job Totals | 169,974 | 541,230 | 36,000 | 2,036,174 | 2,783,378 | |
| | Overhead & Profit | | | | | 354,005 | |
| | Grand Total | | | | | 3,117,383 | |

1997 EDITION

# AIA DOCUMENT | A111-1997

**Standard Form** of Agreement Between Owner and Contractor
*where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated Guaranteed Maximum Price*

**AGREEMENT** made as of the
in the year                                                        day of
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name, address and other information)*

> CHARLES   HADEN
> 5851 SAN FELIPE   SUITE 1700
> HOUSTON TX.   77057

and the Contractor:
*(Name, address and other information)*

> BONTECOU   CONSTRUCTION, INC.
> BOX 862
> JACKSON WY.   83001

The Project is:
*(Name and address)*

> HADEN RESIDENCE
> AMANGANI LOT # 1
> JACKSON WY. 83001

The Architect is:
*(Name, address and other information)*

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference.

This document has been approved and endorsed by The Associated General Contractors of America.



© 1997   AIA®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

The Owner and Contractor agree as follows.

Copyright 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.
**WARNING:**

1

## ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 15. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3   RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4.1   The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

August 7, 2006   GB

September 4, 2006   CMGA

If, prior to commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

4.2   The Contract Time shall be measured from the date of commencement.



© 1997   A I A®
AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2

*ND*

*CMV*

**4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than
**242** days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of
commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier
Substantial Completion of certain portions of the Work.)*

*May 4, 2007  C.M.V.T.  SB*

*EXCEPTION TO TIMELINE: LANDSCAPE PROJECT TO START AT EARLIEST
SNOW MELT. DURATION OF JOB FROM START APPROX 4-6 WEEKS DEPENDING*

, subject to adjustments of this Contract Time as provided in the Contract Documents. *ON WEATHER APPROX.*
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time, or for bonus payments* *START DATE 5/2/01*
*for early completion of the Work.)* *SB*

*SEE ADDENDUM #1 ON ATTACHED SUPPLEMENT.*

## ARTICLE 5   BASIS FOR PAYMENT

**5.1   CONTRACT SUM**
**5.1.1** The Owner shall pay the Contractor the Contract Sum in current funds for the
Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined
in Article 7 plus the Contractor's Fee.

*CMV*

**5.1.2** The Contractor's Fee is: *12% OF THE COST OF WORK*
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and
describe the method of adjustment of the Contractor's Fee for changes in the Work.)*

*SB*
*CMV*

**5.2   GUARANTEED MAXIMUM PRICE**
**5.2.1** The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor
not to exceed Dollars
($3,117,383), subject to additions and deductions by Change Order as provided in the Contract
Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed
Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall
be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

*SEE ADDENDUM #1 ATTACHED.*



**5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are
described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made
by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing
the amount for each and the date when the amount expires.)*

©1997   A I A ®
**AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



5.2.3   Unit prices, if any, are as follows:

5.2.4   Allowances, if any, are as follows:
(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)

5.2.5   Assumptions, if any, on which the Guaranteed Maximum Price is based are as follows:

5.2.6   To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by change order.

ARTICLE 6   CHANGES IN THE WORK
6.1   Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Subparagraph 7.3.3 of AIA Document A201-1997.

6.2   In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Clause 7.3.3.3 of AIA Document A201-1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Subparagraph 7.3.6 of AIA Document A201-1997 shall have the meanings assigned to them in AIA Document A201-1997 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

6.3   In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201-1997 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the terms "fee" and "a reasonable allowance for overhead and profit" shall mean the Contractor's Fee as defined in Subparagraph 5.1.2 of this Agreement.



© 1997   A I A ®
AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

4

6.4    If no specific provision is made in Paragraph 5.1 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Paragraph 5.1 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7   COSTS TO BE REIMBURSED

### 7.1    COST OF THE WORK

The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.

### 7.2    LABOR COSTS

7.2.1   Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's approval, at off-site workshops.

7.2.2   Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's approval. *(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 14 the personnel to be included and whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

7.2.3   Wages and salaries of the Contractor's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

7.2.4   Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Subparagraphs 7.2.1 through 7.2.3.

### 7.3    SUBCONTRACT COSTS

7.3.1   Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### 7.4    COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION

7.4.1   Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

7.4.2   Costs of materials described in the preceding Subparagraph 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### 7.5    COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

7.5.1   Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by the Contractor at the site and



© 1997   A I A®
**AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

7.6.8   Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval; which approval shall not be unreasonably withheld.

7.6.9   Expenses incurred in accordance with the Contractor's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved by the Owner.

### 7.7   OTHER COSTS AND EMERGENCIES

7.7.1   Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

7.7.2   Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.6 of AIA Document A201-1997.

7.7.3   Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recoverable by the Contractor from insurance, sureties, Subcontractors or suppliers.

### ARTICLE 8   COSTS NOT TO BE REIMBURSED

8.1   The Cost of the Work shall not include:

8.1.1   Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Subparagraphs 7.2.2 and 7.2.3 or as may be provided in Article 14.

