IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NADOWESSIOUX PROPERTIES, LTD. | § | CASE NO. 10-41418-H5-11 |
| | § | |
| DEBTOR-IN-POSSESSION | § | |
| | | |
| NADOWESSIOUX PROPERTIES, LTD., a Texas limited partnership, and CHARLES M. HADEN, JR., individually | § | |
| | § | Adversary proc. no. 11-03070 |
| Plaintiffs, | § | |
| | § | (formerly civil action no. 2:10-cv-00280 transferred from the USDC for the District of Wyoming) |
| vs. | § | |
| | § | |
| BONTECOU CONSTRUCTION, INC. a Wyoming corporation | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF DEBTOR'S RESPONSE TO "BONTECOU CONSTRUCTION, INC.'S MOTION TOS EVER CHARLES HADEN AND DEMAND FOR JURY TRIAL" AT DOCKET NUMBER 35"**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiff, Nadowessioux Properties, Ltd. (hereinafter "Nadowessioux") would respectfully show the Court:

1

## SUMMARY OF OBJECTIONS

1. <u>Same "fraud" claims against both Debtor and Haden</u>.  The same allegations that make up Bontecou Construction's breach of contract (and unjust enrichment) claims against Nadowessioux and Haden, make up its fraud claims against Nadowessioux and Haden.  As the Wymoning Federal District Court reasoned, it makes much more sense to try it all in a single venue.  (See paragraph 7.)  To grant the motion would unnecessarily expose the parties to inconsistent rulings and be a waste of judicial resources.

2. <u>No separate "contort."</u>   This is a construction contract dispute.  Like Texas courts, Wyoming courts are not inclined to allow parties to morph claims for breach of contract into separate fraud-tort.  In other words, there is no separate fraud claim-- cognizable under Wyoming law --to sever.  (See paragraph 8.)

3. <u>No reasonable reliance.</u>   The maximum contract price is $3,117,383. Nevertheless, Nadowessioux has paid $3,501,587. The Bontecou parties' "fraud" claims are that both Nadowessioux and Charles Haden promised to pay another $850,000 on top of that.  Under the construction contract, however, all contract modifications ***must be in writings signed by the parties.*** There are no such signed writings.  (See **Exhibit E.)** The fraud-based tort claims cannot survive. As a matter of law, reliance on alleged oral representations to such a contract is <u>not</u> reasonable.  (See paragraphs 9-16 below.)

4. <u>Bontecou's proof of claim</u>.  Bontecou Construction filed a proof of claim based on the exact events that give rise to its allegedly separate claims against Haden.  Its jury trial right – even against Haden – should be considered waived.  (See paragraph 17.)

5. <u>Try the claim objection first</u>.  If the Court is concerned that Bontecou Construction has a severable fraud claim against Haden and an unwaived jury trial, then the best course is to first try the entire claim objection proceeding.  If there is anything left over, then sever.

## ARGUMENT & AUTHORITY

6. In its motion, Bontecou Construction "seeks to sever its claims against the individual Defendant, Charles M. Haden, Jr. ('Haden') from claims against Nadowessioux . . . . [and] asserts its right to a trial by jury for its claims against Charles Haden[.]"  Motion at ¶ 1.

7. The request for relief should be denied.  First, the same allegations that make up Bontecou Construction's breach of contract claims against Nadowessioux and Haden, make up its fraud claims against Nadowessioux and Haden.  As the Wyoming Federal District Court reasoned, it makes much more sense to try it all in a single venue.   See Bontecou pleadings marked **<u>Exhibit A</u>**  and **<u>Exhibit B</u>**  and attached hereto.  They mirror each other.

8. Second, at bottom this is a construction contract dispute.  The Bontecou parties' alleged fraud-tort claims are based on the same "facts" that support Bontecou Construction claim.  The problem is that Wyoming law does not allow a claimant to  "bring an action which arises out of a contract and call it a tort action, thereby rendering his own statement in the contract [here, that all changes must be in a writing signed by the parties] null and void[.]"  *Snyder v. Lovercheck,* 992 P.2d 1079 (Wyo. 1999).

> [T]here are two predominant views on the subject.   <u>One view is that the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon.</u>   The second view assumes that an action in tort is permissible, and that the parol evidence rule does not apply, and, therefore, the action may be maintained.   <u>We find the former to be the better rule</u>.

3

. . . .