8.1.2   Expenses of the Contractor's principal office and offices other than the site office.

8.1.3   Overhead and general expenses, except as may be expressly included in Article 7.

8.1.4   The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

8.1.5   Rental costs of machinery and equipment, except as specifically provided in Subparagraph 7.5.2.

8.1.6   Except as provided in Subparagraph 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

8.1.7   Any cost not specifically and expressly described in Article 7.

8.1.8   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

### ARTICLE 9   DISCOUNTS, REBATES AND REFUNDS

9.1   Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment



© 1997   AIA ®
AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

9.2    Amounts that accrue to the Owner in accordance with the provisions of Paragraph 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10  SUBCONTRACTS AND OTHER AGREEMENTS

10.1    Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons or entities from whom the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

10.2    If a specific bidder among those whose bids are delivered by the Contractor to the Architect (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

10.3    Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

## ARTICLE 11  ACCOUNTING RECORDS

The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12  PAYMENTS

### 12.1    PROGRESS PAYMENTS

12.1.1    Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

12.1.2    The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:



© 1997  A I A ®
AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292



12.13  Provided that an Application for Payment is received by the ~~Architect~~ *OWNER* not later than the _____ day of a month, the Owner shall make payment to the Contractor not later than the *20th* day of the *Same* month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than *OWNER* ~~Architect~~ receives the Application for Payment. *GA. 12* days after the ~~Architect~~ *OWNER*

12.14  With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee plus (3) payrolls for the period covered by the present Application for Payment.

12.15  Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

12.16  Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

12.17  Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1  take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997;

.2  add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3  add the Contractor's Fee, less retainage of *FOUR* percent ( *4* %). The Contractor's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4  subtract the aggregate of previous payments made by the Owner;

.5  subtract the shortfall, if any, indicated by the Contractor in the documentation required by Paragraph 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

.6  subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.



© 1997   A I A ®
AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**9**

**12.1.8** Except with the Owner's prior approval, payments to Subcontractors shall be subject to retainage of not less than ___Four___ percent ( 4 %). The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments and retention for Subcontractors.

**12.1.9** In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Subparagraph 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

**12.2   FINAL PAYMENT**

**12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

.1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2   a final Certificate for Payment has been issued by the Architect.

**12.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**12.2.3** The Owner's accountants will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Contractor's final accounting, and provided the other conditions of Subparagraph 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Subparagraph 9.5.1 of the AIA Document A201-1997. The time periods stated in this Subparagraph 12.2.3 supersede those stated in Subparagraph 9.4.1 of the AIA Document A201-1997.

**12.2.4** If the Owner's accountants report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to demand arbitration of the disputed amount without a further decision of the Architect. Such demand for arbitration shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment; failure to demand arbitration within this 30-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Contractor. Pending a final resolution by arbitration, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work,



© 1997   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Paragraph 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 13. TERMINATION OR SUSPENSION

**13.1** The Contract may be terminated by the Contractor, or by the Owner for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to the Contractor under Subparagraph 14.1.3 of AIA Document A201-1997 shall not exceed the amount the Contractor would be entitled to receive under Paragraph 13.2 below, except that the Contractor's Fee shall be calculated as if the Work had been fully completed by the Contractor, including a reasonable estimate of the Cost of the Work for Work not actually completed.

**13.2** The Contract may be terminated by the Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to the Contractor under Subparagraph 14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

**13.2.1** Take the Cost of the Work incurred by the Contractor to the date of termination;

**13.2.2** Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

**13.2.3** Subtract the aggregate of previous payments made by the Owner.

**13.3** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Subparagraph 13.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**13.4** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Subparagraph 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean the Contractor's Fee as described in Subparagraphs 5.1.2 and Paragraph 6.4 of this Agreement.

## ARTICLE 14 MISCELLANEOUS PROVISIONS

**14.1** Where reference is made in this Agreement to a provision AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.



© 1997   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**11**



14.2    Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

14.3    The Owner's representative is:
*(Name, address and other information.)*

14.4    The Contractor's representative is:
*(Name, address and other information.)*

TERRY T. ROSS        307-733-2990  OFFICE

307-690-9119  CELL

14.5    Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

14.6    Other provisions:

## ARTICLE 15   ENUMERATION OF CONTRACT DOCUMENTS

15.1    The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

15.1.1    The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997.

15.1.2    The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.



©1997   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**12**

15.1.3   The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated                                                  , and are as follows:

Document                     Title

                                                                        Pages

15.1.4   The Specifications are those contained in the Project Manual dated as in Subparagraph 15.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

Section                      Title

                                                                        Pages

15.1.5   The Drawings are as follows, and are dated                                                  unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

Number                       Title                                      Date



© 1997   A I A®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**13**

15.1.6   The Addenda, if any, are as follows:

Number                    Date

ADDENDA # 1                                              Pages

                                                            1

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 15.

15.1.7   Other Documents, if any, forming part of the Contract Documents are as follows:
(List here any additional documents, such as a list of alternates that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)

JOB COST ESTIMATE      DATED    7/26/06



© 1997   A I A ®
**AIA DOCUMENT A111-1997**
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

14

WARNING:

**ARTICLE 16 INSURANCE AND BONDS**
(List required limits of liability for insurance and bonds. AIA Document A201-1997 gives other specific
requirements for insurance and bonds.)

BUILDER'S RISK BY OWNER.   SEE ADDENDA #1

This Agreement is entered into as of the day and year first written above and is executed in at least
three original copies, of which one is to be delivered to the Contractor, one to the Architect for use
in the administration of the Contract, and the remainder to the Owner.

OWNER (Signature)                          CONTRACTOR (Signature)

CURTIS M. LOWE, SR                    STEVE BONTEON   PRESIDENT
(Printed name and title)              (Printed name and title)



© 1997   AIA®
AIA DOCUMENT A111-1997
OWNER-CONTRACTOR
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

CAUTION: You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo
printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.

WARNING: Unlicensed photocopying

15