> The very notion of contract is the consensual formation of relationships with bargained-for duties. An essential corollary of the concept of bargained-for duties is bargained-for liabilities for failure to perform them. Important to the vitality of contract is the capacity voluntarily to define the consequences of the breach of a duty before assuming the duty. . . . The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for-limited liability. Unless such bargains are against public policy (covered either by prohibitory statutes or well-defined, judge-made rules such as unconscionability), there is no reason in fact or in law to undermine them. Indeed, it would be an unwarranted judicial intrusion into the marketplace. No reason appears to support such a radical shift from bargained-for duties and liabilities to the imposition of duties and liabilities that were expressly negated by the parties themselves when they decided to abandon their status as legal strangers and define their relationship by contract. Tort law proceeds from a long historical evolution of externally imposed duties and liabilities. Contract law proceeds from an even longer historical evolution of bargained-for duties and liabilities. The careless and unnecessary blanket confusion of tort and contract would undermine the carefully evolved utility of both.

. . . .

> [A] contract action cannot become a tort action by simply saying so. . . . [W]hen parties' difficulties arise directly from a contractual relationship, the resulting litigation concerning those difficulties is one in contract no matter what words the plaintiff may wish to use in describing it.

*Id* (citations and quotation markes removed). A copy is attached and marked **Exhibit C.**

9. Third, Wyoming law requires that a party claiming fraud have reasonable relied on the alleged misrepresentations. If the reliance was not reasonable, then there was no fraud. Likewise, to establish a claim for promissory estoppel under Wyoming law, plaintiff must show, among other things, that he acted to his detriment in reasonable reliance on the agreement. See *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 276-77 (Wyo. 1997).

10. The construction contract at issue has a "guaranteed maximum price." See **Exhibit D** at Art. 5.2.

11. The contract at issue contains an integration clause: "The Contract represents the *entire and integrated agreement* between the parties herto and superseded prior negotiations, representations or agreements, either written or oral." See Art. 1 of **Exhibit D** (emphasis added).

12. As a standard AIA contract, it provides that any changes to the contract must be memorialized in a writing signed by all parties, or, in some cases, at least by the owner (Nadowessioux) and/or the contractually designated architect.[1] The contract says nothing about honoring oral modifications. In fact, the contract's integration clause disclaims oral modifications by unambiguously limiting the definition of "Contract" to identified documents (existing at the time of contract execution) and only *written and signed* "Modifications" (as defined in footnote 1 herein).

13. Bontecou's predicament is that there are no such signed, written modifications. (See Bontecou deposition excerpt marked **Exhibit E**.) Bontecou's solution? Plead fraud and misstate the payment clause of the contract:

> Pursuant to Article 5.2 of the Agreement, the parties agreed that there would be a guaranteed maximum price, or a ceiling, which would be modified upwards for site conditions, changes by the owner and other changes to the Project. [Bontecou Answer at

---

[1] "A Modification is (1) a *written* amendment to the Contract *signed by both parties*, (2) a Change Order [defined below], (3) a Construction Change Directive [defined below] or (4) a *written order* for a minor change in the Work [defined below] issued by the Architect." See **Exhibit D**-2 at Art. 1.1.1. (emphasis added). "A Change Order is a written instrument prepared by the Architect and *signed by the Owner, Contactor and Architect*, stating their agreement upon all of the following .1 change in the Work; .2 the amount of the adjustment, if any, in the Contract sum; and .3 the extent of the adjustment, if any, in the Contract Time." *Id*. at Art. 7.2.1 (emphasis added). "A Construction Change Directive is a written order prepared by the Architect and *signed by the Owner and Architect*, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both." *Id*. at Art. 7.3.1 (emphasis added). "The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by *written order* and shall be binding on the Owner and Contractor." Id. at Art. 7.4.1 (emphasis added).

> para 22. Section 5.2, by contrast, actually limits increases in the guaranteed maximum price to "additions and deductions by Change Order"; i.e., writings signed by the parties (see footnote 1 herein). Nothing in 5.2 of the contract contemplates oral modifications or, as Bontecou baselessly claims, "site conditions."]

14. Because the contract provides that modifications must be in the form of signed writings—assuming every element of Bontecou Construction alleged fraud claim is true, and it is not --as a matter of law it was <u>not</u> reasonable for Bontecou to have relied on Nadowessioux's (alleged) oral representations.

> Intercorp seeks to enforce alleged antecedent oral promises both on the basis of fraud and breach of contract. <u>It [like Bontecou Construction] does not assert that the fraud</u> allegedly committed by Pennzoil <u>prevented the formation of a contract</u>. Rather, Intercorp seeks to enforce, directly or indirectly*,* its version of the agreement by establishing terms not contained in the written instrument. Tyler persuades us that, <u>despite the fraud allegations, the parol evidence rule does not lose its relevance in a case such as this</u>. To be sure, extrinsic evidence bearing on the issues of fraud and whether the parties intended to adopt the writing as the final expression of their agreement is admissible. But <u>the finality of the writing remains a crucial question</u>. With respect to breach of contract, resolution of the finality issue determines whether the prior oral promises may be enforced, or whether evidence of such antecedent agreements is legally inoperative. In the fraud causes of action, the decision on the completeness of the contract affects the consideration of the element of reliance, and, as Tyler illustrates, in some cases <u>the existence of an integrated writing will establish, as a matter of law, that reliance on oral representations was not reasonable,</u> entitling a defendant to summary judgment on the fraud claims.

*Intercorp, Inc. v. Pennzoil Co*., 877 F.2d 1524, 1530-1531 (11th Cir. Ala.1989).

A copy of the case is attached and marked **Exhibit F.** Under *Intercorp*, Bontecou Construction still has its quasi-contract claims for unjust enrichment, presumably pled in the event that its claim for breach of contract fails. A fraud-tort claim, on the other hand, comprised of a necessary element (*reasonable* reliance on oral representations by

Haden and Nadowessioux), which necessary element contradicts an unambiguous contractual provision, must fail.

15. Bontecou alleges that it relied on assurances that Nadowessioux and Haden were going to change the contractual payment terms. However, "these oral representations are inconsistent with the provision in the contract forbidding oral modifications. Thus any reliance on these assurances was unreasonable as a matter of law." Ixe *Banco, S.A. v. MBNA Am. Bank, N.A.*, 2008 U.S. Dist. LEXIS 19806 (S.D.N.Y. Mar. 7, 2008) (and cases cited therein).

16. "[A]s a matter of law it is not reasonable to rely on an oral statement that contradicts a written provision in a contract that does not permit oral modification." *Appalachian Railcar Servs. v. Boatright Enters.*, 602 F. Supp. 2d 829, 881 (W.D. Mich. 2008) citing *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 599 N.W.2d 546, 553 (Mich. App. 1999) ("[T]he written contract, with its integration clause, expressly contradicted statements 4 and 5, making plaintiff's alleged reliance on these statements unreasonable.")

17. Fourth, Bontecou Construction filed a proof of claim in this bankruptcy case. For all of the reasons above, Bontecou Construction's fraud claims, including the one against Haden (which fraud claims reads exactly like the fraud claim against Nadowessioux] are simply a re-packaged version of its contract claim. The right to a jury trial is waived. *See Langenkamp v. Hackler (In re Republic Trust & Sav. Co.)*, 897 F.2d 1041, 1043 (10th Cir.), *rev'd in part on other grounds sub nom.*, *Langenkamp v. Culp*, 498 U.S. 42, 112 L. Ed. 2d 343, 111 S. Ct. 330 (1990).

**PRAYER**

Nadowessioux prays that the Court deny the motion to sever.

                  HOOVER SLOVACEK LLP

                  By:       *s/Annie E. Catmull*
                  EDWARD L. ROTHBERG
                  State Bar No. 17313990
                  ANNIE E. CATMULL
                  State Bar No. 00794932
                  5847 San Felipe, Suite 2200
                  Houston, Texas 77057
                  Telephone: 713.977.8686
                  Facsimile: 713.977.5395
                  ATTORNEYS FOR DEBTOR

## CERTIFICATE OF CONFERENCE

I certify that on March 14, 2011 I conferred in good faith with Simon Mayer and no resolution of the dispute was reached.

                  */s/Annie E. Catmull*
                  Annie E. Catmull

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the above objection was forwarded by U.S. first class mail, postage prepaid, on March 14, 2011, to the parties listed below and via the Bankruptcy Court's ECF notification system to the parties listed below if an email address is indicated.

                  */s/Annie E. Catmull*
                  Annie E. Catmull

David J Askanase and Simon Mayer on behalf of Defendant Bontecou Construction Inc
djaskanase@hwallp.com and srmayer@hwa.com

First Interstate Bank
Glenn Ford
Garland, Ford & Potter, LLC
235 E. Broadway
P.O. Box 4310
Jackson, WY 83001

First Interstate Bank
Okin Adams & Kilmer LLP

8

Matthew S. Okin
Sara Mya Keith
1113 Vine St., Suite 201
Houston, Texas 77002

Andrea L. Richard
The Richard Law Firm
P.O. Box 1245
Jackson, WY 83001


Charles Haden
Shelly Haden
c/o Andrew Caplan
11 Greenway Plaza,
Suite 1400
Houston, Texas 77046